✓ Priority
✗ Send
___ Clsd
___ Enter
___ JS-5/JS-6
___ JS-2/JS-3



FILED
MAY 13 2004
CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY ___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| ORMCO CORPORATION,<br><br>    Plaintiff,<br><br>    vs.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>    Defendant. | Case No. SA CV 03-16-GLT (ANx)<br><br>ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT, DEFENDANT'S MOTION TO LIMIT CLAIMS, AND PLAINTIFF'S MOTION FOR A <u>MARKMAN</u> DETERMINATION |

Defendant's motion for summary judgment is GRANTED. Defendant's motion to limit the number of claims asserted and Plaintiff's motion for a <u>Markman</u> determination are MOOT.

I.    <u>BACKGROUND</u>

Plaintiff Ormco Corporation owns four patents which are directed to computer-aided orthodontics. Plaintiff brought this suit against Defendant Align Technology, Inc., alleging Align's Invisalign System infringes these patents. Defendant moves for summary judgment of non-infringement. Alternatively, Defendant moves to limit the number of asserted claims.



DOCKETED ON CM
MAY 13 2004
BY ___ 037

Plaintiff Ormco moves for a <u>Markman</u> determination.

## II.  <u>DISCUSSION</u>

Defendant argues the scope of each asserted claim is limited by the specification and by Ormco's disclaimers during prosecution. See <u>Microsoft Corp. v. Multi-Tech Sys.</u>, 357 F.3d 1340, 1347 (Fed. Cir. 2004) ("When the specification 'makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.' <u>SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.</u>, 242 F.3d 1337, 1341 (Fed. Cir. 2001). 'A patentee may also limit the scope of the claims by disclaiming a particular interpretation during prosecution.' <u>Biodex Corp. v. Loredan Biomed., Inc.</u>, 946 F.2d 850, 862 (Fed. Cir. 1991).").

Defendant argues Plaintiff's patents are limited to automatic computer determination of treatment positions and the automatic computer design of an orthodontic appliance. Defendant contends Ormco cannot claim its patents cover a system requiring skilled human operators, such as Align's Invisalign System.

A.  <u>The Claims</u> [1]

---

[1] The Court adopts an approach to claim construction which is in line with recent Federal Circuit authority. See <u>Microsoft Corp. v. Multi-Tech Sys.</u>, 357 F.3d 1340, 1347 (Fed. Cir. 2004). Plaintiff argues Defendant's motion must fail because the motion did not identify the claim limitations specifically. In fact, Defendant attached the claims to its motion as an exhibit.

Plaintiff also moves to strike the sections of Defendant's reply that point to specific claim language, or in the alternative, it moves for additional briefing on this issue. The motion to strike or for additional briefing is DENIED. There is no need to strike or allow arguments in response to Defendant's

(continued...)

"[C]laim construction ... begins and ends in all cases with the actual words of the claim." <u>Renishaw PLC v. Marposs Societa' per Azioni</u>, 158 F.3d 1243, 1248 (Fed. Cir. 1998). The proper construction of the claims of the patent at issue is a question of law for the Court. <u>See Markman v. Westview Instruments</u>, Inc., 517 U.S. 370, 372 (1996). The language of most of the asserted claims requires either: (1) automatic determination of tooth positions and automatic design of an orthodontic appliance or (2) a process that could be completed automatically or manually with an operator. The exception is claim 1 of the '444 Patent, which refers specifically to an "operator interacting with a computer." The claim language is included in Appendix 1 of this decision.

B. <u>The Specifications</u>

The statements in the specifications limit Ormco's claims to automatic design and manufacture of orthodontic appliances. <u>SciMed Life Sys., Inc.</u>, supra, 242 F.3d at 1341 ("When the specification 'makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.'").

The Summary of Invention in each patent describes a primary

---

[1]/ (...continued) reply section because Defendant is only pointing to specific language in the claims which were already before the Court. The Court is not interpreting the specific language of the claims to favor one side or the other. The claim language is referenced to establish the point that the claimed action could be performed manually or automatically.

objective of Ormco's invention as providing "a practical, reliable and efficient custom appliance <u>automated design and manufacturing system and methods of automatically designing</u> custom orthodontic appliances and treating patients therewith." (emphasis added). They further describe:

> In accordance with the preferred embodiment of the present invention, there is provided a computerized system and method with which finish positions of the teeth of a patient are derived from digitized information of anatomical shapes of the patient's mouth, an orthodontic appliance is <u>automatically designed</u> from the digitized shape information, and the derived tooth finish positions... (emphasis added).

The Field of Invention Statement of the '432, '243 and '861 Patents states:

> The present invention relates to the design, manufacture and use of orthodontic appliances for the straightening of teeth, and <u>more particularly, to the automated design, manufacture and use</u> of custom orthodontic appliances based [on] individual patient anatomy and to the diagnosis of patients therefor and the treatment of patients therewith. (emphasis added).

The abstract of the '861 Patent states:

> A system and method by which an orthodontic appliance is <u>automatically designed and manufactured</u>...A computer is programmed to construct archforms and calculate finish positions of the teeth, then to design an appliance.... (emphasis added).

Ormco argues there are several portions of the specification which

refer to operator involvement. Those passages will not be recited again here. These sections only refer to operator input of information and do not describe a skilled operator making decisions about the final positions of the teeth.

C. <u>The Prosecution History</u>

A prosecution history does not limit any claim terms unless the prosecution history is clear. See <u>York Prods. v. Central Tractor Farm & Family Ctr.</u>, 99 F.3d 1568, 1575 (Fed. Cir. 1996) ("[A] patent applicant only limits claims during prosecution by clearly disavowing claim coverage."). The Court holds the prosecution history is clear that the scope of Ormco's claims are limited to automatic computer determination of the finish positions of teeth. See <u>Biodex Corp.</u>, *supra*, 949 F.2d at 862 ("A patentee may also limit the scope of the claims by disclaiming a particular interpretation during prosecution.").

In an Office Action dated September 13, 1993, the Patent Office rejected each of the claims in the application leading to the '562 Patent.[2/] The claims were rejected in part based on a prior art patent by Lemchen. In order to overcome this rejection, Ormco made a number of statements to the PTO.

    1. <u>Statements Made By Ormco In Its March 16, 1994 Response</u>

Ormco acknowledges the Lemchen prior art involved a human operator manipulating tooth images:

> Using such a CAD program in a conventional manner, such as Lemchen describes, an operator would manipulate the

---

[2/] All of the patents-in-suit are related to the '562 Patent. "[P]rosecution disclaimer may arise from disavowals made during the prosecution of ancestor patent applications." <u>Omega Eng'g, Inc. v. Raytek Corp.</u>, 334 F.3d 1314, 1333 (Fed. Cir. 2003).

> tooth images to provide the desired occlusion. This would presumably involve some decision making by the operator. As the operator manipulates the images, the computer, under the control of the conventional CAD program, would perform calculations that would generate data of the tooth movements made by the operator and thus of the finish positions of the teeth.

Ormco further emphasizes the reliance on human decision making:

> The Lemchen patent relies, to produce the calculations, on the conventional calculation techniques employed in generalized CAD software. This in turn relies on a user interactive interface by which an operator contributes human decision making powers to manipulate images until the operator is satisfied that finish tooth position criteria have been met. The Lemchen method provides a computerized way to achieve bracket placement to precisely position patient teeth to the finish positions that the operator, with the aid of the CAD computer, has calculated. However, with conventional CAD programs, the reliance on human decision making is heavy, and rigorous fully automated arrival at tooth finish positions is lacking.

Ormco next clarifies Lemchen does not involve algorithms to automate the orthodontic appliance design:

> While a computer operator might pictorially be able to manipulate tooth images toward finish positions that provide an orthodontically acceptable occlusion and satisfy aesthetic considerations, no mathematically

definable algorithms or process is set forth in the Lemchen patent to define how any of the thousands of digitized points on each of the respective teeth are to be related to the thousands of points on any of the other teeth to facilitate more fully automated orthodontic appliance design.

Ormco describes its invention as collecting digital information "which is sufficient to automatically design and manufacture an orthodontic appliance." Ormco also stated it is a "computerized system with the intelligence to decide for itself the best finish positions for the teeth." Finally, Ormco wrote "once the digitized data is input into a computer, no further orthodontic decision making is required until after the system produces the custom appliance...."

      2.   <u>Statements Made By Michael W. Scott, DDS, MSD To The Patent Office On Behalf Of Ormco</u>

In support of its attempt to overcome the prior art, Ormco submitted a declaration to by Michael W. Scott, DDS, MSD, to the PTO on March 16, 1994. Dr. Scott stated:

> The method described...in their patent application is <u>the most complete and fully automated method of orthodontic appliance manufacture ever proposed.</u>[3] Particularly important contributions of the applicants are the features that make possible the automated custom design of the appliance, and particularly that <u>enable a computer to determine automatically the best</u>

---

[3] In an Office Action of May 24, 1994, the PTO again rejected Ormco's claims and Ormco responded with an Amendment on September 26, 1994. In this amendment, Ormco adopted this statement of Dr. Scott as a factual statement.

<u>finish positions for the patient's teeth.</u>[4/]

Applicants digitize data of tooth and jaw shape and then derive an "ideal dental archform." From the ideal dental archform, <u>applicants use the computer to automatically and precisely derive the optimum finish positions</u>, according to their sophisticated criteria, to which the patient's teeth are to be moved by orthodontic treatment. In applicant's overall method, <u>it is a computer, not an orthodontist or an orthodontically skilled computer operator, that makes the decision on the finish positions</u> in which the teeth are to be placed. Applicants' method then automatically designs an orthodontic appliance....

(emphasis added).

### 3. Statements Regarding the Abandoned 07/775,589 Application

Although Plaintiffs abandoned this application in the chain leading to the '562 Patent, it specifically excludes a system which involves human decision making:

> The applicants of the present application set forth...further advances in the art by introducing certain automatic design making capabilities in automated orthodontic appliance design. As a result, digitized tooth shape data is reduced to a form that facilitates the direct calculation, <u>without operator intervention or human decision making steps</u>, which

---

[4/] Ormco also adopted this statement in its September 26th Amendment.

leads in the geometry and placement of an orthodontic appliance that inherently results in the proper positioning of teeth to orthodontically preferable finish positions, <u>without the need for either an operator or an orthodontist to consciously decide the specific tooth finish positions.</u> (emphasis added).

### 4. Statements Regarding the '432 Patent

In an Office Action of June 27, 1994, the Patent Office rejected the pending claims of the '432 Patent. Ormco filed an Amendment on September 27, 1994, stating "the present invention is directed to the concept of automatically designing and producing a orthodontic archwire...." The Amendment also stated:

> The claims rather provide a process that directly or indirectly senses data representing shapes from the patient's mouth, sorts or manipulates and compares tooth or jaw shape data to determine a desired orthodontic result, to design an appliance that achieves the result, and to manufacture an appliance according to the design for mounting on the teeth of the patient to achieve the orthodontic result.

### D. Non-Infringement Analysis

Summary judgment is proper if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

1  Most of the claims Ormco asserts against Align include language
2  explicitly requiring automatic design and manufacture or requiring a
3  process that could be completed automatically or manually with an
4  operator. However, as discussed above, the specification and
5  prosecution history limit these claim terms to automatic processes.

6  Defendant argues Ormco has no valid infringement claims because
7  Align relies on skilled operators -- not computers -- to manipulate
8  images and make decisions about where and how the teeth should move.
9  Defendant supports this argument by providing evidence the Invisalign
10 process does not use computers to calculate the proper finish positions
11 of the teeth.

12 Plaintiff argues genuine factual disputes preclude summary
13 judgment. The Court finds there are no triable issues.

14 Plaintiff offers evidence to support the theory the Invisalign
15 process calculates intermediate positions of the teeth, which, they
16 assert, amounts to automatic determination of final teeth positions.
17 The intermediate positions are steps to final positions, and they are
18 not equivalent. There is no triable issue whether determination of
19 intermediate positions infringes Ormoco's claims.

20 Plaintiff also contends the Invisalign process calculates tooth
21 positions as part of its collision detection software. Defendant argues
22 this process is computer assisted design, not automatic determination of
23 final teeth positions. Align's Director of System Engineering, Andrew
24 Beers, submits a declaration explaining the operators determine
25 intermediate treatment steps in order to achieve the proper finish
26 positions. The operators use the computer to detect collisions that
27 occur when the teeth move from their initial to final positions. If
28 there are collisions, the operators, not the computer, adjust the

treatment plan. Because the collision detection software does not automatically determine teeth positions, there is no triable issue whether this process infringes on Ormco's patents.

Plaintiff argues Align performs automatic design of final teeth positions with FiPos, a "plug-in" software module. Plaintiff provides evidence of Align's Software Development Plan for FiPos2, dated February 5, 2001, which describes the goal of the project is "to set up the treated tooth position automatically." By itself, this evidence does not create a triable issue for damages because Ormco has no right to seek damages for any time before the filing of this suit on January 6, 2003.[5]

Plaintiff submits evidence showing FiPos source code was included with the source code produced on October 7, 2003 for Treat version 3.1, and argues this suggests FiPos may have been used with that release. Treat is the software program used by Align to implement the Invisalign process. Mr. Beers explains unused source code is not removed, it is simply not compiled. Mr. Beers also states he "instructed Mr. DeBruin (counsel for Ormco) and Mr. Klausner (Ormco's expert) how to verify, from looking at the copies of the source code that we produced, that certain plug-ins (such as FiPos) were not compiled in Treat." Plaintiff has not submitted evidence Align used FiPos in the Treat software. The source code itself does support the conclusion FiPos was used, and it

---

[5] Ormco originally filed an infringement action against Align in January 2000. Ormco and Align agreed to defer the litigation until after Ormco's additional patent issued. As part of the Agreement, Ormco agreed not to "seek any damages...because of any infringement occurring before the date of commencement of said subsequent action." Ormco does not dispute it is unable to collect damages for activity before January 6, 2003.

The Court will not address the other evidence Ormco provides which relates to activity before January 2003.

does not create a triable issue.

Plaintiff submits evidence showing Align's strategic plan documents include FiPos in the list of ongoing projects for the year 2003. There is a document from May 2003 which refers to "Automated FiPos" and "Highly Automatic FiPos" in a section entitled "Treat Automation" under the broader heading "Invisalign Principles." There is a document from April 2003 entitled "Software Subgroup Meeting Summary," which includes "Automatic FiPos" as a "Target Feature" in Phase 1 of Automated Treatment Planning. Andrew Beers stated in his declaration:

> While Align continues to consider FiPos as a possible development project sometime in the future, it has not reinitiated any development efforts to resurrect the FiPos project. Align does not currently and has not since approximately 2001 used or attempted to develop FiPos.

Align's strategic plan documents do not show FiPos was used and do not create a triable issue for future infringement. See Lang v. Pacific Marine & Supply Co., 895 F.2d 761, 765 (Fed. Cir. 1990)(no jurisdiction over threatened future infringement).

### III. DISPOSITION

Defendant's motion for summary judgment is GRANTED. Defendant's motion to limit the number of claims asserted and Plaintiff's motion for a Markman determination are MOOT.

DATED: May 11, 2004

GARY L. TAYLOR
UNITED STATES DISTRICT JUDGE

# APPENDIX 1

Ormco asserts infringement of claims 1, 9, and 10 of U.S. Patent No. 5,447,432 ("'432"). Claim 9 and 10 are dependant and do not need to be separately addressed. Claim 1 refers to "processing the digitized tooth shape data..., producing desired tooth position signals..., [and] calculating...tooth interconnecting arcuate geometry."

Ormco asserts infringement of claims 1 and 2 of U.S. Patent No. 5,683,243 ("'243"). Claim 2 is dependant. Claim 1 includes "a computer programmed to automatically derive a dental archform for the individual patient, to calculate finish positions of the teeth of the patient in relation to the archform, to calculate a custom orthodontic appliance design...."

Ormco asserts infringement of claims 1, 3, 4, 9-12 and 16-18 of U.S. Patent No. 6,244,861 ("'861"). Claims 3, 4, 9-12 and 16-17 depend or multiply from claim 1. Claim 1 speaks to "determining treatment positions of the teeth on a dental arch..." and "processing in a computer the generated data and thereby designing a custom orthodontic appliance...." Claim 18 refers to "deriving a dental archform from the digitized anatomical shape data..." and "deriving, on the computer, post-appliance positions for the teeth...."

Ormco asserts infringement of claims 1-5 and 8-79 of U.S. Patent No. 6,616,444 ("'444"). Claims 1, 10, 18, 23, 30, 37, 45, 46, 54, 69 and 70 are independent. Claim 1 refers to "through an operator interacting with a computer..., altering the graphic representation to arrange a plurality of the teeth in relation to each other in accordance with the prescription, to produce a digital model of a desired

arrangement of the teeth...." Claim 10 refers to "communicating the digitized data to a computer programmed to apply at least some automated tooth position criteria to produce a digital model of the teeth of the scanned shapes in desired positions." Claim 18 refers to "inputting tooth shape information into a computer that is...programmed to select geometric parameters on the patient's teeth from the digitized data by operator-interaction and to produce a digital model of the teeth in desired positions...." Claim 23 refers to "transmitting the digital information to a computer configured for defining geometry of a custom orthodontic appliance...." Claim 30 refers to "deriving an occlusion for the patient based on the received digital information and the individual anatomy of the patient on a computer...." Claim 46 refers to a computer "configured for deriving custom geometry of an appliance for carrying out treatment of the patient in response to data entered by the practitioner...." Claim 54 refers to "a computer thereat configured for digitally defining therewith positions to which to move the patient's teeth...." Claim 70 refers to "determining with a computer an occlusion...." Defendant does not argue claims 37-40, 45 or 69 of the '444 Patent contain language requiring either manual or automatic operation.