1  TOWNSEND AND TOWNSEND AND CREW LLP
   Daniel J. Furniss (State Bar No. 73531) (djfurniss@townsend.com)
2  Anne M. Rogaski (State Bar No. 184754) (amrogaski@townsend.com)
   Jon V. Swenson (State Bar No. 233054) (jvswenson@townsend.com)
3  Heidi J. Kim (State Bar No. 247699) (hjkim@townsend.com)
   379 Lytton Avenue
4  Palo Alto, CA  94301
   Telephone:  (650) 326-2400
5  Facsimile:  (650) 326-2422

6  Attorneys for Defendant and Counterclaimant,
   ALIGN TECHNOLOGY, INC.
7

8                UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

| 11 | ORMCO CORPORATION, | Case No. SACV 03-16 CAS (ANx) |
|---|---|---|
| 12 | Plaintiff, | **REPLY IN SUPPORT OF ALIGN TECHNOLOGY INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF ORMCO'S '444 PATENT** |
| 13 | v. | |
| 14 | ALIGN TECHNOLOGY, INC., | |
| 15 | Defendant. | Date:   February 9, 2009<br>Time:   10:00 a.m. |
| 16 | | Court:  5 |
| 17 | AND RELATED COUNTERCLAIMS. | The Honorable Christina A. Snyder |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................... 1

II. THE ASSERTED PRIOR ART REFERENCES RENDER EACH OF THE ASSERTED CLAIMS INVALID ................................. 3

    A. Both The Laurendeau Reference And Duret Patent Disclose Scanning 3D "Shapes" Of Teeth As Construed By The Court ........................................................ 4

    B. The Laurendeau Reference Discloses "from the generated data, producing separate digital representations of the shapes of each of a plurality of individual teeth of the patient" ........................................................ 6

    C. The Duret Patent Disclosed "grouping the generated data into separate digital representations of the shapes of each of a plurality of individual teeth" ............................. 8

    D. The Laurendeau Reference Discloses The "Landmark Parameters" Of Claim 38 As Construed By The Court ........................................................................................ 9

    E. The Laurendeau Reference Discloses Representing Each Of The Plurality Of Teeth By A 2D Contour As Required By Claim 39 ........................................................ 11

    F. Claim 40 Is Anticipated By The Laurendeau Reference .................................................................................. 12

III. THE LAURENDEAU REFERENCE CONTAINS AN ENABLING DISCLOSURE DESCRIBING THE OPERATION OF A CURRENT SYSTEM ............................................. 12

IV. ALIGN'S EXPERT EVIDENCE IS PROPER ....................................... 14

V. CONCLUSION ..................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*,
731 F.2d 831 (Fed. Cir. 1984) .................................................................................. 4

*Peters v. Active Manufacturing Co.*,
129 U.S. 530 (1889) .................................................................................................. 5

REPLY IN SUPPORT OF ALIGN TECHNOLOGY, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF ORMCO'S '444 PATENT -- CASE NO. SACV 03-16 CAS (ANx)

ii

## I. INTRODUCTION

Ormco Corporation ("Ormco") failed to raise any genuine disputes of material fact in its opposition brief. Align Technology, Inc. ("Align"), thus, is entitled to summary judgment that all of the asserted claims of Ormco's '444 patent are invalid as anticipated by the Laurendeau reference and Duret patent. Rather than dispute the teachings of these references, Ormco raises three separate legal issues regarding the interpretation of the asserted claims as its sole reason that those claims are not invalid. Each of these disputes regarding interpretation of the asserted claims are questions of law that are ripe for the Court to decide now and do not create a genuine dispute of material fact that precludes entry of summary judgment in favor of Align.

First, Ormco disputes that the references asserted by Align disclose scanning "shapes" of teeth. Both parties agree as to the actual shapes of teeth scanned by the asserted prior art – there is no dispute of fact as to the teachings of the prior art. Rather, the dispute is purely a legal interpretation of the word "shapes" in the independent claims. The Court already construed this term to mean "'shape' or 'shapes' in three dimensions" and Ormco never argued for a more limited definition. Now, when it seeks to avoid the prior art, it argues that "shape" does not include what is disclosed in the prior art. Ormco has offered no affirmative definition of "shapes" or support for such definition; even worse, Ormco has repeatedly changed its definition depending on the context and the particular prior art asserted by Align. Claims are not to be reconstrued according to the whim and argument *de jour* of the patentee. Ormco's attempts to add more and new limitations into the claims to avoid the disclosure in the prior art is improper, pure gamesmanship and should be soundly rejected.

Second, Ormco adds yet another limitation to the asserted claims by arguing that the claims are directed towards orthodontic treatment. Again, this is a legal dispute as to the interpretation of the asserted claims, not a factual dispute as to the disclosure of the prior art, and it cannot serve as a basis to deny Align's motion. While Ormco's basis for its argument is unclear, the only mention of orthodontic treatment in the

asserted claims is in the preamble of certain independent claims (*e.g.*, claim 37 states "for facilitating orthodontic treatment"). During claim construction briefing, Align briefed the issue of why the preamble should not be a limitation of the asserted claims. (Docket 868 at pp. 6-8.).[1] Although the Court did not reach a decision on this issue in its claim construction opinion, Ormco admits that it instructed its experts "not to treat the preamble language as a limitation." (Docket No. 1014 at p. 20, fn. 17.) Thus, Ormco's experts provided no opinions or analysis as to whether Align's Invisalign® process met the limitations of the preambles of the asserted claims. (UF 49.)[2] Faced with the clearly anticipating prior art and Align's expert opinions, Ormco has now taken a different approach for invalidity and argued that the claims are directed towards orthodontic treatment. Not surprisingly, Ormco does not go so far as to claim that the preambles are a limitation of the claims because doing so would render Ormco unable to prove Align's Invisalign® process infringes, as Ormco specifically instructed its experts not to conduct such an analysis. (*See* Docket No. 1014 at p. 20, fn. 17.) As explained in Align's opposition to Ormco's motion of no invalidity (Docket No. 1016), Ormco's attempt to read "orthodontic treatment" into all of the asserted claims should be rejected by the Court. The claims are clearly limited to engineering processes of scanning and processing electronic data representing teeth.

Third, Ormco also seeks to add three more additional limitations into the "landmark parameters" requirement of claim 38: (1) that attributes derived from landmark parameters must actually be used to model tooth movement to finish positions; (2) that the modeling of tooth movement must be prospective modeling; and (3) that the modeling of tooth movement be for purposes of orthodontic treatment.

---

[1] Ormco's assertion that "[w]hether the preamble is limiting is a question of law that has not been briefed or argued in this case..." is incorrect and a clear attempt to avoid the Court deciding whether the preamble is a limitation of the claims. (Docket No. 1014 at p. 20, fn. 17.)

[2] Citations to "UF" are citations to Docket No. 970 which is Align Technology, Inc's statement of Uncontroverted Facts and Conclusions of Law in Support of Align Technology, Inc's Motion for Summary Judgment of Invalidity of Ormco's '444 Patent.

Again, there is no dispute as to the disclosure of the asserted prior art which all disclose locations on teeth that derive attributes that are useful in modeling tooth movement; rather, Ormco disputes the Court's construction of the term "landmark parameters." As with the term "shape", the Court has already construed the "landmark parameters" requirement of claim 38 and did not include any of the limitations Ormco now attempts to import into the claims. (Docket No. 933 at pp. 20-21.) Ormco's additional limitations are also contrary to the Court's claim construction opinion and the decision of the Court of Appeals for the Federal Circuit and should be rejected. (UFs 1, 2 and 3.)

Only armed with these improper rewrites of the asserted claim language does Ormco turn its attention to the two prior art references (Laurendeau and Duret) that are the basis for Align's motion for invalidity of the asserted claims of the '444 patent. All of Ormco's discussions and conclusions regarding these two references stem from its new and improper interpretation of the asserted claims and have nothing to do with the factual disclosure in the references themselves. Having not disputed the actual teaching of either the Laurendeau reference or the Duret Patent, Ormco cannot defeat summary judgment.

## II. THE ASSERTED PRIOR ART REFERENCES RENDER EACH OF THE ASSERTED CLAIMS INVALID

Ormco's inaccurate statements and mischaracterization of the prior art cannot serve as a basis for denying Align's motion for summary judgment.[3] As explained below, each of the prior art references clearly disclose the limitations of the asserted claims and Ormco's attempts to confuse and misdirect should be disregarded.

Rather than deal with the evidence presented by Align, including the testimony of Ormco's own experts, Ormco chooses to ignore this evidence and proceed in its

---

[3] Align set out in detail in its opening brief how the Laurendeau reference anticipates claims 37-40 and 69 and how the Duret patent anticipates claim 45 and will not repeat that detailed analysis here. (*See* Docket No. 964.) Also, Align set out how Ormco's new claim interpretations are improper in Align's opening brief and its opposition brief to Ormco's motion for summary judgment of no invalidity and Align also will not repeat the details of that analysis here. (*See id.*; *see also* Docket No. 1016.)

1  opposition as if its experts never made the admissions in their depositions. Instead,
2  Ormco points to the "expert reports" that were drafted by counsel as evidence of
3  validity. (*See, e.g.,* Docket No. 1014 at p. 10, fn. 10 ("Align also relies on snippets
4  from the deposition of Ormco's expert Dr. Roberts, but none of his testimony
5  undermines the conclusions he reached in his report….").) Ormco's failure to dispute
6  Align's evidence is grounds for granting summary judgment in favor of Align. *See
7  Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836
8  (Fed. Cir. 1984).

    A.   **Both The Laurendeau Reference And Duret Patent Disclose Scanning 3D "Shapes" Of Teeth As Construed By The Court**

11      There is no factual dispute that both the Laurendeau reference and Duret patent
12  taught scanning in 3D the shapes of a plurality of teeth as described in Align's motion
13  for invalidity.[4] Rather, the only dispute is raised by Ormco's new interpretation of the
14  term "shape" which is a purely legal question for the Court to decide. Indeed, the Court
15  has already construed the term to follow Ormco's urged construction to mean "'shape'
16  or 'shapes' in three dimensions." (UF 14.) Faced with the reality that such a
17  construction renders its asserted claims invalid by the Laurendeau reference and Duret
18  patent, Ormco now attempts to reverse its course and ask the Court to adopt a different
19  definition of shape that it never previously presented to the Court. Ormco's games are
20  an improper attempt to circumvent this Court's opinion and should be rejected.

21      The apparent basis for Ormco's additional limitations on the term "shape" is that
22  Ormco believes "shape" required by the asserted patent claims has to be sufficient for
23  orthodontic treatment. As explained in detail in Align's opening brief and Align's

---

[4] Ormco's transparent attempts to manufacture disputes of fact are apparent from its statement that "Align incorrectly states that Laurendeau used a laser." (Docket No. 1014 at p. 7, fn. 8.) Whether the Laurendeau reference used a laser or some other 3D scanning device is irrelevant as nothing in the asserted claims requires the use of a laser. In any event, the Laurendeau reference discloses that the active ranging techniques it used to scan the wax imprint "use a special light source, ***usually a laser***, to obtain three-dimensional information." (Docket No. 967, Exh. 4 at ALN116263 (emphasis added).)

1  opposition to Ormco's motion for no invalidity, there is no rationale for adding the
2  orthodontic treatment limitation into the claims. (Docket No. 964 at pp. 10-13; Docket
3  No. 1016 at pp. 17-18.)

4  Even if Ormco's assertion were correct, that shape sufficient for orthodontic
5  treatment were required by the asserted claims, its claims would still be anticipated by
6  Align's prior art. As explained in Align's opening brief and in opposition to Ormco's
7  motion for summary judgment of no invalidity, the Laurendeau reference actually
8  disclosed performing modeling for purposes of orthodontic treatment. (Docket No. 964
9  at p. 15; Docket No. 1016 at p. 18.) Similarly, the Duret patent discloses scanning at
10 least one surface of the teeth which is sufficient for performing orthodontic treatment
11 (*e.g.,* to attach a bracket for wire braces as performed by Ormco and disclosed in the
12 '444 patent). (Docket No. 964 at pp. 18-19.) Thus, Ormco cannot defeat summary
13 judgment of invalidity even under its own proposed rationale for adding limitations to
14 the term shape.

15 Ormco's improper position is highlighted by the definition – or lack thereof – of
16 "shape" it now urges. Rather than adopt an affirmative definition of the term "shape,"
17 Ormco's interpretation has been a moving target depending on the position it needs to
18 take. Indeed, when faced with the Laurendeau reference and Duret patent, Ormco
19 simply argues that "shape" does not include what is disclosed in those references.[5]

20 Clearly if the authors of the Laurendeau reference or the Duret patent were
21 practicing their disclosed methods today, Ormco would switch its course and argue that
22 their activities fall within the plain language of the asserted claims. Ormco cannot have
23 it both ways because "[t]hat which infringes, if later, would anticipate, if earlier."
24 *Peters v. Active Manufacturing Co.*, 129 U.S. 530, 537 (1889).

---

[5] The Laurendeau reference itself actually uses the word "shape" in reference to the data obtained from the scan of wax impression. (Docket No. 967, Exh. 4 at ALN116265.)

**B.     The Laurendeau Reference Discloses "from the generated data, producing separate digital representations of the shapes of each of a plurality of individual teeth of the patient"**

The Laurendeau reference discloses producing separate digital representations of the shapes of each of a plurality of teeth from undifferentiated 3D data of a plurality of teeth. (*See* Docket No. 964 at pp. 13-15.)  This is accomplished in the Laurendeau reference by the detection of the interstices between the teeth. (*i.e.*, the space between the edges (the "distal" or outer edges) of the neighboring teeth.)  To detect the interstices, the data associated with each tooth is identified. (Docket No. 967, Exh. 4 at ALN116265 ("The next step is to find the interstices between the teeth using the *WR-Image*…The teeth correspond to regions of the *WR*-image with large Zp values in [Figure 8].")  In determining the interstices between the teeth, the Laurendeau reference necessarily determined the distal contact points of the teeth (the outer ends of the teeth). Indeed, this is precisely what is described in the '444 patent.  The '444 patent determines the mesio-distal widths of each tooth (how wide the tooth is) and then determines the "distances between the mesio-distal extremities" of each tooth (the space between the teeth). (Docket No. 967 Exhibit 1 at col. 22:60-65.)  This calculation gives the space between the teeth which is necessary to "determine the total length of the dental arch and the relative center-to-center spacings of the teeth along the arch." (*Id*.)  Like the '444 patent, this association of data with the individual teeth creates the separate digital representations of individual teeth in the Laurendeau reference.

Figure 8 of the Laurendeau reference confirms that separate digital representations have been produced by data being associated with individual teeth from the undifferentiated scan of a plurality of teeth:



Fig. 8. Parametric curves $f_1(s)$ and $f_2(s)$ computed from the application of (12)–(13) to the 3-D data along the curved axis of the dental imprint in Fig. 5(a). The curves show peaks, valleys and plateaus.

(*Id.* at ALN116267.) Clearly the "valleys" of each tooth have been identified and thus separated from the undifferentiated data. (UF 49 "Valleys correspond to teeth….".) Figure 8 also shows "small narrow peaks [which] are caused by local range variations in the bottom part of the molars" and "plateaus which correspond to missing teeth or wide interstices between the teeth." (*Id.* 49.) Indeed the particular tooth which corresponds to each portion of the data is indicated in Figure 8 itself. (*See id.* (upper column heading: "molar", "pre-molar", "canine", "incisor").) Thus, Ormco's argument that Laurendeau has not associated separate data with each tooth is incorrect.[6]

The production of separate digital representations in the Laurendeau reference is

---

[6] Ormco's argument that the Laurendeau reference has not identified the *type* of teeth, while irrelevant because it is not a requirement of the asserted claims, is also disproved by Figure 8.

1  accomplished in the computer, not manually as Ormco suggests.  (*See* Docket No. 1014
2  at p. 8.)  There is no dispute that 3D digital representations of multiple teeth are created
3  and used by the Laurendeau reference and Figure 8 describes how this data is processed
4  by the computer to associate it with individual teeth: "Parametric curves $f_1(s)$ and $f_2(s)$
5  computed from the application of (12)-(13) in the 3-D data along the curved axis of the
6  dental imprint in Fig. 5(a)."  (Docket No. 967, Exh. 4 at ALN116267.)  Cleary the
7  computer is calculating, using the disclosed algorithms, which data is associated with
8  each tooth.

### C. The Duret Patent Disclosed "grouping the generated data into separate digital representations of the shapes of each of a plurality of individual teeth"

Ormco's discussion of the Duret patent highlights its improper interpretation of the scope of the claims and the lack of any genuine material factual dispute as to the disclosure of that patent.  As explained in Align's opening brief, the Duret patent anticipates claim 45 because it discloses scanning a plurality of teeth directly from the mouth of the patent and grouping the generated data into separate digital representations of the shapes of each of a plurality of teeth.  Again, Ormco does not dispute the disclosure contained in the Duret patent, rather, it draws conclusions from that disclosure that have no logical support.  Ormco agrees that the Duret patent discloses "determination of planes at the boundaries of adjacent teeth" but then states that this does not indicate that teeth are identified within the computer. (Docket No. 1014 at p. 12.)  Ormco does not explain how planes at the boundaries of adjacent teeth can be created without identifying the boundaries (*i.e.*, the shape of the side of the tooth) associated with each tooth in the computer.[7]  Indeed, Ormco's reference to determining the space for a building between two adjacent buildings proves this point.  Obviously the shape of the side of the adjacent buildings (like the mesial and distal shapes of the sides of the adjacent teeth in the Duret patent) need to be determined to

---

[7] Align explained in its opening brief that this is exactly how the Duret patent disclosed creating the planes at the boundaries of the adjacent teeth. (Docket No. 964 at p. 19.)

know the size of the space (*e.g.*, the interstices between the teeth) for the new building. If such a determination is carried out in a computer from undifferentiated 3D data (as in the Duret patent) it necessarily creates separate digital representations of the adjacent buildings (or adjacent teeth in the Duret patent) by associating data with those buildings.

Ormco's other argument that the shape of the tooth stump is not identified because "Duret discloses scanning the stump in a scan separate from that which captures the extended region used to develop the envelope" is without support. (*See* Docket No. 1014 at p. 12.) Experts from both parties agree that Duret disclosed scanning the tooth stump and portions of the adjacent teeth in a single scan. (UF 24) Moreover, Ormco did not dispute this fact contained in its statement of genuine issues. (*See* Docket No. 1014-2, Ormco's Response to UF 24.)

There is no dispute that data of the stump portion of the scan of multiple teeth is identified separately in the computer for purposes of determining the interior of the crown. Align's motion for summary judgment should be granted based on this fact alone. (*See id.*, Ormco's Response to UF 28.)

But Ormco goes even further. It now says that the Duret patent does not anticipate because it does not teach "landmark parameters." (Docket No. 1014 at 1). However, **landmark parameters are not a requirement of claim 45** and dependent claim 38 (the only claim with the landmark parameters requirement) does not depend from claim 45. Not only is Ormco's attempt to import the landmark parameters requirement into claim 45 improper, it also cannot be a basis to defeat Align's motion.

D. **The Laurendeau Reference Discloses The "Landmark Parameters" Of Claim 38 As Construed By The Court**

Once again, Ormco does not dispute the factual teachings of the Laurendeau reference including the fact that it discloses attributes derived from locations on teeth that are useful in modeling tooth movement. As detailed in its opening brief, the Laurendeau reference discloses landmark parameters. (Docket No. 964 at pp. 15-17.)

Being unable to dispute this, Ormco again tries to rewrite the claim language and add the further requirement that a reference must prospectively model actual tooth movement for purposes of orthodontic treatment. However, as Ormco pointed out in its brief, the Court determined that actual tooth movement was not necessary to meet the landmark parameters requirement. (Docket No. 1014 at p. 16; Docket No. 933 at 13-14 ("the phrase in plaintiff's proposed claim construction 'for modeling tooth movement' ***does not indicate that the claim itself requires the digital representations of teeth to be moved*** to finish tooth positions." (emphasis added).) Thus, because the Court has already determined that actual tooth movement is not necessary in order to meet the landmark parameter requirement, Ormco's dispute over that requirement is moot and cannot be a basis to save its invalid claims from being anticipated by the Laurendeau reference. Align set out a detailed analysis of why Ormco's position is improper and directly contrary to decisions of this Court and the Court of Appeals for the Federal Circuit in both its opening brief and its opposition to Ormco's motion for no invalidity.[8] (Docket No. 964 at pp. 15-17; Docket No. 1016 at pp. 13-16.)

As explained in Align's opening brief, Table 1 of the Laurendeau reference identifies "orthodontic parameters," which reflect attributes of teeth derived from locations on the teeth that can be used for modeling tooth movement. (UF 58.) Dr. Roberts confirmed that both the sagittal canine relation and sagittal molar relation parameters listed in Table 1 of the Laurendeau reference are attributes of teeth that can be used for modeling tooth movement.[9] (UF 59.) Further, Dr. Roberts also confirmed that, to determine these attributes used for modeling tooth movement, one would have to identify points on teeth (*i.e.*, landmark parameters). (UF 60.)

---

[8] Ormco's attacks on Dr. Rekow's opinions are another transparent attempt to manufacture a dispute of fact in an attempt to defeat Align's motion. Ormco's assertions about Dr. Rekow's position regarding landmark parameters are incorrect. (*See* Docket No. 1016-2, Align's Responses 66-69.)

[9] Align notes that Ormco does not dispute that the detection of the interstices meets the landmark parameter requirement of claim 38 as asserted by Align in its opening brief. (Docket No. 964 at p. 16.) This lack of dispute alone warrants granting summary judgment in favor of Align that Laurendeau anticipates claim 38.

In light of this undisputed evidence, Ormco's argument that the Laurendeau reference does not disclose landmark parameters in Table 1 because "[t]he parameters listed in Table 1 of Laurendeau describe the relationship between teeth in the arches and are not locations on individual teeth" cannot stand. (Docket No. 1014 at p. 15.) Clearly relationships between teeth, as Ormco admits are disclosed in Table 1, can only be determined by selecting locations on the teeth from which to measure the desired relationship. Dr. Roberts confirmed this in his testimony when he said this is how the sagittal canine relation is determined. (UF 60.)

Moreover, contrary to Ormco's assertion, these parameters are measured mathematically, in a computer:

> A set of ten parameters has been defined (see Table I) [11]. These parameters have to be measured in the horizontal, frontal and vertical (sagittal) planes…It is required to obtain a 3-D representation of the profile in order to measure the parameters in 3-D…This information on the profiles ***has to be analyzed by a computer vision algorithm to extract the parameters***.

(Docket No. 967, Exh. 4 at ALN116262 (emphasis added).) In light of this disclosure, it is difficult to imagine how Ormco can argue that the attributes disclosed in Table 1 were not measured mathematically in a computer.

### E. The Laurendeau Reference Discloses Representing Each Of The Plurality Of Teeth By A 2D Contour As Required By Claim 39

As Align demonstrated in its opening brief, Figure 8 of the Laurendeau reference discloses representing each of the plurality of teeth by a 2D contour required by claim 39. (Docket No. 967, Exh. 4 at ALN116267.) The "peaks, valleys and plateaus" of each tooth identified in the 2D contours in Figure 8 are contours representing individual teeth. (*See* Docket No. 967, Exh. 4 at ALN116267 ("molar", "pre-molar", "canine", "incisor").) Thus, the Laurendeau reference anticipates claim 39.

### F. Claim 40 Is Anticipated By The Laurendeau Reference

Claim 40 is anticipated by the Laurendeau reference because, in addition to disclosing every limitation of claim 37, the Laurendeau reference disclosed using ***an image on a screen*** to produce separate digital representations as Ormco asserts is necessary.[10] Ormco again attempts to mislead the Court by leaving out the key language (the "*WR*-image") language in its quotation of the Laurendeau reference. (UF 43 ("The first segmentation step is to compare the coordinates of the center point of the top horizontal line of the ***WR-image***.") (emphasis added).) Thus, claim 40 is anticipated as well.

## III. THE LAURENDEAU REFERENCE CONTAINS AN ENABLING DISCLOSURE DESCRIBING THE OPERATION OF A CURRENT SYSTEM

Faced with clear evidence that the Laurendeau reference discloses each element of claims 37-40 and 69, Ormco, for the first time in the case, now argues in its opposition that the Laurendeau reference is not enabling.[11] Ormco cannot seriously dispute the enabling disclosure of the Laurendeau reference which contains detailed descriptions of the system including numerous tables, figures showing results, and the actual mathematical equations necessary to produce separate digital representations. Instead of dealing with this disclosure, Ormco ignores the Laurendeau reference's teachings with the misplaced contention that the Laurendeau referenced disclosed some "proposed" or "future system". A mere reading of the Laurendeau reference dispels Ormco's misleading characterization of this reference.

---

[10] Align disagrees with Ormco's characterization of claim 40 as being directed towards an image on a screen as explained in its opposition to Ormco's motion for summary judgment of no invalidity. (Docket No. 1016 at p. 19.)

[11] Ormco's argument that Align's experts did not consider whether the prior art references were enabling is incorrect. Align's experts reviewed the prior art from the perspective of one of skill in the art and determined that they disclosed each of the elements of the asserted claims. Align's experts (and Ormco's experts as well) had no problem determining what the Laurendeau reference taught. Nowhere in either of Ormco's experts' reports, or during their depositions, did they challenge the Laurendeau reference as not enabling.

The Laurendeau reference explicitly describes both his current system and future, proposed improvements on the system:

> This paper is divided as follows. First, Section II presents the part of the system that is responsible for the acquisition of the 3-D images of the imprints. Section II-A presents an overview of three-dimensional data acquisition techniques. Section II-B presents the basic principles of the range finding technique that has been designed for the orthodontic application, and ***describes the actual implementation of the acquisition system for the measurement of imprints on both sides of the bite wafer. Section III describes the 3-D image processing algorithm for the detection of the interstices between teeth***. Section III-A details the preprocessing steps of the algorithm, and Section III-B describes the steps for the detection of the interstices. System implementation is discussed in Section IV. ***Section V concludes on future developments.***

(Docket No. 967, Exh. 4 at ALN116262 (emphasis added).)

Thus, everything contained in the entire Laurendeau reference, with the exception of Section V (upon which Align does not rely), describes what the authors have already implemented (and thus enabled). This includes: in Section II, the scanning of the wax imprints of shapes of a plurality of teeth to produce 3D undifferentiated data of those teeth; in Section III, the separation of that data to produce individual tooth representations by identification of where each tooth ends and the next tooth begins (*i.e.,* the interstices); in Section I, the identification of landmark parameters which consist of attributes that are derived from points on teeth (the parameters are listed in Table 1); and in Section III, the use of 2D contours to represent each tooth (the parametric curves in Figure 8). (*Id.*) Not only do these sections set out the disclosure of how to accomplish the tasks above, but they also set out the results showing that the authors accomplished that task, in the data contained in the charts and figures and the disclosure of the reference itself. (*See, e.g., id.* at ALN116269 ("The detection of the interstices between the teeth ***has proved*** to be very reliable….") (emphasis added).) Align relies on nothing in Section V on "future work" to show the Laurendeau reference anticipates the asserted claims.

The "future work" contemplated by the authors of the Laurendeau reference was simply increasing the level of automation in his system to a system that is ***fully***

*automatic*. That discussion does nothing to diminish the actual teachings and actual experimental results contained in the Laurendeau reference which related to Ormco's asserted patent claims. (*Id.* at ALN116269.) The Laurendeau reference actually disclosed a system that was not fully automatic but required some "limited human intervention." (*Id.* at ALN116262.) Thus, Ormco's assertion that the Laurendeau reference only describes a "part of a diagnosis system" or a "proposed approach" is absolutely without merit and is refuted by the actual disclosure in the Laurendeau reference.

### IV. ALIGN'S EXPERT EVIDENCE IS PROPER

As explained at length in both Align's opposition to Ormco's motion to strike Mr. Ferraro's opinions and the opposition to Ormco's motion for summary judgment, Mr. Ferraro's analysis was conducted from the proper perspective of a person of ordinary skill in the art and is properly supported and admissible expert opinion. (Docket No. 1004; Docket No. 1016 at pp. 6-8.) Mr. Ferraro was clearly able to analyze the asserted claims which all deal with the engineering task of processing of digital information of teeth. Where necessary, he relied on the orthodontic expertise of Dr. Rekow, an orthodontist. Align's other expert, Dr. Rekow, had no difficulty describing the teachings of the prior art from an orthodontic perspective and conferred with Mr. Ferraro regarding her findings when she discovered prior art that disclosed the "landmark parameter" requirement of claim 38. In any event, Ormco's own expert testimony is sufficient support for Align's motion for summary judgment of invalidity to be granted.

///

///

///

## V. CONCLUSION

For the foregoing reasons and the reasons explained in Align's opening brief, Align respectfully requests its motion be granted and that the Court find that claims 37-40 and 69 are invalid as anticipated by the Laurendeau reference and that claim 45 is invalid as anticipated by the Duret patent.

DATED: February 2, 2009   Respectfully submitted,

           TOWNSEND AND TOWNSEND AND CREW LLP


           By: /s/ Jon V. Swenson
             **Daniel J. Furniss**
             **Anne M. Rogaski**
             **Jon V. Swenson**
             **Heidi J. Kim**

           Attorneys for Defendant
           ALIGN TECHNOLOGY, INC.

61783648 v1