O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ORMCO CORPORATION<br><br>            Plaintiff,<br><br>vs.<br><br>ALIGN TECHNOLOGY, INC.<br><br>            Defendant. | Case No. SACV 03-16 CAS (ANx)<br><br>ORDER DENYING ALIGN'S MOTION TO EXCLUDE OPINIONS OF DRS. ROBERTS AND HALL AND DENYING ORMCO'S MOTION TO STRIKE RICHARD FERRARO AND ALIGN'S DEFINITION OF A PERSON OF ORDINARY SKILL IN THE ART |

**I. INTRODUCTION**

Plaintiff Ormco Corp. ("Ormco") filed the instant action against defendant Align Technology, Inc. ("Align") on January 6, 2003, alleging that Align was infringing three related Ormco patents: (1) U.S. Patent No. 5,447,432 ("the '432 patent"); (2) U.S. Patent No. 5,683,243 ("the '243 patent"); (3) U.S. Patent No. 6,244,861 ("the '861 patent"). Ormco later amended its complaint to allege infringement of a fourth patent, U.S. Patent No. 6,616,444 ("the '444 patent").

On May 13, 2004, the Court granted Align's motion for summary judgment of noninfringement of Ormco's patents. See Ormco Corp. v Align Tech., Inc., 498 F.3d 1307, 1311 (Fed. Cir. 2007), citing Ormco Corp. v. Align Tech., Inc., No. 03-cv-00016 slip. op. (C.D. Cal. May 13, 2004). On August 20, 2004, the Court granted Align's motion for

summary judgment of nonenablement of Ormco's patents. See id., citing Ormco Corp. v. Align Tech., Inc., No. 03-cv-00016, slip. op. (C.D. Cal. Aug. 20, 2004).

Ormco appealed to the Federal Circuit. On August 24, 2007, the Federal Circuit affirmed the Court's grant of summary judgment of noninfringement and nonenablement as to claims 1, 9, and 10 of the '432 patent, claims 1 and 2 of the '243 patent, claims 1, 3, 4, 9-12 and 16-18 of the '861 patent, and claims 1-5, 8-36, 41-44, 46-68, and 70-79 of the '444 patent. Ormco, 498 F.3d at 1320. However, the court reversed the grant of summary judgment of noninfringement and nonenablement of claims 37-40, 45, and 69 of the '444 patent, and remanded. Id.

On March 24, 2008, Align moved for a Markman hearing, requesting construction of terms in the remaining '444 patent claims at issue. On October 3, 2008, this Court issued an order construing the claims.

On January 16, 2009, Ormco and Align each filed motions for summary judgment on the issue of the validity of the remaining claims in the '444 patent and motions for summary judgment on the issue of infringement   The Court addresses those motions in a separate order. Concurrent with those motions, Ormco filed a motion to strike the expert testimony of Richard Ferraro, and Align filed a motion to exclude the infringement opinions and testimony of Dr. W. Eugene Roberts and Dr. Ernest L. Hall. (956, 966). Both parties filed oppositions to the respective motions on January 26, 2009. Ormco filed a reply on February 2, 2009, and Align filed a reply on February 5, 2009.[1]

A hearing was held on the various motions on February 9, 2009. Because the two motions relating to expert testimony raise similar questions of fact and law, the Court considers them together. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

---

[1] Although untimely, see L.R. 7-10, the Court exercises its discretion to consider Align's Reply.

2

## II. THE '444 PATENT

The '444 patent, which is the only patent at issue herein, is a patent for "a system and method by which an orthodontic appliance is automatically designed and manufactured from digital low jaw and tooth shape data . . ." The '444 Patent, Abstract. The system involves scanning a model of the patient's mouth to "produce two or three dimensional images and digitizing contours of selected points." Id. The system allows for a computer to be programmed "to calculate finish positions of the teeth, then to design an appliance to move the teeth to the calculated positions." Id.

In its decision overturning the Court's granting of summary judgment for defendant on claims 37-40, 45, and 69 of the '444 patent, the Federal Circuit distinguished these claims from the others on the ground that claims 37-40, 45, and 69 did not relate to "automatic design or automatic calculation of finish tooth positions." Ormco, 498 F.3d at 1317. Instead, the Court held, they relate to "the preliminary gathering and organization of tooth data as an aid to further unspecified orthodontic treatment or for use in creation of a digital model." Id. Because defendant relies on "skilled operators rather than a fully automated computerized process to determine finish positions of the teeth," summary judgment was proper as to those claims that referred to automatic calculation or design but not to the six claims at issue. Id.

## III. THE EXPERT OPINIONS

### A. Richard F. Ferraro

Align has submitted the expert report, declarations, and deposition testimony of Richard F. Ferraro ("Ferraro"). In these documents, Ferraro gives his opinion on both the validity of the '444 patent and whether Align has infringed the '444 patent. Ferraro is an electrical engineer, and a "consultant, author, and inventor in the fields of computergraphics and medical instrumentation." Marschall Decl. in Supp. of Ormco Mot. to Strike, Ex. 6 ("Ormco Ferraro Report Excerpt") at 72. He has general experience in signal image processing, and has worked in the design of image processing and pattern

3

recognition hardware for various medical instruments and diagnostic tools. Id. at 72-73. Ferraro concedes that he has no expertise or experience in orthodontics. Marschall Decl. in Supp. of Ormco Mot. to Strike, Ex. 2 ("Ormco Ferraro Depo. Excerpt") at 77:1-77:11.

In preparing his opinions relating to the '444 patent, Ferraro consulted with Dr. E. Dianne Rekow, Senior Vice Provost for Engineering and Technology at New York University and an orthodontist with substantial experience in the use of computer-aided design and manufacturing activities relating to orthodontics and dentistry. Rekow Decl. in Supp. of Align Opp'n to Mot. to Strike ¶¶ 3-12. Ferraro and Rekow had between three and five meetings and conversations about issues relating to the validity of the patents. Rogaski Decl. in Supp. of Align Opp'n to Mot. to Strike, Ex. 7 ("Align Ferraro Depo. Excerpt") at 209:9-15. In particular, Rekow provided Ferraro with "general information about various dental and orthodontic terms" and "input about whether the parameters he identified were 'landmark parameters' as the Court construed that term." Id. ¶ 12; see also Rogaski Decl. in Supp. of Align's Opp'n to Mot. to Strike, Ex. 5 ("Align Ferraro Report Excerpt") at 47; Rogaski Decl. in Supp. of Align Opp'n to Mot. to Strike, Ex. 6 ("Rekow Depo.") at 193:23- 196:2.

**B.     Dr. W. Eugene Roberts and Dr. Ernest L. Hall**

Ormco has submitted the expert reports, declarations, and deposition testimony of Dr. W. Eugene Roberts ("Roberts") and Dr. Ernest L. Hall ("Hall"). Both provide expert opinions as to whether Align has infringed the '444 patent.

Roberts is a practicing orthodontist with thirty years of experience. Roberts Decl. in Supp. of Ormco Opp'n to Mot. to Exclude ("Roberts Decl.") ¶ 1. Roberts is a Professor of Orthodontics at Indiana University and an Adjunct Professor of Mechanical Engineering at Purdue University. Dickinson Decl. in Supp. of Ormco Opp'n to Mot. to Exclude, Ex. E. He also holds a Ph.D in anatomy with a focus in bone physiology. Dickinson Decl. in Supp. of Ormco Opp'n to Mot. to Exclude, Ex. C ("Roberts Depo.") at 5:22-23. In addition to his clinical orthodontics practice, he has conducted research in the areas of bone

physiology, dental implants and tooth movement. Id. at 7:22 -25:25. As part of this research, Roberts has studied "finite element modeling," wherein a particular anatomical structure is scanned via x-ray or computed tomography ("CT") into a computer, and the computer produces a three-dimensional model. Id. at 10:3-20. This work has included modeling of the movement of teeth. Id. at 12:22-15:17. Roberts has no computer engineering experience. Id. at 21:2-7.

Roberts submitted an expert report on November 10, 2008, based upon approximately fifty hours of review of several patents, processes, demonstrations, and court filings. Roberts Decl. ¶¶ 3-5. He has stated that, at the time of that report, he "had a good understanding of the Invisalign process" and "the process steps from scanning through manufacture of aligners." Roberts Depo. at 62:1-7.

Hall is an electrical engineer and Professor of Robotics at the University of Cincinatti. Hall Decl. in Supp. of Ormco Opp'n to Mot. to Exclude ("Hall Decl.") ¶ 1. Hall submitted an expert report on November 10, 2008, based upon nearly sixty hours of review of several patents, processes, demonstrations, and court filings. Id. ¶¶ 3-5. Hall also read and considered Roberts' draft report on infringement prior to forming his own opinions of infringement of the '444 patent. Dickinson Decl. in Supp. of Ormco Opp'n to Mot. to Exclude, Ex. E ("Hall Depo.") at 20:14-21:4.

Drs. Hall and Roberts met and conferred as to their opinions of infringement, along with Ormco's attorneys, on September 18, October 20, and November 5, 2008. Hall Decl. ¶ 6. In this conference, the two discussed the definition of a person "skilled in the art," and together reviewed the Align Toothshaper demonstration and other process steps several times. Id. ¶ 7. Each "provided input regarding infringement based on [their] individual expertise." Id. ¶ 6. Roberts asked Hall several "technical questions," including several involving computer programming and source code, Roberts Depo. at 70:10-20, and Hall asked Roberts several questions related to clinical orthodontics, Roberts Depo. at 75:12-76:4. The two also together made changes to the claim tables included in their expert

reports. Hall Depo. at 12:8-23. Each reviewed each others written reports before they were finalized. Hall Decl. ¶¶ 8-9; Roberts Decl. ¶¶ 8-9.

## IV.  LEGAL STANDARD

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702.

While the court has broad discretion in deciding whether this standard has been met, the court cannot shirk its gatekeeper duties. See General Elec. Co. v. Joiner, 522 U.S. 136, 142, 146 (1997); DSU Medical Corp. v. JMS Co., Ltd., 296 F. Supp.2d 1140, 1146-48 (N.D. Cal. 2003). The determination of whether expert testimony is admissible "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-93 (1993). An expert witness' testimony must also be based on "sufficient facts or data." Fed. R. Evid. 702. The proponent of the testimony must establish admissibility by a preponderance of the evidence. DSU Medical, 296 F. Supp.2d at 1146-47, citing Bourjaily v. United States, 483 U.S. 171, 175-76 (1987).

## V.  DISCUSSION

Ormco moves to strike the expert reports and opinion testimony of Align's purported expert Ferraro, an engineer, as related to the validity of the claims-at-issue, and Align moves to strike the expert reports and opinion testimony of Ormco's purported experts Dr. Eugene Roberts, an orthodontist, and Dr. Ernest L. Hall, an engineer, as related to the allegations of infringement.

Ormco bases its motion on two contentions: (1) Ferraro is not a "person of ordinary skill in the art;" and (2) due to several contradictions, Ferraro's testimony is unreliable. Align seeks to strike the testimony of Roberts and Hall on the bases that (1) since neither

relied on the other in developing his opinion, neither was a "person of ordinary skill in the art;" (2) the opinions are unreliable as they "are based on mere speculation and contain an incomplete and unreliable analysis based on improper methodology," and (3) the opinions set-forth were "clearly ghostwritten by Ormco's attorneys" and thus cannot be considered as "expert opinion." Align Mem. in Supp. of Mot. to Exclude Infringement Ops. ("Align Mem.") at 1.

### A. An Expert in the Pertinent Art

Under the Federal Circuit's recent opinion in <u>Sundance, Inc. v. DeMonte Fabricating Ltd.</u>, 550 F.3d 1356, 1363 (Fed. Cir. 2008), "it is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art." Accordingly, if any of the challenged witnesses fail to qualify as an expert in the pertinent art, the Court must strike his testimony.

The parties focus their dispute on this issue around the definition of "a person of ordinary skill in the art." However, "the 'person of ordinary skill in the art' is a theoretical construct used in determining obviousness under [35 U.S.C.] § 103, and is not descriptive of some particular individual." <u>Endress + Hauser, Inc. v. Hawk Measurement Systems Pty. Ltd.</u>, 122 F.3d 1040, 1042 (Fed. Cir. 1997); <u>see also</u> <u>Kimberly-Clark Corp. v. Johnson & Johnson</u>, 745 F.2d 1437, 1454 (Fed. Cir. 1984) (describing person of ordinary skill in the art as an "imaginary" legal creation). In <u>Endress+Hauser,</u> the Federal Circuit explicitly refused to limit expert testimony to these hypothetical persons, noting:

> To suggest that the construct applies to particular individuals could mean that a person of exceptional skill in the art would be disqualified from testifying as an expert because not ordinary enough.

122 F.3d at 1042. The Court declines to read <u>Sundance</u> as overruling this principle.

The issue of the definition of the person of ordinary skill in the art remains relevant, though, for two reasons. First, the relevant "art" is the same in evaluating an expert witness and in determining the person of ordinary skill for obviousness purposes. Second, the parties argue that a witness who is not trained in the relevant art cannot

7

provide expert testimony as to what a person of ordinary skill in that art would or would not know in a given circumstance.

In <u>Sundance</u>, the Federal Circuit reviewed a district court decision under Federal Rule of Evidence 702 to allow a patent attorney to testify as an expert on issues of claim construction, infringement, validity, and inequitable conduct, based on his experience in "patent law and procedure." 550 F.3d at 1360. The Federal Circuit determined that, in so doing, the district court had abused its discretion in allowing the witness to testify on issues of infringement and validity. Since the attorney had no "relevant technical expertise" in the area of the patent, the court found he was "not 'qualified as an expert by knowledge, skill, experience, training, or education' in the pertinent art" and thus could not "see how he could 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" 550 F.3d at 1362, <u>quoting</u> Fed. R. of Evid. 702.

Here, however, the parties concede that each witness has some relevant technical expertise. The parties dispute, however, what the "pertinent art" is, as demonstrated by their debate as to whether a person of ordinary skill in the art must be an orthodontist with access to an engineer or software developer, or an engineer or software developer with access to an orthodontist.

Ormco contends that a person of ordinary skill in the art disclosed in the '444 patent is "an orthodontist having access to a person having (1) a B.S. in engineering or computer science, or its equivalent, and (2) training in, or experience with CAD/CAM." Ormco Mot. to Strike ("Ormco Mot.") at 3, n. 3; Ormco Opp'n to Mot. to Exclude ("Ormco Opp'n") at 1.

Align argues that the person of ordinary skill in the art is:

> an engineer, bioengineer, or electrical engineer (or equivalent) with (1) a bachelor of science (B.S.) or equivalent, and at least three years of experience designing biomedical systems that scan, signal and image process, interface with a user and display biomedical signals; and (2) access to skilled personnel familiar with orthodontics and dentistry.

Align Opp'n ("Align Opp'n") to Mot. to Strike at 6, <u>citing</u> Ferraro Decl. ¶ 12.

Ormco makes much of the fact that in response to an interrogatory, on April 30, 2004, Align stated that:

> a person of ordinary skill in the art to which the subject matter disclosed in Ormco's patents is an orthodontist with several years of training working in conjunction with a software developer who understands and can implement the principles associated with using software to move objects in relation to each other.

Marschall Decl. in Supp. of Ormco Mot., Ex. 1. Ferraro used this definition in conducting his invalidity analysis prior to remand. Ormco Ferraro Depo. Excerpt at 70:10-71:9. Align argues that the relevant person of ordinary skill in the art has changed, since all 69 claims of the '444 patent are no longer at issue.

To explain the different definitions, Ferraro noted that the "balance" between orthodontic practice and engineering had shifted. When analyzing all 69 claims, the balance had tilted towards "orthodontic practice primarily;" when analyzing the remaining claims, Ferraro saw "the interface being squarely in the court of the electrical engineer with the assistance of the orthodontist." Ormco Ferraro Depo. Excerpt at 76:6-15.

While this explanation is logically plausible, the person of ordinary skill in the art is not generally determined on a claim by claim basis as Align suggests. Rather, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Nonetheless, the Court is not bound by any party's definition of a "person of ordinary skill in the art," and thus finds Ormco's argument of estoppel

moot.[2]

Neither party has presented any case law suggesting that there can only be one pertinent or relevant art for a given patent. The Federal Circuit has held that in determining "the relevant art" "the court must look to the nature of the problem confronting the inventor." Bancorp Services, L.L.C. v. Hartford Life Ins. Co., 359 F.3d 1367, 1375 (Fed. Cir. 2004), citing Orthopedic Equip. Co. v. United States, 702 F.2d 1005, 1009 (Fed. Cir. 1983). See also Ryko Mfg. Co. v. Nu-Star, Inc., 950 F.2d 714 (Fed. Cir. 1991); Lucent Technologies, Inc. v. Gateway, Inc., 470 F. Supp.2d 1163, 1179 (S.D. Cal. 2007). In this inquiry, there are several factors to consider, "including an examination of the type of skills needed to understand the patent disclosure, the type of art applied to the application in the Patent and Trademark Office, and the areas of expertise of witnesses who are recruited to testify concerning the obviousness of the invention." Armament Systems & Procedures, Inc. V. Monadnock Lifetime Prods., Inc., 168 F.3d 1319, 1998 WL 537746, at *6 (Fed. Cir. 1998) (unpub. op.). However, "the law does not require an expert opining from the perspective of 'one of ordinary skill in the art' to have the same qualifications as the inventor," as long as they are "sufficiently qualified to construe the patent and understand the design and components of the claimed invention" and the relevant prior art. Neutrino Development Corp. v.

---

[2] Ormco also requests the court deem Ferraro's more recent definitions a "sham" under the "sham affidavit" or "Foster-Radobenko" rule, which "applies to conflicts between affidavits and interrogatory responses as well as deposition testimony." School Dist. No. 1J, Multnomah Co., Oreg., v. AcandS, Inc., 5 F.3d 1255, 1264 (9th Cir. 1993), citing Foster v. Arcata Assocs., Inc., 772 F.2d 1453, 1462 (9th Cir. 1985); Radobenko v. Automated Equipment Corp., 520 F.2d 540, 544 (9th Cir. 1975). However, "the Foster-Radobenko rule does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony. Rather, the Radobenko court was concerned with 'sham' testimony that flatly contradicts earlier testimony in an attempt to "create" an issue of fact and avoid summary judgment." Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262 (9th Cir. 1991). While the Court notes the change of position here, it cannot conclude that that change was a "sham."

Sonosite, Inc., 410 F. Supp.2d 529 (S.D. Tex. 2006) (citing Orthopedic Equip. Co. v. All Orthopedic Appliances, 707 F.2d 1376, 1382 (Fed. Cir. 1983)), subs. op. aff'd by 210 Fed. App'x 991 (Fed. Cir. 2006).

The '444 patent itself states that the invention particularly relates "to the automated design, manufacture and use of orthodontic appliances." The '444 Patent at 1. The task that faced the inventor of the '444 patent was both an orthodontic one and one of automation: how could a computer be used to model unspecified orthodontic treatment. To solve this problem, knowledge from both the fields of orthodontics and computer imaging are needed. At the hearing, Ormco argued that the problem was merely "what points on a tooth" to use, since the patent makes use of pre-existing technology. This is an oversimplification of the '444 patent. While much of the technology was pre-existing, namely the devices used to scan a patient's teeth and computer-aided design ("CAD") software in general, the technology had not been adapted to show how teeth would move over time via orthodontic appliances. The adaptation of this technology could not be done by an orthodontist alone.

When asked "What is the art that is involved with the '444 patent?" Ferraro responded:

> It is the interface between an orthodontist and a biomedical engineer, a person that has skill designing instrumentation used for the diagnostic or therapeutic evaluation of people of anatomy and our physiology. . .

Ferraro Dec. 2008 Depo. at 75:21-76:1. Accordingly, Ferraro noted that "the hypothetical person of ordinary skill in the art would be the combination of an engineer/computer programmer and an orthodontist/dentist." Marschall Decl., Ex. 6 ("Ferraro Expert Report") at 65-66. Roberts indicated that while, as an orthodontist, he could understand the components of the '444 patent in general, "when it comes to specifics, [he] would certainly need the help of [his] engineering colleagues." Rogaski Decl. in Supp. of Align's Opp'n to Mot. to Strike, Ex. 10 ("Roberts Depo.") at 254:5-9.

Ferraro also noted that his opinions as to invalidity would not change whether the primary perspective was that of an orthodontist/dentist or engineer/computer programmer.[3]  Id. at 66.

The Court has identified several other cases where courts have recognized that more than one field of expertise may be relevant to a patent. See, e.g., Daiichi Sankyo Co., Ltd. v. Apotex, Inc., 501 F.3d 1254, 1257 (Fed. Cir. 2007) (noting both medical specialists in treating ears and individuals engaged in pharmaceutical development weres persons of ordinary skill in the art); Glaxo Group Ltd. v. Teva Pharmaceuticals USA, Inc., C.A.02-219 GMS, 2004 WL 1875017, at *2 (D. Del. Aug. 20, 2004) (finding the person of ordinary skill in the art could be either "one with an advanced degree in pharmacology and/*or* a medical doctor with experience in clinical pharmacology" (emphasis added)); Medical Designs, Inc. v. Medical Technology, Inc., 786 F. Supp. 614, 625 (N.D. Tex. 1992) (in case involving patent for a knee brace, "a person of ordinary skill in the art at the time of the invention would have a variety of educational backgrounds," and did not need to "have a professional education such as a medical or engineering degree").

The patent itself, the problem the inventor sought to resolve, and the testimony of both parties' experts all support a finding that knowledge of both orthodontics and computer programming/biomedical engineering/medical imaging are relevant, and necessary, to understand the '444 patent. Accordingly, the Court finds that both orthodontics and computer programming/ biomedical engineering/medical imaging[4] are

---

[3] Ormco argues that this statement by Ferraro shows unreliability. The Court disagrees.

[4] The Court recognizes these terms are not synonymous, but the parties and their witnesses use all three (and variants thereof) with little to no consistency. On these motions, however, the distinction is irrelevant, as the debate focuses on medical expertise versus technological expertise, not the differences between technological expertises. The
(continued...)

pertinent arts in this case.

### 2. The Challenged Witnesses as "Experts in the Pertinent Art"

Since it found the witness had no technical expertise at all, the Sundance court did nnot address whether an expert must have expertise in all of the pertinent arts, or merely one of them, to provide an expert opinion. Nonetheless, the Court is guided by general principles of evidence law under Rule 702. It is well-accepted that "because a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields." Nimely v. City of New York, 414 F.3d 381, 399 n. 13 (2d Cir. 2005); see also United States v. Alonso, 48 F.3d 1536, 1540 (9th Cir. 1995). Thus, if an expert is only an expert in orthodontics, he will only be allowed to present expert testimony as to orthodontic aspects of the case. If an expert is only an expert in engineering, he will only be allowed to opine on those issues. Here, though, each of the challenged witnesses seeks to provide testimony that lies at the intersection of his ordinary area of expertise and another field, based on consultation with an expert in the other art to produce his expert opinion.

The parties dispute both whether such consultation actually occurred, and whether such combined expertise can be the basis for expert testimony.

Ferraro's expert testimony is clearly the product of discussion and interaction between two experts in the two relevant fields. Rekow noted that Ferraro "knew some of the biomedical image processing literature better than [she]" and that she "knew more of the CAD/CAM in the orthodontic literature than he." Rekow Depo. at 197:19-22. Ferraro noted he relied on Rekow's assistance at several times in writing his report, in addition to their longer meetings. Ferraro Depo. at 213:7-24. The opinions of

---

[4](...continued)
parties appear to agree that Ferraro and Hall, at least, possess the relevant technological expertise.

Roberts and Hall are also the product of collaboration, although it is more limited. The record clearly indicates, though, that the individuals relied on each other's expertise.

Given the overlapping areas of expertise involved here, the Court cannot divide the areas of expert testimony into clear categories of orthodontics and engineering; several questions lie in the middle. The interactions as described, combined with the witnesses' own qualifications, demonstrate that each witness is "sufficiently qualified to construe the patent and understand the design and components of the claimed invention" and the relevant prior art. Neutrino, 410 F. Supp.2d at 535. Whether a witness' specific opinion relies more on his primary area of expertise or that of the collaborating witness goes to the weight of the evidence, not to its admissibility. Accordingly, the Court finds that the opinions of Ferraro, Roberts, and Hall are admissible as expert testimony.[5]

### B. Reliability

#### 1. The Roberts and Hall Reports

Part of Align's argument of non-infringement is that the product made by its patented process outside the United States was "materially changed" by subsequent process steps. Align Mem. in Supp. of Mot. to Exclude Infringement Ops. 14, citing 35 U.S.C. § 271(g). Align argues that Dr. Roberts' failure to analyze the process steps in the ToothShaper and Treat software conducted in Costa Rica thus makes his testimony "unreliable." Align also argues that Dr. Roberts "made no effort to understand" several legal terms in 35 U.S.C. § 271(f)(2) and "lacked the expertise to understand" how the FACC curves are used in the software, and thus demonstrates an "improper methodology." Id. at 16-17.

---

[5] The Court's holding should not be read as precluding a later factual determination that a witness' testimony fails to accurately state the views of "a person with ordinary skill in the art." The Court's determination here is not on the merits of the obviousness inquiry, but rather is made only in its Rule 702 gatekeeping function.

Align also argues that the testimony of Dr. Roberts and Dr. Hall regarding Claim 45 should be stricken because it speaks in the conditional tense, suggesting Align "would" infringe "if" it performed direct scanning, and is thus "inadmissible speculation." Id. at 18. Finally, Align argues that the presence of identical claim charts in the reports of Drs. Roberts and Hall conclusively establishes that counsel, not the witnesses, "ghost-wrote" the reports. Id. at 19-20.

The Court acknowledges the alleged shortcomings of the analysis performed by Roberts and Hall, as well as Ormco's explanations and opposition. However, any shortcomings speak to the persuasiveness of Roberts and Halls' opinions, not to their admissibility. Given their general qualifications as experts in the pertinent arts, as discussed above, and the thoroughness of their review, the finder of fact is entitled to hear Roberts and Hall's testimony and any impeachment and/or cross-examination thereof, and then weigh the competing explanations. Rule 702 does not limit admissibility to expert testimony that is unassailable. Rather, it only requires that the knowledge underlying it "has a 'valid connection to the pertinent inquiry'" and "has a reliable basis in the knowledge and experience of the relevant discipline." United States v. Sandoval Mendoza, 472 F.3d 645, 654 (9th Cir. 2006) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999)). Upon reviewing the reports, declarations, and deposition testimony of Roberts and Hall, the Court finds the witness' opinions are sufficiently reliable.

**2. Ferraro's Opinion**

Ormco moves to strike Ferraro's testimony on the basis that he has changed his definition of a person of ordinary skill in the art in such a way that makes his testimony unreliable. As discussed above, the Court notes the change in positions and disagrees with the definitions of the relevant art proffered by both parties at any time in the case. However, the Court does not find this change demonstrative of unreliability as to his testimony as a whole. Accordingly, Ormco's motion to strike Ferraro's testimony as

unreliable is denied.

## IV. CONCLUSION

For the foregoing reasons, Ormco's motion to strike the testimony of Richard Ferraro and Align's motion to exclude infringement testimony of Drs. Hall and Roberts are DENIED.

IT IS SO ORDERED.

Date: February 23, 2009

_____
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE

16