O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

Ormco Corporation )        Case No.  CV 03-16 CAS (ANx)
)
)
)
Plaintiff, )        ORDER DENYING ALIGN'S
)        MOTION FOR SUMMARY
)        JUDGMENT OF INVALIDITY OF
vs. )        ORMCO'S '444 PATENT; DENYING
)        ORMCO'S MOTION FOR SUMMARY
Align Technology, Inc. )        JUDGMENT OF NO INVALIDITY OF
)        ORMCO'S '444 PATENT; AND
)        DENYING ORMCO'S MOTION TO
Defendant )        EXCLUDE OPINIONS IN THE
)        DECLARATION OF E. DIANE
_____ )        REKOW

I.    **INTRODUCTION**

Plaintiff Ormco Corp. ("Ormco") filed the instant action against defendant Align

Technology, Inc. ("Align") on January 6, 2003, alleging that Align was infringing three

related Ormco patents: (1) U.S. Patent No. 5,447,432 ("the '432 patent"); (2) U.S.

Patent No. 5,683,243 ("the '243 patent"); and (3) U.S. Patent No. 6,244,861 ("the '861

patent").  Ormco later amended its complaint to allege infringement of a fourth patent,

U.S. Patent No. 6,616,444 ("the '444 patent").

On May 13, 2004, the Court granted Align's motion for summary judgment of

noninfringement of Ormco's patents.  See Ormco Corp. v Align Tech, Inc., 498 F.3d

1307, 1311 (Fed. Cir. 2007), citing Ormco Corp. v. Align Tech., Inc., No. 03-cv-00016

slip. op. (C.D. Cal. May 13, 2004).  On August 20, 2004, the Court granted Align's

motion for summary judgment of nonenablement of Ormco's patents.  See id., citing

Ormco Corp. v. Align Tech., Inc., No. 03-cv-00016, slip. op. (C.D.Cal. Aug. 20, 2004).

Ormco appealed to the Federal Circuit.  On August 24, 2007, the Federal Circuit

affirmed the Court's grant of summary judgment of noninfringement and

nonenablement as to claims 1, 9, and 10 of the '432 patent, claims 1 and 2 of the '243

patent, claims 1, 3, 4, 9-12 and 16-18 of the '861 patent, and claims 1-5, 8-36, 41-44,

46-68, and 70-79 of the '444 patent.  Ormco, 498 F.3d at 1320.  However, the court

reversed the grant of summary judgment of noninfringement and nonenablement of

claims 37-40, 45, and 69 of the '444 patent, and remanded.  Id.

On March 24, 2008, defendant moved for a Markman hearing, requesting

construction of terms in the remaining '444 patent claims at issue.  On October 3, 2008,

this Court issued an order construing claims.

On January 16, 2009, Ormco and Align each filed motions for summary

judgment on the issue of the validity of the remaining claims in the '444 patent.  On

January 21, 2009, Ormco and Align each filed oppositions thereto.  Replies were filed

on February 2, 2009.  A hearing was held on February 9, 2009.  After carefully

considering the arguments set forth by the parties, the Court finds and concludes as

follows.

**II.    THE '444 PATENT**

The '444 patent, which is the only patent at issue herein, is a patent for "a system

and method by which an orthodontic appliance is automatically designed and

manufactured from digital low jaw and tooth shape data . . ."  The '444 Patent, Abstract.

The system involves scanning a model of the patient's mouth to "produce two or three

dimensional images and digitizing contours of selected points."  Id.  The system allows

for a computer to be programmed "to calculate finish positions of the teeth, then to

1   design an appliance to move the teeth to the calculated positions." <u>Id</u>.

2       In its decision overturning the Court's granting of summary judgment for
3   defendant on claims 37-40, 45, and 69 of the '444 patent, the Federal Circuit
4   distinguished these claims from the others on the ground that claims 37-40, 45, and 69
5   did not relate to "automatic design or automatic calculation of finish tooth positions."
6   <u>Ormco</u>, 498 F.3d at 1317.  Instead, the Court held, they relate to "the preliminary
7   gathering and organization of tooth data as an aid to further unspecified orthodontic
8   treatment or for use in creation of a digital model." <u>Id</u>.  Because defendant relies on
9   "skilled operators rather than a fully automated computerized process to determine
10  finish positions of the teeth," summary judgment was proper as to those claims that
11  referred to automatic calculation or design but not to the six claims at issue. <u>Id</u>.

12  **III.   LEGAL STANDARD**

13      **A.     Summary Judgment**

14      Summary judgment is appropriate where "there is no genuine issue as to any
15  material fact" and "the movant is entitled to a judgment as a matter of law."  Fed. R.
16  Civ. P. 56(c).  The moving party has the initial burden of identifying relevant portions
17  of the record that demonstrate the absence of a fact or facts necessary for one or more
18  essential elements of each cause of action upon which the moving party seeks judgment.
19  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

20      If the moving party has sustained its burden, the nonmoving party must then
21  identify specific facts, drawn from materials on file, that demonstrate that there is a
22  dispute as to material facts eon the elements that the moving party has contested.  <u>See</u>
23  Fed. R. Civ. P. 56(c).  The nonmoving party must not simply rely on the pleadings and
24  must do more than make "conclusory allegations [in] an affidavit." <u>Lujan v. National</u>
25  <u>Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990).  <u>See also</u> <u>Celotex Corp.</u>, 477 U.S. at 324.
26  Summary judgment must be granted for the moving party if the nonmoving party "fails
27  to make a showing sufficient to establish the existence of an element essential to that
28  party's case, and on which that party will bear the burden of proof at trial." <u>Id</u>. at 322.

See also Abromson v. American Pacific Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.  See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

## B.   Invalidity

Pursuant to 35 U.S.C. § 282, all patents are presumed valid, and the burden of establishing invalidity, by reason of either lack of novelty ("anticipation") or obviousness, rests upon the party asserting invalidity.[1]  The statute presumes each claim of a patent to be valid independently of the validity of the other claims.  Id.  The presumption of patent validity may be rebutted only by a showing of "clear and convincing evidence."  Saf-Gard Products, Inc. v. Service Parts, Inc., 532 F.2d 1266, 1271 (9th Cir. 1976).  "The burden of persuasion on invalidity must, under the statute, remain at all times on the party asserting invalidity, although that burden may be carried more easily by evidence consisting of more pertinent prior art than that considered by

[1] 35 U.S.C. § 282 states in pertinent part:

A patent shall be presumed valid.  Each claim of a patent (whether in independent or dependent form) shall be presumed valid independently of the validity of other claims; dependent claims shall be presumed valid even though dependent upon an invalid claim.  The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting it.

the examiner."  RCA Corp. v. Applied Digital Data System, Inc., 730 F.2d 1440, 1444 (Fed. Cir. 1984).

A patent claim is anticipated under 35 U.S.C. § 102, only when each and every element of a claim at issue is found either expressly or inherently in a single prior art reference.  Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1565 (Fed. Cir. 1992); Bristol-Myers Squibb v. Ben Venue Laboratories, Inc., 246 F.3d 1368, 1374 (Fed. Cir. 2001).  In addition, "the prior art reference . . . must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements arranged as in the claim."  Net Moneyin, Inc. v. Verisign, Inc., 545 F.3d 1359, 1369 (Fed. Cir. 2008).  Furthermore, "[t]o serve as an anticipating reference, the reference must enable that which it is asserted to anticipate."  Elan Pharms, Inc. v. Mayo Found. For Med. Educ. & Research, 346 F.3d 1051, 1054 (Fed. Cir. 2003).  In other words, "[t]o anticipate, the reference must also enable one of skill in the art to make and use the claimed invention."  Bristol-Myers Squibb, 246 F.3d at 1374.

"Whether an invention is anticipated is a question of fact."  Elan Pharms, 346 F.3d at 1054.  "When the examiner considered the asserted prior art and basis for the validity challenge during patent prosecution," the burden on the party asserting invalidity "becomes particularly heavy."  Impax Labs., Inc. v. Aventis Pharms. Inc., 545 F.3d 1312, 1314 (Fed. Cir. 2008).

A patent claim may also be invalid as obvious under 35 U.S.C. § 103 "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  Obviousness is ultimately a legal question, based on underlying factual determinations.  Eisai Co. Ltd. v. Dr. Reddy's Labs., Ltd., 533 F.3d 1353, 1356 (Fed. Cir. 2008).  The factual determinations underlying the question of obviousness are "1) the scope and content of the prior art, 2) the level of ordinary skill in the art, 3) the

differences between the claimed invention and the prior art, and 4) evidence of secondary factors, also known as objective indicia of non-obviousness." Id.

## IV.    DISCUSSION

###    A.    Align's Motion for Summary Judgment of Invalidity of the Remaining Claims of the '444 patent

Align moves for summary judgment, arguing that, as a matter of law, the remaining claims of the '444 patent – claims 37, 38, 39, 40, 45, and 69 ("the remaining claims") – are invalid.

###    1.    Prior Art References

Align argues that the remaining claims in Ormco's '444 patent are invalid, because they are not novel as required by 35 U.S.C. § 102 and are therefore anticipated. Align's arguments of anticipation center around two particular prior art references: (1) an article published by Denis Laurendeau entitled "A Computer-Vision Technique for the Acquisition and Processing of 3-D Profiles of Dental Imprints: An Application in Orthodontics" (the "Laurendeau reference") and (2) U.S. Patent No. 4,611,288, issued pursuant to a patent application filed by Francois Duret (the "Duret patent").

The Laurendeau reference describes a system of computer-assisted classification of skeletal and dental malocclusions, or misalignments of teeth.  Mot. at 7-8; SUF ¶ 16; SGI ¶ 16.  Specifically, the Laurendeau reference describes a technique whereby a patient bites into a piece of wax, and subsequently the wax impressions are scanned using a laser scanner in order to generate 3D images of the dental imprints for the detection of interstices between the teeth.  See Laurendeau reference at 453, 461.

The Duret patent discloses a system whereby "[d]ental prostheses, such as crowns, inlays or dentures are produced automatically based upon an optical impression taken of the oral region with nontraumatic radiation."  Duret Patent, Abstract.  The optical device captures 3D data of a stump of a tooth where dental restoration, such as a crown, was to be added.  SUF ¶ 24; SGI ¶ 24.  Data associated with the tooth stump is identified in order to determine the shape of the interior portion of the crown to fit over

the stump.  SUF ¶ 28; SGI ¶ 28.  In addition, data relating to the teeth adjacent to the stump is identified from the scan in order to determine the boundaries of the area for the crown.  SUF ¶ 27; SGI ¶ 27.  The Duret patent was considered by the Patent Office prior to issuing the '444 patent.  Ormco's Additional Undisputed Facts ¶ 84; Align's Response to Ormco's Additional Undisputed Facts ¶ 84.

      **2.**    **Claim 37**

Align argues first that claim 37 in the '444 patent is anticipated by the Laurendeau reference.  Claim 37 provides:

> A method of processing digital data for use in facilitating the orthodontic treatment of a patient comprising: scanning three-dimensional surfaces that have the shapes of a plurality of the teeth of a patient and generating data thereof; from the generated data, producing separate digital representations of the shapes of each of a plurality of individual teeth of the patient.

'444 Patent, Col. 71: 21-29.

      **a.**    **First Element of Claim 37: "Scanning Three-Dimensional Surfaces That Have the Shapes of a Plurality of the Teeth of a Patient and Generating Data Thereof"**

Align argues that the first element of claim 37 – "scanning three-dimensional surfaces that have the shapes of a plurality of the teeth of a patient and generating data thereof" – in anticipated, because the Laurendeau reference discloses scanning 3D wax impressions of the shapes of the occlusal surfaces (i.e. the biting or chewing surfaces) of a plurality of teeth in a patient's jaws using a 3D scanner and generating data thereof. Mot. at 10.  The Laurendeau reference, in its own words, describes "a computer vision technique for the acquisition of the 3-D profiles of dental imprints recorded on a wax dental bite wafer, and an algorithm for the detection of the interstices between the teeth  . . ."  Mot. at 11; SUF ¶ 32;

Laurendeau Reference at 454.  Align notes that Ormco's expert, Dr. Roberts ("Roberts"), has admitted that a scan of a wax bite, as disclosed in the Laurendeau reference, would result in undifferentiated data of partial shapes of a plurality of teeth.  Mot. at 11; SUF ¶ 34; SGI ¶ 34.

Ormco, however, argues that the Laurendeau reference does not, in fact, disclose the generation of data containing the "shapes" of a plurality of teeth. Opp'n at 4.  The crux of Ormco's argument, as set forth by Roberts, is that the Laurendeau reference fails to disclose the scanning of separate 3D tooth shapes and does not produce 3D representations of individual teeth.  Miotke Decl. Ex. 2 (Roberts Report) at 15.  Roberts states that, in determining whether prior art references disclosed the generation of data from an undifferentiated scan of a plurality of teeth, Roberts looked for the disclosure of tooth shape data similar to that disclosed in the '444 patent; in particular, Roberts looked for shape data that included the tooth undercuts (the portion of the tooth that lies between its height of contour and the gingivae), which, he argues, are necessary for modeling orthodontic treatment.  Opp'n at 5; Motke Decl., Ex. 2 (Roberts Report) at 14-15 ("even in its most basic example, the '444 patent discloses a 3D shape that includes a precise 2D profile, of the clinical crown from the occlusal surface to the gingival margin, as well as its full width in the mesio-distal direction").  Ormco argues that the wax bite scanned in the Laurendeau reference only captures the tooth's occlusal surface, and not the height of the tooth or the tooth's shape below the occlusal surface.  Opp'n at 4.  Therefore, Ormco argues, the scan of the wax bite is not a scan of "three-dimensional surfaces that have the shapes of a plurality of the teeth."  Opp'n at 4. Ormco argues that this position is consistent with the testimony of both Roberts, Ormco's expert, and Dr. Rekow ("Rekow"), Align's expert, who have testified that an orthodontist referring to the "shape" of a tooth would commonly understand it to refer to the entire exposed portion of the tooth, i.e. the clinical crown.  Opp'n at 5; Miotke Opp. Dec. Ex. 7 (Rekow Dep.) at 189:14-191:10 (confirming that the

typical or ordinary meaning for three-dimensional tooth shapes for orthodontists would be either the "clinical crown," "the clinical crown, plus the roots," or the "anatomical crown, plus the roots.")

Align, however, argues that, in taking this position, Ormco is attempting to add an additional limitation to the term "shape" so as to require that the term include the "entire clinical crown" that is visible in the mouth.  Mot. at 11; SUF ¶ 37; Roberts Dep. at 338: 17-24 ("as I read it, that would imply the shape of a tooth, the entire clinical crown of a tooth, yes").  Align argues that Ormco did not argue for this construction of the term "shape" during the Markman hearing, and that Roberts' explanation for this construction is unsatisfactory.  Mot. at 11-12; SUF ¶ 38; Roberts Dep. 342:9-14 ("Q: So if I were to go to an orthodontic textbook and look at how they use the word shape, you would expect that that would be the entire physical clinical crown? A: I think that would probably be true for all of dental anatomy, not just orthodontics").  Furthermore, Align argues that deposition testimony of Ormco's other expert, Dr. Hall ("Hall"), contradicts Ormco's argument that "shape" is limited to a shape necessary for orthodontic treatment:

> Q: In a single prior art reference, would you need that prior art reference to disclose the shapes of teeth necessary for orthodontic treatment in order to anticipate claim 37?
>
> A: I believe my answer is no.  If it could still scan three dimensional surfaces of teeth and allow those to be used as the data to produce separate digital representation of the shapes of a plurality of teeth, then that would seem to satisfy claim 37.

Mot. at 12; SUF ¶ 12; Hall. Dep. 101:4-23.  Furthermore, Align argues, Hall indicated that even if the term "shape" were to be limited to a shape needed for orthodontic treatment, this would not necessarily require the full clinical crown.  Mot. at 12; SUF ¶ 41; Hall. Dep. 99:7-11 ("I can envision cases where I just need one point of contact to attach a bracket.  And other cases where maybe the full three

dimensional shape is needed to determine how much to rotate or tip a tooth").
Therefore, Align argues, nothing in the patent requires "shapes" to be limited to the
"entire clinical crown," because, even assuming it was necessary to have enough
shape for orthodontic treatment, the full clinical digital crown information is not
required.[2]  Mot. at 12.

> **b.    Second Element of Claim 37: "From the Generated
> Data, Producing Separate Digital Representations of
> the Shapes of Each of a Plurality of Individual Teeth
> of the Patient."**

Align argues that the Laurendeau reference discloses the second element of
claim 37: "from the generated data, producing separate digital representations of the
shapes of each of a plurality of individual teeth of the patient."  First, Align argues,
the Laurendeau reference discloses detection and identification of interstices
between the teeth and association of data with individual teeth.  Mot. at 13; SUF ¶
35; See Laurendeau Reference ("The 3-D image of each side of the imprint is
segmented by nonlinear filtering of the 3-D data, and the interstices between the
teeth are detected").  After the interstices between teeth are identified, Align argues,
the orthodontic parameters of each tooth within the scanned data can be identified.[3]

---

[2]Align also argues that regardless, claim 37 is not directed to orthodonitic treatment
of a patient, because the preamble "facilitating orthodontic treatment" is not a limitation
on the claim.  Ormco disputes the assertion that the preamble should not be read into the
claim.  The Court need not reach this issue in deciding the motions for summary judgment
herein.

[3] Align argues that Roberts testified to this effect:

> Q.  And by identifying interstices, wouldn't that enable one to identify the
> position of each tooth within the scanned data?
>
> [objection omitted]

(continued...)

Mot. at 14.  Align argues that, in fact, the Laurendeau reference explicitly indicates that positions of each individual tooth must first be identified from the undifferentiated dental imprint, and that subsequently, the orthodontic parameters are identified.  Mot. at 14, citing Laurendeau Reference at 454 ("The computation of the orthodontic parameters listed in Table 1 requires a prior knowledge of the position of each tooth on the dental imprint").  Align argues that "identification of the position of each tooth within the scanned data necessarily requires that data be associated with particular teeth.  As data is being associated with particular teeth, separate digital representations are being produced."
Mot. at 14.

Align also argues that Figure 8 in the Laurendeau reference identifies particular teeth, which is confirmed by the discussion of the figure, which states "The plots of f1(s) and f2(s) consist of peaks, valleys, and plateaus as shown in figure 8.  Peaks of large amplitude mostly correspond to the interstices between the teeth . . . Valleys correspond to teeth."  Swanson Decl. Ex 4 (Laurendeau Reference) at 457.  Align further argues that Roberts confirmed this by testifying that the occlusal surfaces of each individual tooth are disclosed in Figure 8, and that the data in Figure 8 are segmented on a tooth-by-tooth basis.  Mot. at 15; SUF ¶ 51; Roberts Dep. 583: 17-23 ("so the valleys would be more the occlusal surface of the tooth") 584: 19-25 (confirming that the data in Figure 8 is "segmented on a tooth-by-tooth basis").

---

[3](...continued)

> In theory, yes, you would be able to identify if the interstices, if you can – if your interstices is accurate, you could just move from interstice to interstice if you know that there are two incisors, if you know there is one canine.  If you already know that, you would know what this means; otherwise, you would not know that.  If there's a missing incisor, or if there's a missing bicuspid, then you would not know that.  All you would know there's interstices that is picked up that's one of these peaks in the colorimetric chart.

Ormco, however, argues that while the Laurendeau reference discloses that "[t]he 3-D image of each side of the [wax] imprint is segmented by nonlinear filtering of the 3-D data, and the interstices between the teeth are detected," this segmentation does not create separate 3D representations of the individual teeth or the shapes of those teeth, but instead results in nothing more than an identification of the spaces between the occlusal surfaces of the teeth. Opp'n at 6; Miotke Decl. Ex. 2 (Roberts Report) App. B at 3 ("Laurendeau et al. describes the identification of interstices between teeth but does not provide any disclosure regarding the production of separate digital representations of teeth from undifferentiated 3D data"). Furthermore, Ormco argues, because the Laurendeau reference does not identify individual teeth, the computer does not associate any data points with any identifiable tooth. Opp'n at 7-8; Miotke Opp. Decl. Ex. 1 (Hall Report) at 15 ("The tooth data that is taken from a scan of the wax bite is initially undifferentiated. Although interstices between the teeth are later found, there is no disclosure in Laurendeau that suggests that the underlying undifferentiated tooth data is altered in any way. And given the goal of finding interstices rather than tooth data, there is no reason to assume that such data processing is occurring.")

Furthermore, Ormco argues that Figure 8, referenced by Align, does not support Align's argument; although Figure 8 presents a chart showing the data generated, and states that the valleys of the functions depicted in Figure 8 "correspond to teeth," Figure 8 does not capture the actual shapes of the teeth and does not generate individual tooth shape representations, and, Ormco argues, "one could note a correspondence between the depressions in the wax bite and teeth without creating any digital representations of anything." Opp'n at 8.

Ormco also argues that Align has not met its burden in showing by clear and convincing evidence that a person of ordinary skill in the art could make and use the claimed invention based on the prior art without undue experimentation. See Amgen, 457 F.3d at 1306-07. Specifically, Ormco notes that the conclusion of the

Laurendeau references states that "the next step in the development of the automatic

diagnosis system will be to identify the type of teeth and measure the orthodontic

parameters." Miotke Decl, Ex. 7 (Laurendeau Reference) at 461. Ormco argues

that the failure to teach the step of identifying teeth renders the Laurendeau

reference incapable of serving as an anticipatory reference.

With regard to the second element of claim 37, the Court agrees with Ormco

that Align has not met its burden to establish by clear and convincing evidence that

claim 37 is anticipated by the Laurendeau reference.[4]  In particular, the Court is not

convinced that the Laurendeau reference discloses the production of "separate

digital representations of the shapes of each of a plurality of individual teeth." See

'444 patent. Instead, it appears that the Laurendeau reference may, as Ormco

argues, primarily disclose the identification of interstices between the teeth, which

may not in and of itself be sufficient to anticipate claim 37. Furthermore, the

Laurendeau reference's statement that "the next step in the development of the

automatic diagnosis system will be to identify the type of teeth and measure the

orthodontic parameters" further contradicts Align's argument that the Laurendeau

reference teaches the second element of claim 37. Therefore, the Court concludes

that Ormco has demonstrated that there are genuine issues of material fact regarding

anticipation, and summary judgment is inappropriate.

Because claims 38, 39, and 40 are dependent claims of claim 37, the Court

notes as a preliminary matter that its finding with regard to claim 37 would

generally preclude Align from establishing that the dependent claims are

anticipated. See, e.g., In re Royka, 490 F.2d 981, 985 ("The dependent claims

rejected with claim 28, as anticipated under § 102, are not anticipated since claim

---

[4] Because Align has not met its burden with regard to the second element of claim
37, the Court need not reach the question of whether it met its burden with regard to the
first element of claim 37. However, the Court notes that it declines to find as a matter of
law that the term "shape" necessarily requires the full clinical crown.

28 is not anticipated.")  Nevertheless, the Court considers the merits of Align's arguments with regard to these dependent claims as well.

### 3.  Claim 38

Align argues that claim 38 is also anticipated by the Laurendeau reference. Claim 38, a dependent claim of claim 37, states:

> The method of claim 37 wherein: the producing of the separate digital representations from the generated data includes the operator-interactive selection on a computer display of landmark parameters of individual teeth.

Align argues that the Laurendeau reference anticipates claim 38, because it discloses the operator interactive selection of landmark parameters of individual teeth, including: (1) the interstices between the teeth and (2) orthodontic parameters that define relationships between the teeth.  Mot. at 16.  In particular, Align argues, "the Laurendeau reference disclosed a system where an automated algorithm along with limited operator interaction determined interstices in the teeth (attributes of the teeth derived from locations on the teeth that can be used for modeling tooth movement)."  Mot. at 16.  Align cites Table 1 of the Laurendeau reference, which identifies "orthodontic parameters" and notes that Roberts, Ormco's expert, confirmed that the sagittal canine relation and sagittal molar relation parameters, both listed in Table 1 of the Laurendeau reference, are attributes of teeth that could be used to model tooth movement, and that, to determine these attributes used for modeling tooth movement, one would have to identify points on teeth (i.e. landmark parameters).  Mot. at 16, citing Roberts Dep. at 395:11-396:3 ("[the sagittal molar relation is] primarily for looking at the orthopaedic change and the way that the patient actually bites . . . [but] could provide some information under some circumstances . . . for modeling tooth movement").

Align argues that Roberts has attempted to avoid invalidity by adding a new requirement to claim 38: that the attributes derived from locations on teeth must be

used to actually move teeth to final positions.  Mot. at 16; SUF ¶ 61; Roberts Dep.
762:17-763:5 ("[Q:] But in terms of actually modeling within the computer tooth
movement, is it your view that in order to be a landmark parameter, the locations on
the tooth must be able to successfully model the movement of the teeth from initial
position to some final position . . . [A:] I think so. . . There could be multiple
landmark parameters that, according to the definition of the Court, that is a
possibility, yes.").  Similarly, Align cites Ormco's other expert, Hall, who stated
"as I understand it, the locations on the tooth would have to be used to derive
attributes of the tooth for modeling tooth movement, so some deliberate attributes
that could be used in modeling tooth movement would have to be present."  Mot. at
17; Hall Dep. 129:15-20.  Align argues that this is contrary to the Court's claim
construction order, which, although holding that landmark parameters are defined
as "locations on the tooth used to derive attributes of the tooth for modeling tooth
movement," held that the landmark parameters requirement "merely defines which
specific locations on the tooth are chosen in the step described in claim 38,
regardless of whether or not representations of the teeth are eventually moved to
finish tooth positions."  Mot. at 17, citing October 3, 2008 order.

Ormco, however, argues that the Laurendeau reference does not disclose
"landmark parameters."  Ormco notes that it is undisputed that the Laurendeau
reference does not disclose movement of teeth or modeling the movement of teeth.
Opp'n at 13.  Furthermore, Ormco argues, Align's argument that the sagittal canine
relation and sagittal molar relation parameters, both listed in Table 1 of the
Laurendeau reference, are attributes of teeth that can be used for modeling tooth
movement does not lead to the conclusion that landmark parameters are disclosed in
the Laurendeau reference, because "applying hindsight to state the attributes 'can
be' used for modeling tooth movement" is not consistent with the court's
construction that landmark parameters be attributes of the tooth "for modeling tooth
movement."  Opp'n at 13-14.  Ormco argues that Align's expert, Rekow, has

admitted that he is essentially reading in "*capable* of modeling tooth movement" as a clause into the claim.  Mot. at 13; SUF ¶ 67.  Furthermore, Rekow stated that, in determining whether specific attributes of teeth qualify as landmark parameters, he did not take into account how much work it would take to model tooth movement.  Mot. at 13; SUF ¶ 68.  Ormco argues that even if the  parameters listed in the Laurendeau reference could, in hindsight, be used to model tooth movement, the reference does not teach claim 38, because it has nothing to do with modeling movement of teeth and does not even express this possible use of the tooth locations.  Opp'n at 14.  Ormco argues that to read "capable of" into the claim is unduly expansive and against the Court's construction.  Opp'n at 14.

The Court finds that Ormco is correct that Align has failed to establish that claim 38 discloses the selections of landmark parameters.  Align's reading of landmark parameters as an attribute of the tooth "capable" of modeling tooth movement appears to be contrary to the Court's October 3, 2008 claim construction order, which construed landmark parameters as "locations on the tooth used to derive attributes of the tooth for modeling tooth movement."  As the Court stated in that order, this construction is not contrary to the holding of the Federal Circuit, because this construction does not require that the teeth actually be moved to finish tooth positions, but instead "defines which specific locations on the tooth are chosen in the step described in claim 38."  In other words, the "for modeling tooth movement" construction reflects the purpose for which the attributes of the specific teeth are selected.  Therefore, Align's argument that this construction includes any attributes of the tooth which, in hindsight, could have been "capable of modeling tooth movement," even if the attributes were not selected for that purpose, appears overly broad.  As a result, the Court finds that Align has failed to meet its burden in establishing that the Laurendeau reference teaches the selection of landmark parameters.

**4.    Claim 39 and Claim 40**

Align also argues that the Laurendeau reference discloses the additional limitations of claim 39 and claim 40.  Claim 39 states:

> The method of claim 37 wherein: the producing of the separate digital representations from the generated data includes representing each of the plurality of teeth by a two-dimensional contour.

Claim 40 states:

> The method of claim 37 wherein: the producing of the separate digital representations from the generated data includes separating an image of the plurality of teeth into individual data-sets each representing an individual tooth

Specifically, Align argues that claim 39 is anticipated, because the Laurendeau reference discloses that during the producing of the separate digital representations, 2D contours, used to represent teeth, are generated from the 3D data along the curved axis of the dental imprint.  Mot. at 17; SUF ¶¶ 49, 64, 65.  Align also argues that claim 40 is anticipated by the Laurendeau reference, because the Laurendeau reference discloses using an image on a screen to produce separate digital representations.  Mot. at 18; SUF ¶ 43; Laurendeau reference at 457 ("the first segmentation step is to complete the coordinates of the center point of the top horizontal line of the WR-image").

However, the Court finds that because Align has failed to establish that the Laurendeau reference discloses the production of separate digital representations of individual teeth, summary judgment with regard to claims 39 and 40 is inappropriate.

### 5.    Claim 45

Align argues that claim 45 is anticipated by the Duret patent.  Claim 45 states:

> A method of processing digital data for use in facilitating the

orthodontic treatment of a patient comprising: scanning the shapes of the teeth of a patient directly from the mouth of a patient and generating data thereof; grouping the generated data into separate digital representations of the shapes of each of a plurality of individual teeth.

Align first argues that the Duret patent discloses the first part of claim 45, in that it teaches using a three-dimensional laser optical probe to scan a plurality of teeth directly from the mouth.  SUF ¶ 69.

Align further argues that the Duret patent discloses the second part of claim 45: "grouping the generated data into separate digital representations of the shapes of each of a plurality of individual teeth."  Mot. at 19.  Specifically, Align argues that the Duret patent

> . . . disclosed the necessity of grouping data into separate digital representations in order to determine the volume defined by six planes to create the outer surface of the prosthesis.  Moreover, the data associated with the shape of the tooth stump was identified to determine the shape of the interior portion of the crown designed to fit over the stump.  This process requires separation of the data relating to the shapes of the teeth adjacent to the stump and using that data (which includes 'zones of contact or the boundaries defined by the adjoining teeth') to define the volume of the prosthesis.

Mot. at 19.[5]

---

[5] Again, Align argues that the preamble of claim 45, which has the same "facilitating orthodontic treatment" as claim 37, is not limiting, and that regardless, the Duret patent itself teaches that it should "not be considered to be limited to the dentistry field . . . since
(continued...)

Ormco, however, argues that, like the Laurendeau reference, the Duret patent discloses scans that generate 3D data of only one surface of the teeth – in this case the surfaces that border the void to be filled with a prosthetic crown – and does not scan or generate data about the occlusal surface or the other sides of these teeth.  Opp'n at 4.

Furthermore, Ormco argues that, even assuming that the first part of claim 45 is satisfied, the second part of the claim is not, because the Duret patent "does not purport to teach how to group that data into separate digital representations of the shapes of each of the plurality of individual teeth."  Opp'n at 11.  Ormco argues that the volume of the prosthesis in the Duret patent is calculated without creation of separate digital representations of each tooth.  Opp'n at 12.  Furthermore, Ormco argues that while Duret discloses scanning the tooth stump in a scan separate from the scan which captures the extended region used to determine the volume, claim 45 requires production of separate digital representations of each of the *plurality* of teeth scanned, not just one tooth.  Opp'n at 12.

The Court notes that, because the  Duret patent was considered by the Patent Office during prosecution of the '444 patent, Align's burden is particularly high in establishing anticipation.  Opp'n at 11; SGI ¶ 118; Impax Labs., Inc. v. Aventis Pharms. Inc., 545 F.3d at 1314 (Fed. Cir. 2008) ("When the examiner considered the asserted prior art and basis for the validity challenge during patent prosecution," the burden on the party asserting invalidity "becomes particularly heavy").  The Court finds that Ormco has raised significant issues regarding whether the Duret patent in fact discloses separate digital representations of a plurality of teeth, and that, therefore, Align has failed to meet this heavy burden of demonstrating that it is entitled to summary judgment with regard to claim 45.

[5](...continued)
it is also applicable . . . to the taking of an impression or generating a model in dental applications which are not followed by fabrication of a prosthesis."  Mot. at 20; SUF 76.

### 7.   Claim 69

In addition, Align argues that claim 69 is anticipated by the Laurendeau
reference for the same reasons that claim 37 is.  Mot. at 20.  Claim 69 states:

> A computer-implemented method for use in generating digital
> models of a patient's teeth, the method comprising: receiving initial
> data that contains a 3D representation of a plurality of the patient's
> teeth; identifying multiple groups of data, each group containing a
> plurality of points from the initial data that separately digitally
> represent the shape of one of the teeth.

Align argues that claim 69 differs from claim 37 only in that it merely requires
"receiving initial data that contains a 3D representation of a plurality of the patient's
teeth" whereas claim 37 requires that scanning be done to create data which is
"received" in claim 69.  Mot. at 20; SUF ¶ 78.  Because the Court finds herein with
regard to claim 37 that Align has failed to demonstrate that the Laurendeau reference
teaches "separate digital representations" of teeth, the Court finds that summary
judgment with regard to claim 69 is also inappropriate.

**B.    Ormco's Motion for Summary Judgment of No Invalidity of the
Remaining Claims of the '444 patent**

Align set forth its position on invalidity in its sixth supplemental response to
Ormco's first set of interrogatories, in which it cites 76 prior art references; these prior
art references, Align argues, render the remaining claims anticipated or obvious.  See
Opp'n at 5; Swenson Decl. Ex. 1.  Align also sets forth its arguments on how prior art
invalidates the remaining claims in Ferraro's expert report.  Opp'n at 5.

Ormco argues that Align has failed to raise any issue of material fact with
regard to the invalidity of the remaining claims, and that, therefore, the Court should
grant summary judgment finding that, as a matter of law, the remaining claims are
valid.

### 1.    Ferraro's Expert Report

First, Ormco argues that the expert report on invalidity submitted by Ferarro, Align's expert, should not be considered, because Ferraro is not an orthodontist, and therefore is not a person of ordinary skill in the art. However, as stated in the Court's order on Ormco's motion to strike Ferraro's testimony, the Court finds that Ferraro is qualified as an expert, and therefore considers Ferraro's opinions on invalidity presented in his report.

## 2. Anticipation

Ormco next argues that, even if Ferraro's report is considered, summary judgment should nonetheless be granted in favor of Ormco on the issue of invalidity, because Align's evidence of invalidity fails to raise any genuine factual issue so that a reasonable fact finder could find that the claims are invalid due to anticipation.

### a. Anticipation of Claims 37, 45, and 69

Ormco first argues that none of the prior art cited by Align discloses separation of undifferentiated 3D scans of the shapes of a plurality of teeth into individual 3D representations of tooth shapes, as required by claims 37, 45, and 69. Mot. at 8. For example, Ormco argues that the prior art references Rickets 39, Brook 74, and Brook 75 disclose only multiple views of 2D data, rather than 3D data.[6] Mot. at 9. Furthermore, Ormco argues that Yamamoto 50, Yamamoto 51, Yamamoto 52, and Lemchen 59 do not disclose undifferentiated 3D scans of a plurality of teeth, because Yamamoto 50 and 52 disclose only scanning one tooth at a time, Yamamoto 51 does not disclose any relevant details regarding the scanning method employed, and Lemchen 59 does not disclose a single 3D scan of multiple teeth that would result in undifferentiated data. Mot. at 9. Furthermore, Ormco argues that Laurendeau 26 (also referred to herein as the Laurendeau reference), Duret 12, Duret 54 (also referred to herein as the Duret patent), Duret 55 and Rekow 62 do not disclose separating

---

[6] Both parties refer to prior art references by the name of the author/inventor and a number assigned to each reference in the Ferraro report appendix (e.g. "Yamamoto 50"). The Court uses this convention herein as well.

undifferentiated data into individual tooth representations.  Mot. at 10.

Align, however, disputes Ormco's characterization of the remaining claims and the prior art references.  First, Align argues that prior art references that disclose multiple 2D scans do, in fact, disclose the creation of 3D data.  Opp'n at 8; Swenson Decl. Ex. 2 (Hall Dep.) at 54:9-15 (stating that "the wonder of a CT scanner is we can produce a two-dimensional slice and then do that in different levels . . . to stack up a full three-dimensional description of an object.").  Next, Align disputes Ormco's position that the Yamamoto references do not disclose undifferentiated 3D scans of a plurality of teeth, arguing that Hall, Ormco's expert, admitted that they in fact do. Opp'n at 9; Swenson Decl. Ex 2 (Hall Dep.) at 176:12-18 ("Q: So, with respect to Yamamoto reference 50, do you believe that it discloses scanning three-dimensional surfaces that have the shapes of a plurality of the teeth of the patient and generating data thereof according to claim 37. A: Yes."), 174:22-175:9 (stating that the Yamamoto references 51 and 52 describe the same system as Yamamoto 50.) Furthermore, Align argues that Lemchen 59 disclosed more than scans of a single tooth and instead disclosed generation of digital information about the entire jaw. Opp'n at 10; Miotke Decl. Ex. 12 (Lemchen 59) at col 1: 54-69 ("generating digital information which defines the shape and location of the malocclused tooth in the patient's jaw, from which a mathematical model of the tooth and jaw is generated"). With regard to the second step of claim 37, Align argues that Laurendeau, Duret, Yamamoto, and Lemchen all disclose separate digital representations of the shapes of a plurality of teeth.[7]   Opp'n 9-10.

### b.    Anticipation of Claim 38

_____

[7] Align's arguments with regard to Laurendeau and Duret 54 are discussed in more detail in reference to Align's motion for summary judgment of no invalidity.  Although the Court denied summary judgment for Align with regard to the question of whether Laurendeau discloses the second step of claim 37, the Court finds that Align has raised a sufficient issue of fact so as to survive Ormco's motion for summary judgment.

Ormco further argues that Align has failed to demonstrate that claim 38 is anticipated, because, contrary to Align's arguments, neither Laurendeau, Ricketts, Duret, or Brook disclose "landmark parameters."  Mot. at 13.  Specifically, Ormco argues that (1) Yamamoto 50, Yamamoto 52, and Rickets 39 relate to tooth movement after orthodontic treatment, and none teaches how to prospectively model tooth movement for orthodontic treatment, (2) Rekow and Duret are directed to restorative dentistry, not orthodontics, (3) the Laurendeau reference only identified parameters concerning tooth relationships instead of locations on the teeth, and  (4) Brook 74 and Brook 75 were concerned with measuring the size of teeth, not modeling tooth movement.  Mot. at 15.

Align, however, argues that its references cited, do, in fact, disclose landmark parameters.  The essence of part of the dispute between Align and Ormco appears to be whether a reference that discloses retrospective, rather than prospective, tooth movement, can anticipate claim 38.  Align argues that one of skill in the art would understand that tooth movement could be modeled either prospectively or retrospectively.  Opp'n at 15; Rekow Decl. ¶ 16 ("It is often necessary to create a prospective model or series of models that indicate the desired path of tooth movement for a particular orthodontic treatment.  Likewise, retrospective modeling of tooth movement by modeling and measuring differences in models over a period of time can provide critical information about a particular orthodontic treatment and can be used to confirm, change, or modify further orthodontic treatment as well as expanding the evidence base of the science of tooth movement.").  Align notes that, for example, Yamamoto 50, Yamamoto 51, and Yamamoto 52 each describes a system "where the computer calculates the change in position and orientation of teeth and creates a simulations (or "model") of tooth movement."  Opp'n at 15.  Align further argues that, in so doing, each discloses landmark parameters.  Opp'n at 15; see, e.g., Ferraro Decl ¶ 90 ("Yamamoto [50] disclosed an interactive selecting of landmark parameters (e.g., locations from which the centroid of the occlusal surface

and orientation of the tooth could be derived)"), ¶ 93, ¶ 96.  Ormco, however, counters

that the '444 patent only discloses modeling prospective treatment.  Reply at 16.

### c.    Conclusion

In considering the arguments of the parties, the Court finds that Align has

presented sufficient evidence of anticipation to raise a question of fact as to whether

the prior art references anticipate the remaining claims.  First, contrary to Ormco's

argument, Align has raised an issue of fact as to whether various prior art references

disclose separation of undifferentiated 3D scans of the shapes of a plurality of teeth

into individual 3D representations of tooth shapes.

Furthermore, the Court finds that Align has raised a question of fact as to

whether the prior art references anticipate the landmark parameters disclosed in claim

38.  Specifically, the Court declines to find as a matter of law that a prior art reference

disclosing the use of landmark parameters for retrospective modeling of tooth

movement cannot anticipate claim 38.  Ormco did not argue for a limitation requiring

prospective modeling at the claim construction hearing, and nothing on the face of the

Court's construction would appear to require prospective, rather than retrospective,

modeling.  Furthermore, Align's expert, Rekow has stated that a person of ordinary

skill in the art would understand the term modeling to include both prospective and

retrospective modeling, and that retrospective modeling could be used to "confirm,

change, or modify further orthodontic treatment."  See Rekow Decl. ¶ 16.  Therefore,

the Court finds that summary judgment is inappropriate.[8] [9]

---

[8] Ormco also argues that summary judgment should be granted in its favor, because
Align has failed to demonstrate how the references it relies upon as anticipatory enable the
inventions claimed by Ormco.  In particular, Ormco argues, Yamamoto 50, Yamamoto 52,
and Lemchen fail to enable the remaining claims.  "A reference is enabled when its
disclosures are sufficient to allow one of skilled in the art to make and use the claimed
invention."  Amgen Inc. v. Hoechst Marion Roussel, Inc., 457 F.3d 1293, 1306 (Fed. Cir.
2006).  "When considering whether or not a prior art reference requires undue
(continued...)

### 3.   Obviousness

Ormco also argues that although Align "asserts that literally hundreds of combinations of the prior art render obvious the asserted claims," that Ferraro's opinions are "general and not applied with particularity to show how identified teachings from specific prior art references could be combined and why there would be a motivation to make that specific combination." Mot. at 15.  First, Ormco argues, none of the prior art discloses undifferentiated scans of a plurality of teeth that includes the dental undercuts, which, Ormco argues, must be included in any model of tooth movement for use in facilitating orthodontic treatment.  Mot. at 17. Furthermore, Ormco reiterates its argument that none of the prior art discloses landmark parameters, identification of which, Ormco argues, is "the key to creating a 3D computer model that could be used to facilitate the orthodontic treatment of a patient" and without which "a person of ordinary skill would be completely adrift in attempting to define a usable 3D digital representation of individual tooth shapes." Mot. at 18.

---

[8](...continued)
experimentation we look at the reference from the perspective of a person of ordinary skill in the art." Id. at 1306-07.  In its reply with regard to Align's motion for summary judgment, however, Align argues that Ormco's argument that Align's experts did not consider whether the prior art references were enabling is incorrect, because "Align's experts reviewed the prior art from the perspective of one of skill in the art and determined that they disclosed each of the elements of the asserted claims." Reply at 12, n. 10. "While enablement is ultimately a question of law, it is based on underlying factual findings." Bruning v. Hirose, 161 F.3d 681, 686 (Fed. Cir. 1998).  The Court finds that, despite Ormco's arguments, it cannot determine as a matter of law that Align's prior art references fail to enable the remaining claims.

[9] Align and Ormco dispute whether the "for facilitating orthodontic treatment" language should be read into the claim.  Because the Court finds herein that, even if the "for facilitating orthodontic treatment" language is read into the claims, that Align has raised an issue of fact as to whether the claims are invalidated, the Court need not reach this issue.

Align responds that summary judgment in favor of Ormco is not warranted, because Ormco's motion fails to address all of the prior art references asserted by Align and its experts. Opp'n at 8. Moreover, Align disputes Ormco's characterization of its expert report, arguing that it contains a detailed discussion of all of the references and provides information on the exact combination of references that render each claim invalid, discusses which elements of the claims are present in the references, and discusses, both generally and with respect to particular references, why one would be motivated to combine references in the way described in the report. Opp'n at 16; Ferraro Decl. ¶¶ 39-83. Furthermore, Align disputes Ormco's argument that prior art references would have to disclose scans of a plurality of teeth *including* the dental undercuts, arguing that "orthodontic treatment can be readily accomplished without full clinical crown digital information or dental undercut information." Opp'n at 17; Swenson Decl. Ex. 2 (Hall Dep.) ("I can envision cases where I just need one point of contact to attach a bracket. And other cases where maybe the full three-dimensional shape is needed to determine how much to rotate or tip a tooth"). Align also disputes Ormco's assertions that the prior art references fail to disclose "landmark parameters" as discussed herein, and notes that "landmark parameters" are only contained in claim 38.

Because the Court finds that Align has raised a genuine issue of material fact as to whether (1) the prior art discloses undifferentiated scans that have the shapes of a plurality of teeth[10] and (2) the prior art discloses landmark parameters, the Court finds summary judgment inappropriate.[11]

_____

[10] As the Court has stated herein, the Court declines to find that as a matter of law that shape requires inclusion of dental undercuts.

[11] At the hearing, Ormco argued that Align has failed to set forth any evidence that someone of ordinary skill in the art would have a reasonable expectation of success in making the claimed invention. See Medichem, S.A. v. Rolabo, S.L., 437 F.3d 1157, 1165 (continued...)

### 4.      Invalidity of Claim 40 Due to Indefiniteness

"Indefiniteness is a matter of claim construction, and the same principles that
generally govern claim construction are applicable to determining whether allegedly
indefinite claim language is subject to construction." Praxair, Inc. v. ATMI, Inc., 543
F.3d 1306, 1319 (Fed. Cir. 2008).  "A claim will be found indefinite only if it is
insolubly ambiguous, and no narrowing construction can properly be adopted . . . . .
On the other hand, if the meaning of the claim is discernible, even though the task
may be formidable and the conclusion may be one over which reasonable persons will
disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness
grounds." Id. "Indefiniteness, like claim construction, is a question of law." Praxair,
Inc. v. ATMI, Inc., 543 F.3d 1306, 1319 (Fed. Cir. 2008).

Align has asserted that Ormco's claim 40 is invalid as indefinite, because it has
identical scope to claim 37.

Claim 37 reads:

---

[11](...continued)
(Fed. Cir. 2006) ("If all the elements of an invention are found in a combination of prior
art references, a proper analysis under 35 U.S.C.S. § 103 requires, *inter alia*, consideration
of two factors: (1) whether the prior art would have suggested to those of ordinary skill in
the art that they should make the claimed composition or device, or carry out the claimed
process; and (2) whether the prior art would also have revealed that in so making or
carrying out, those of ordinary skill would have a reasonable expectation of success");
PharmaStem Therapeutics, Inc. v. ViaCell, Inc., 491 F.3d 1342, 1360 (Fed. Cir. 2007) ("the
burden falls on the patent challenger to show by clear and convincing evidence that a
person of ordinary skill in the art would have had reason to attempt to make the
composition or device, or carry out the claimed process, and would have had a reasonable
expectation of success in doing so").  A reasonable expectation of success is a question of
fact. Id. at 1165.  The Court finds that although Ferraro's expert report does not appear to
explicitly address the issue of reasonable expectation of success, the Court cannot find,
based on the totality of the opinions asserted by Ferraro regarding the obviousness of the
remaining claims, that a reasonable juror could not find that a person of ordinary skill in
the art would have a reasonable expectation of success in making the claimed invention.

1
2
3
4
5
6

> A method of processing digital data for use in facilitating the
> orthodontic treatment of a patient comprising: scanning three-
> dimensional surfaces that have the shapes of a plurality of the teeth of
> a patient and generating data thereof; from the generated data,
> producing separate digital representations of the shapes of each of a
> plurality of individual teeth of the patient.

7

Claim 40 reads:

8
9
10
11

> The method of claim 37 wherein: the producing of the separate
> digital representations from the generated data includes separating an
> image of the plurality of teeth into individual data-sets each
> representing an individual tooth.

12
13
14
15
16
17
18

Ormco argues that claims 37 and 40 are not identical, because claim 37 requires separation of "data" as part of the second step, which could involve separation of an image that is generated on a screen or manipulation of data within a computer that is not reflected as an image on a screen.  Miotke Decl. Ex. 2 (Roberts Report) at 26. Ormco argues that claim 40 is more restricted than claim 37, because it requires an "image" so that separation of data not reflected in "image" form would not meet claim 40's requirements.  Miotke Decl. Ex. 2 (Roberts Report) at 26-27.

19
20
21
22
23
24
25

Align, however, counters that claim 40 should be found indefinite as a matter of law because, in fact, the '444 patent uses the terms "data" and "image" interchangeably, and one of skill in the art would not understand how claim 40 differs from claim 37.  Opp'n at 19; Ferraro Decl. ¶ 35.  Specifically, Align argues that the term "image" as used in the '444 patent refers not to an image on a computer screen but instead, more generally, a representation of something.  Opp'n at 19.  For example, Align argues,

26
27
28

> the '444 patent talks about three-dimensional images being a
> representation of the teeth, not a picture displayed on a computer
> screen: "scanning a model of the patient's mouth to produce two or

three dimensional images . . .”; and “three dimensional imaging of
the teeth and jaw of the patient is carried out with laser or other
scanner to form full three dimensional images of the teeth and jaw of
the patient.  The images may be formed from the patient's teeth and
jaw or from a model thereof.”

Opp'n at 19.

The Court finds that Align has failed to set forth clear and convincing evidence, other than vague references to sections of the patent, that demonstrate that the term “data” and “image” are interchangeable, so as to render claim 40 identical to claim 37. Therefore, the Court grants summary judgment in favor of Ormco on the issue of indefiniteness of claim 40.

## C.     Exclusion of Rekow's Declaration

On January 26, 2009, Ormco filed a motion to exclude the “new” opinions in the declaration of Diane E. Rekow, which was submitted in support of Align's motion for summary judgment of invalidity.  Align filed an opposition on February 2, 2009.  A reply was filed on February 5, 2009.  Ormco argues that, to support its motion for summary judgment on invalidity of the remaining claims of the '444 patent, Align has improperly submitted a declaration from Rekow, Align's expert, four paragraphs of which, Ormco argues, assert substantial new opinions on invalidity not contained in Rekow's expert report.  Mot. to Exclude at 1.

Under Fed. R. Civ. P. 26(a)(2)(B), a submitted expert report must contain a “complete statement of all opinions to be expressed and the basis and reasons for them” and “the data or other information considered by the witness in forming them.” Mot. to Exclude at 2.  Under Fed. R. Civ. P. 37(c)(1), a party who fails to properly disclose information as required by Fed. R. Civ. P. 26(a) “is not allowed to use that information or witness to supply evidence on a motion, at a hearing or at a trial” unless the party's failure to disclose was “substantially justified” or “harmless.”

In its opposition, Align counters that Rekow's declaration does not, in fact,

contain any new or different opinions than those disclosed in her expert report and deposition testimony. Opp'n at 4. Align's opposition presents a side-by-side comparison of statements made in Rekow's declaration and in her expert report to bolster its argument that Rekow's declaration does not present any new opinions, but instead, merely paraphrases her opinions as presented in her expert report.

The Court first notes that, regardless of the opinions contained in the Rekow declaration, the Court herein determines that Align has failed to set forth clear and convincing evidence of invalidity with regard to the Laurendeau reference and the Duret patent. Therefore, with regard to Align's motion for summary judgment, striking the Rekow declaration would not in any way change the denial of summary judgment for Align, and therefore, the motion to strike need not be decided in connection with Align's motion.

The Court further notes that Align has also submitted some of the disputed portions of the declaration in support of its opposition to Ormco's motion for summary judgment of no invalidity. In declining to grant summary judgment in favor of Ormco on the issue of invalidity, the Court does not rely on any portion of the Rekow declaration, with the exception of paragraph 16 of the declaration submitted in support of Align's opposition (paragraph 17 in the declaration submitted in support of Align's motion), in which Rekow states her opinion that both retrospective and prospective modeling of tooth movement can be useful for orthodontic treatment. Therefore, the Court need only reach the issue of whether the opinions in this particular paragraph were disclosed in Rekow's expert report.

Specifically, the disputed portion of the Rekow declaration states:

It is often necessary to create a prospective model or series of models that indicate the desired path of tooth movement for a particular orthodontic treatment. Likewise, retrospective modeling of tooth movement by modeling and measuring differences in

> models over a period of time can provide critical information about a particular orthodontic treatment and can be used to confirm, change, or modify further orthodontic treatment as well as expanding the evidence base of the science of tooth movement.  In either situation, models of tooth movement are useful in performing orthodontic treatment.

Rekow Decl. in Support of Align's Opposition to Ormco's Motion for Summary Judgment ¶ 16.

In examining Rekow's expert report, the Court concludes that Rekow's expert report does in fact disclose the essence of the opinions stated in paragraph 16, and that, regardless, any failure to disclose the level of detail contained in the Rekow declaration is nonetheless harmless to Ormco.

Two passages of Rekow's expert report specifically discussed retrospective tooth movement related to orthodontic treatment:

> Separate digital tooth representations were routinely used prior to 1991 to model tooth movement (including quantifying tooth movement in response to orthodontic treatment) . . .

Rogaski Decl. (Rekow Report) at 8; and:

> The mathematical techniques described to move teeth [i.e. prospective tooth movement] are identical to those used to quantify tooth movement [i.e. retrospective tooth movement] in response to orthodontic treatment.

Rogaski Decl. (Rekow Report) at 2.

Although these statements do not necessarily disclose the full detail of Rekow's opinion as stated in her declaration, her statement that retrospective modeling of tooth movement can be used to "quantify tooth movement in response to orthodontic treatment," would, by logical extension, indicate that she would view such modeling as providing "critical information about a particular orthodontic treatment" and useful to

31

"confirm, change, or modify further orthodontic treatment."   Therefore, the Court
declines to strike paragraph 16 in Rekow's opposition declaration.

**IV.    CONCLUSION**

For the foregoing reasons, the Court DENIES Align's motion for summary
judgment of invalidity of the remaining claims.  The Court DENIES Ormco's motion
for summary judgment of no invalidity of the remaining claims, except that the Court
GRANTS Ormco's motion for summary judgment on the issue of indefiniteness of
claim 40.  The Court DENIES Ormco's motion to strike opinions in the Rekow
Declaration.

IT IS SO ORDERED.


Dated:  February 23, 2009

CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE