1

2                                                                    O

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                           WESTERN DIVISION

11   Ormco Corporation              )    Case No.  CV 03-16 CAS (ANx)
                                     )
12                                   )    ORDER GRANTING IN PART AND
                                     )    DENYING IN PART ORMCO'S
13                                   )    MOTION FOR SUMMARY
                                     )    JUDGMENT OF NO INEQUITABLE
14                  Plaintiff        )    CONDUCT
                                     )
15   vs.                             )
                                     )
16   Align Technology, Inc.          )
                                     )
17                  Defendant        )
                                     )
18                                   )
     _____
19

20   **I.    INTRODUCTION**

21          Plaintiff Ormco Corp. ("Ormco") filed the instant action against defendant Align

22   Technology, Inc. ("Align") on January 6, 2003, alleging that Align was infringing three

23   related Ormco patents: (1) U.S. Patent No. 5,447,432 ("the '432 patent"); (2) U.S.

24   Patent No. 5,683,243 ("the '243 patent"); and (3) U.S. Patent No. 6,244,861 ("the '861

25   patent").  Ormco later amended its complaint to allege infringement of a fourth patent,

26   U.S. Patent No. 6,616,444 ("the '444 patent").

27          On May 13, 2004, the Court granted Align's motion for summary judgment of

28   noninfringement of Ormco's patents.  See Ormco Corp. v Align Tech, Inc., 498 F.3d

1307, 1311 (Fed. Cir. 2007), citing <u>Ormco Corp. v. Align Tech., Inc.</u>, No. 03-cv-00016 slip. op. (C.D. Cal. May 13, 2004).  On August 20, 2004, the Court granted Align's motion for summary judgment of nonenablement of Ormco's patents.  <u>See id.</u>, citing <u>Ormco Corp. v. Align Tech., Inc.</u>, No. 03-cv-00016, slip. op. (C.D.Cal. Aug. 20, 2004).

Ormco appealed to the Federal Circuit.  On August 24, 2007, the Federal Circuit affirmed the Court's grant of summary judgment of noninfringement and nonenablement as to claims 1, 9, and 10 of the '432 patent, claims 1 and 2 of the '243 patent, claims 1, 3, 4, 9-12 and 16-18 of the '861 patent, and claims 1-5, 8-36, 41-44, 46-68, and 70-79 of the '444 patent.  <u>Ormco</u>, 498 F.3d at 1320.  However, the court reversed the grant of summary judgment of noninfringement and nonenablement of claims 37-40, 45, and 69 of the '444 patent, and remanded.  <u>Id</u>

On March 24, 2008, Align moved for a Markman hearing, requesting construction of terms in the remaining '444 patent claims at issue.  On October 3, 2008, this Court issued an order construing claims.

On September 8, 2008, Align filed a motion for leave to amend its answer and counterclaim to Ormco's first amended complaint in order to assert a counterclaim of inequitable conduct against Ormco.  Align's proposed amendment included allegations that Ormco engaged in misconduct when it acquired U.S. Patent No. 5,011,405 ("the '405 patent") and participated in its reissuance into Re. 35,169 ("the '405 reissue").[1]  In addition, Align sought to allege that Ormco violated its duty of candor in prosecuting the '444 patent by (1) characterizing the '405 patent in a way that was inconsistent with the way the '405 patent was characterized in a declaration Ormco submitted from Dr. Michael Scott ("Scott") ("the Scott declaration") years earlier in the prosecution of a different Ormco patent, U.S. Patent No. 5,431,562 ("the '562 patent") and (2) failing to disclose information about the reissuance of the '405 patent.  Finally, Align sought to

---

[1] In their motion and opposition, the parties often refer to Re. 35,169 as the "'169 reissue."  For reasons of clarity, the Court uses "'405 reissue" to refer to Re. 35,169.

allege that Ormco engaged in misconduct related to the prosecution of a continuation application for a pending patent (Serial No. 10/635.152) ("the '152 patent application"). On October 3, 2008, the Court granted Align's motion to amend its counterclaim with regard to all allegations except those regarding Ormco's conduct in prosecuting the pending '152 application.

On January 16, 2009, Ormco filed the instant motion for summary judgment of no inequitable conduct. On January 26, 2009, Align filed an opposition. A reply was filed on February 2, 2009. A hearing was held on February 9, 2009. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II.    FACTUAL BACKGROUND

### A.    The '405 Patent and the '405 Reissue

The '405 patent, issued on April 30, 199,1 names Dr. Marc Lemchen ("Lemchen") as the inventor. SUF ¶ 6; SGI ¶ 9. Ormco acquired the '405 patent in 1993 and filed for reissue of the '405 patent on April 30, 1993. SUF ¶ 9; SGI ¶ 9. On March 5, 1996, the '405 patent was reissued. SUF ¶ 10; SGI ¶ 10. The '405 reissue named Dr. Craig Andreiko ("Andreiko") as an additional named inventor. SUF ¶ 11; SGI ¶ 11. In addition, the '405 reissue contained some claims which were amended versions of those in the original '405 patent, and also contained some new claims that had not been included in the original '405 patent. SUF ¶ 21; SGI ¶ 21. Ormco cited the '405 patent as prior art during the prosecution of the '444 patent, and the patent examiner ("examiner") read and considered it. SUF ¶ 3-4; SGI ¶ 3-4. The '444 patent was issued in 2003.

### B.    The '562 Patent Prosecution

Ormco's '562 patent was issued in 1995. SUF ¶ 14; SGI ¶ 14. During the prosecution of the '562 patent, the examiner initially rejected the pending claims, based in part on his understandings of the teaching of the '405 patent. SUF ¶ 15; SGI ¶ 15. As part of its response to the rejection of certain claims of the '562 application, Ormco

submitted a declaration by Dr. Michael Scott ("the Scott declaration"). SUF ¶ 16; SGI ¶ 16. The Scott declaration described the teachings of the '405 patent: "Using the CAD model, computer images of the individual teeth can be moved from initial maloccluded positions to the finish tooth positions." SUF ¶ 28; SGI ¶ 28. Ormco did not submit the Scott declaration to the Patent and Trademark Office ("PTO") during the prosecution of the '444 patent. Mot at 9; Opp'n at 6.

## III.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). See also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. See also Abromson v. American Pacific Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the

inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

### B. Inequitable Conduct

To prove inequitable conduct, an accused infringer "must present evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the [PTO]." Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1365 (Fed. Cir. 2008). "[A]t least a threshold level of each element – i.e., both materiality and intent to deceive – must be proven by clear and convincing evidence[,]" although "a greater showing of one factor [allows for] a lesser showing of the other." Id.; Digital Control Inc. v. Charles Machine Works, 437 F.3d 1309, 1313 (Fed. Cir. 2006).

Furthermore, even if this evidentiary burden is met as to both elements, "the district court must still balance the equities to determine whether the applicant's conduct before the PTO was egregious enough to warrant holding the entire patent unenforceable." Id. "The need to strictly enforce the burden of proof and elevated standard of proof in the inequitable conduct context is paramount because the penalty for inequitable conduct is so severe, the loss of the entire patent even where every claim clearly meets every requirement of patentability." Id.

### IV.   DISCUSSION

Ormco argues that it is entitled to summary judgment because Align lacks any evidence from which a reasonable finder of fact – in this case, the Court – could conclude that Ormco withheld material information from the PTO with the intent to

5

deceive so as to render the '444 patent unenforceable.[2]

### A.    Failure to Disclose Material Information

"A patent applicant's duty to disclose material information to the PTO arises under the general duty of candor, good faith, and honesty embodied in 37 C.F.R. § 1.56(a) (1996) ["Rule 56"]."  Critkon, Inc. v. Becton Dickinson Vascular Access, 120 F.3d 1253, 1256 (Fed. Cir. 1997).  "Specifically, applicants have a duty to disclose to the PTO information of which they are aware which is material to the examination of the application. . . . This duty is also applicable to reissue proceedings."  Id.  Courts have long held that "[i]nformation is considered material when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent."  Tap Pharm. Prods v. OWL Pharm. L.L.C., 419 F.3d 1346, 1351 (Fed. Cir. 2005).  Rule 56, as amended in 1992, specifically states that information is material if it is "not cumulative to information already of record and "(1) establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or (2) it refutes, or is inconsistent with, a position the applicant takes in: (i) opposing an argument of unpatentability relied on by the Office, or (ii) asserting an argument of patentability." A threshold level of materiality is established where either the "reasonable examiner" or the Rule 56 standard is satisfied.  Digital Control Inc. v. Charles Mach. Works, 437 F.3d 1309, 1316 (Fed. Cir. 2006).  However, "to the extent that one standard requires a higher showing of materiality than another standard, the requisite finding of intent may be lower."  Id.

### 1.    Alleged Misconduct in Acquiring and Reissue of the '405 Patent

---

[2] "The defense of inequitable conduct in a patent suit, being entirely equitable in nature, is not an issue for a jury to decide."  Paragon Podiatry Lab., Inc. v KLM Labs., Inc., 984 F.2d 1182, 1190 (Fed. Cir. 1993).  "Thus, a disputed finding of intent to mislead or to deceive is one for the judge to resolve, not the jury, albeit not on summary judgment if there is a genuine dispute."  Id.

1   Align's counterclaim makes numerous allegations regarding misconduct by

2   Ormco in acquiring the '405 patent and participating in its reissue.  Mot. at 7.

3   Specifically, Align alleges that after the initial issuance of the '405 patent, Ormco

4   approached Lemchen, the original filer of the '405 patent, and claimed that Andreiko

5   was a co-inventor of the '405 patent.[3]  Counterclaim ¶ 47.  Align alleges that Ormco

6   demanded that Lemchen reissue the patent to include Andreiko as co-inventor.

7   Counterclaim ¶ 47.  Align alleges that Lemchen's cooperation in reissuing the patent

8   was not obtained until Ormco promised to compensate Dolphin Imaging (the assignee

9   of the '405 patent) and Lemchen.  Counterclaim ¶ 47.

10   Align further alleges that, in order to obtain a reissuance of the patent, Ormco's

11   outside patent counsel, Joseph Jordan ("Jordan"), prepared draft declarations for

12   Lemchen and Andreiko to submit to the PTO.  Counterclaim ¶ 48.  Align alleges that, in

13   reviewing the draft declarations, Lemchen objected to a statement contained therein

14   which indicated that Andreiko had invented certain concepts related to the patent, on the

15   basis that Lemchen thought that these concepts were already in the literature, and thus,

16   prior art.  Counterclaim ¶ 48.  Furthermore, Lemchen objected to another statement

17   indicating that Andreiko had demonstrated his inventions to Lemchen prior to the

18   issuance of the '405 patent. Counterclaim ¶ 48.  Align alleges that Jordan subsequently

19   revised the references in the declarations to respond to Lemchen's objections, and sent

20   the revised copies of both the Andreiko and Lemchen declarations to Lemchen.

21   Counterclaim ¶ 50.  Align alleges that subsequently, Ormco, without the knowledge of

22   Lemchen, filed a different Andreiko declaration with the PTO, which contained the

23   original language to which Lemchen had objected.  Counterclaim ¶ 50.  Align also

24   alleges that Ormco failed to inform the PTO that there was a dispute over whether

25   Andreiko had ever demonstrated his inventions to Lemchen.  Counterclaim ¶ 50. In

26   addition, Align alleges that Jordan admitted to not investigating Lemchen's statements

27   _____

28   [3] Andreiko is also a named inventor on the '444 patent.

that concepts purportedly invented by Andreiko were, in fact, prior art.[4] Opp'n at 14. Align additionally alleges that when the PTO required a second declaration from Lemchen to further explain his error of not including Andreiko as a co-inventor in the original patent application, Lemchen required Ormco to indemnify him for any claims arising out of statements he made during reissuance, and objected to a clause in the indemnification agreement that required all parties to make "complete, honest and truthful statements," stating that he "may in fact disagree with [Ormco's] representations." Counterclaim ¶ 52.

In its motion for summary judgment, Ormco states that it disputes Align's factual allegations, but argues that it is not necessary to prove them false in order to obtain summary judgment, because, as a matter of law, Align's evidence regarding the acquisition of the '405 patent and its reissue is not relevant to the '444 patent prosecution. Ormco argues that Align has pointed to no direct link between the alleged misconduct during acquisition/reissue of the '405 patent and the subsequent prosecution of the '444 patent. Mot. at 8, citing Black and Decker, Inc. v. Hoover Service Center, 765 F.Supp. 1129, 1138 (D. Conn. 1991) ("a patent owner's alleged inequitable conduct in other patent application proceedings is not relevant"); FMC Corp v. Hennesey Indus., Inc., 836 F.2d 521, 524 (Fed. Cir. 1987) (defendant's alleged "consistent practice of inequitable conduct" with other patent applications not at issue is not relevant). In particular, Ormco asserts that Align cannot argue that the alleged misconduct in adding Andreiko as an inventor of the '405 patent had any effect on the patentability of the '444 patent, because Ormco never claimed that common inventorship (Andreiko's)

---

[4] See Rogaski Decl. Ex. 6 (Jordan Dep.) 113:24-114:8 ("Lemchen thought that some of the things that he had learned from Craig [Andreiko] [were] from Prior Art. He was basically denying that he really revealed confidential information, you know, when he filed his patent application, and said that he thought that what he did put in there was in the Prior Art or public domain, I guess Prior Art to him, even confidential information he learned, would be Prior Art."); 114:13-21 (stating that he did not ask Lemchen about the basis for his belief that some of the concepts were already in the prior art).

precluded the '405 patent from being prior art as to the '444 patent, and instead cited the '405 patent as a prior art reference during the '444 patent prosecution.  SUF ¶ 13; SGI ¶ 13.

Align, however, argues that evidence of misconduct during the '405 reissue directly relates to intent to deceive the PTO during the prosecution of the '444 patent. Opp'n at 13.  Align argues that because the subject matter of the '405 reissue is related to the subject matter of the '444 patent, Ormco's breach of duty of candor in the '405 reissue is relevant to the unenforceability of the '444 patent.  Opp'n at 13.  Furthermore, Align argues that if Ormco had disclosed the facts underlying the '405 reissue during the '444 patent prosecution, the examiner likely would have requested more information about the inventions disclosed from the owner and the co-inventor, and would have had a better understanding of the '405 patent as prior art.  Opp'n at 14.

To support its position, Align cites <u>Fox Industries, Inc. v. Structural Preservation Systems, Inc.</u>, 922 F.2d 801, 804 (Fed. Cir. 1990), in which the court stated "[i]n determining inequitable conduct, a trial court may look beyond the final claims to their antecedents . . . a breach of the duty of candor early in the prosecution may render unenforceable all claims which eventually issue from the same or a related application." However, the Court notes that the factual circumstances of <u>Fox Industries</u> are distinguishable from the instant case.  <u>See id</u>.  In <u>Fox Industries</u>, a party argued that its failure to submit material information did not invalidate the patent, because the information was only material to claims that were not patented because these claims had been rejected by the PTO.  <u>Id</u>. At 803-04.  The court rejected that argument, finding that the information was material to the entire patent, despite the fact that the claims did not ultimately issue in the form in which they were drafted.  <u>See id</u>.  However, <u>Fox Industries</u> did not address a situation where, as here, a party argues that misconduct in one patent prosecution renders *a different patent* unenforceable.

Other cases have addressed this question, however, and have determined that inequitable conduct in the prosecution of one patent can in fact invalidate other patents,

but only where there is an "immediate and necessary relation" between the inequitable conduct and the enforceability of the other patents.  See Consolidated Aluminum Corp. v. Foseco Int'l, Ltd, 910 F.2d 804, 809-910 (Fed. Cir. 1990); see also Hoffman-La Roche, Inc. v. Promega Corp., 319 F. Supp. 2d 1011 (N.D. Cal. 2004) (recognizing "infectious enforceability" pursuant to which a patent could be found unenforceable if "an unconscionable act that occurs during the prosecution of one patent has an immediate and necessary relation to the equity sought in the prosecution of another patent").  In Consolidated Aluminum, the Court found that plaintiff's intentional concealment in the prosecution of one patent ("the first patent") had an "immediate and necessary relation" to the prosecution of another related patent ("the second patent"), because the concealment during the first prosecution enabled plaintiff to present the concealed information as part of the "inventive disclosure" of the second patent, and because plaintiff had disingenuously argued that the concealed information was "clearly not inherently contemplated" by the first patent.  910 F.2d at 811-12.  Furthermore, the Court found two other patents invalid, on the basis that they were continuations-in-part of the first patent which contained the identical claim to which the concealed information was relevant.  Id.

In the present action, the connection between Ormco's alleged misconduct during prosecution of the '405 reissue and the '444 patent is much more tenuous than in Consolidated Aluminum.  See id.  Align argues in part that the alleged misconduct related to the '405 reissue is material, because the subject matter of the '405 patent and the '444 patent is similar.  However, "the Consolidated Aluminum court explicitly distinguished mere relatedness of subject matter from the 'immediate and necessary relation' requirement."  Hoffman-La Roche, 319 F.Supp 2d at 1018 (declining to find unenforceability as a matter of law based on similarity in subject matter); see Consolidated Aluminum, 910 F.2d at 810-11.  Align's other principal argument is that the '444 patent examiner would have found misconduct during the prosecution of the '405 reissue relevant to his understanding of the '405 patent.  However, Align fails to

provide specific examples of how the alleged misconduct would have been directly relevant, especially given that there is no indication that Ormco's efforts in pursuing reissue of the '405 patent changed in any way the substance of the prior art to the '444 patent; in fact, as Ormco argues, Ormco did not use the reissue of the '405 patent as a basis for arguing that the '405 patent was not prior art.  Therefore, the Court concludes that Align's vague allegations of related subject matter and relevance are insufficient to establish an "immediate and necessary relation" between the alleged misconduct during the '405 reissue and the '444 patent prosecution.

For the foregoing reasons, the Court GRANTS summary judgment in favor of Ormco with regard to Align's allegations of misconduct during the '405 reissue.

## 2. Failure to Disclose '405 Reissue and Associated Documents During the '444 Patent Prosecution

Align argues that Ormco engaged in inequitable conduct when it failed to disclose to the '444 patent examiner that the '405 patent had reissued and that the '405 reissue and the '444 patent had the same origins.  Opp'n at 10. Align further argues that information submitted to the PTO by Ormco during the '405 reissue, including declarations by Jordan, Ormco's outside patent counsel; Andreiko, who was added as an inventor on the '405 reissue; Stephen Tomassi ("Tomassi"), Ormco's general counsel; and Lemchen, the original inventor named on the '405 patent, "should have been disclosed to the '444 patent examiner to satisfy Rule 56."  Opp'n at 9.

To support its argument of materiality, Align argues that, during the '444 patent prosecution, with regard to the patentability of the '444 claims, the examiner stated his understanding of what the '405 patent taught and what it did not teach.  Opp'n at 10; Rogaski Decl., Ex. 23 (Office Action Summary from the Prosecution of United States Patent No. 6,616,444 B2).  Align notes that statements in the Andreiko and Lemchen declarations discussed in detail who invented what within the '405 patent and included discussions of what was disclosed in the '405 patent, which were more than mere verbatim recitations of the language of the '405 patent.  Mot at 9; Rogaski Decl. Ex. 15

(Andreiko Decl.); Rogaski Decl Ex. 16 (Lemchem Decl.).  Furthermore, Align notes that it is undisputed that new claims were added to the '405 reissue, while others were modified.  SUF ¶ 21; SGI ¶ 21.  Align argues: "[w]hat could be more material to the examiner's patentability analysis than additional information – from the inventors themselves or from the new claims – about what the '405 patent disclosed?"  Opp'n at 9.  Align further notes that the Manual of Patent Examining Procedure ("MPEP") advises that "the question of relevancy in close cases should be left to the examiner and not the applicant."  § 2004.10.

Align also argues that it is clear that Ormco appreciated the relevance of this information, given that Ormco later disclosed the '405 reissue and the related declarations to the PTO as part of the continuation application (Serial No. 10/635,152) ('the '152 application') of another member of the '444 patent family, when the information was beneficial to Ormco.[5][6]  Opp'n at 11; Rogaski Decl. Ex. 24 (Ormco's Response to Non-Final Office Action, in the prosecution of continuing application 10/635,152, dated July 12, 2007).

Ormco responds that the failure to disclose the '405 reissue during the '444 patent prosecution cannot, as a matter of law, form the basis for inequitable conduct. First, Ormco argues that, while it has not disputed that the '405 patent is prior art as to the '444 patent, the '405 reissue, on the other hand, is not prior art as to the '444 patent. The '444 patent is part of a family of patents which claims priority back to November 9, 1992.  SUF ¶ 1; SGI ¶ 1.  Ormco notes that the application that led to the '405 reissue was filed on April 30, 1993 and that February 4, 2009 the patent reissued on March 5, 1996.  SUF ¶ 9-10; SUF ¶ 9-10.  Because both the filing date and the issue date of the

_____

[5] With regard to the '152 application, Ormco argued to the examiner that the '405 patent was not prior art as to the '152 application, because both the '405 patent and the '152 application were the work of Andreiko.

[6] On October 3, 2008, the Court held that alleged misconduct during the prosecution of the '152 continuation could not be the basis for Align's inequitable conduct claim.

'405 reissue are after the priority date of the '444 patent, Ormco argues, the '405 reissue cannot be material to the '444 patent's patentability.  Mot. at 5, citing Northern Telecom v. Datapoint Corporation, 908 F.2d 931, 940 (Fed. Cir. 1990) ("Since [device] was not prior art, it was not material to patentability").  As a result, Ormco argues, Ormco's failure to disclose the '405 reissue cannot form the basis for inequitable conduct.

Ormco also argues that the failure to disclose the '405 patent reissue cannot serve as a basis for finding inequitable conduct, because the '405 patent reissue is cumulative of information already before the patent examiner.  Mot. at 6; Star Scientific Inc., 537 F.3d at 1367 ("information is not material if it is cumulative of other information already disclosed to the PTO").  Specifically, Ormco argues that disclosing the '405 reissue during the '444 patent prosecution would have been cumulative of Ormco's prior disclosure of the '405 patent, because the abstract and specification of the '405 patent are identical to the abstract and specification of the '405 reissue.  Mot. at 6.  In so arguing, Ormco concedes that some of the claims of the '405 reissue are different from those in the '405 patent, but argues that the mere existence of additional or amended claims in the reissue is immaterial, because the claims of a patent cannot contain subject matter that is not already found within the patent specification.  Mot. at 7, citing Phillips v. AWH Corp., 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc) ("The specification must teach and enable all the claims").  Therefore, Ormco argues, the fact that the specification and the abstract were identical in the '405 patent and the '405 reissue renders the '405 reissue cumulative of the prior submission of the '405 patent.  Mot. at 7.

Align, however, argues that the '405 reissue and the associated declarations were not cumulative of information already before the PTO, because these items provided more explicit and clear information about the '405 patent.  Opp'n at 12. Align further argues that whether or not the '405 reissue is prior art as to the '444 patent is immaterial, because prior art is not the only information that must be disclosed to the

PTO under Rule 56. Opp'n at 11. Specifically, under Rule 56, information, not limited to prior art, is material where it is, *inter alia*, "not cumulative to information already of record" and "refutes, or is inconsistent with, a position the applicant takes in . . . (ii) [a]sserting an argument of patentability." 37 CFR § 1.56(b)(2)(ii).

The Court finds that, regardless of whether the '405 reissue and the associated declarations were cumulative of information already before the PTO, Align has failed to show that there is a genuine issue as to whether the '405 reissue and the associated declarations were material to the '444 patent prosecution. Align does not appear to dispute that the '405 reissue was not prior art as to the '444 patent. Furthermore, although Align quotes 37 CFR § 1.56(b)(2)(ii), Align provides no indication of how the new and amended claims in the '405 reissue or the associated declarations contained any information that "refute[d]" or was "inconsistent with" Ormco's position on patentability of the '444 patent. Instead, Align provides only vague allegations that the patent examiner would have found the '405 reissue and the associated declarations helpful in his understanding of the teaching of the '405 patent. However, these allegations are insufficient to raise an issue of fact as to materiality of this information to the patent examiner in determining the '444 patent's patentability.

For the forgoing reasons, the Court GRANTS summary judgment in favor of Ormco with regard to Align's allegations of failure to disclose the '405 reissue and the associated declarations.

### 3. Failure to Submit the Scott Declaration During the '444 Patent Prosecution

During the prosecution of Ormco's '562 patent, Ormco submitted the Scott declaration, which described the teachings of the '405 patent. SUF ¶ 28; SGI ¶ 28. Align argues that the failure to submit the Scott declaration during the prosecution of the '444 patent constitutes inequitable conduct.

#### a. Effect of Prior Submission of the Scott Declaration During Prosecution of the '562 Patent

14

1    Ormco argues that, as a matter of law, it was not inequitable conduct to not

2    supply the PTO with the Scott declaration during the prosecution of the '444 patent,

3    because Ormco had previously submitted the Scott declaration during the '562 patent

4    application, and the '562 patent, Ormco argues, is a parent to the '444 patent; therefore,

5    Ormco argues, the Scott declaration was deemed to already be before the '444 patent

6    examiner.  Mot. at 9, <u>ATD Corp. v. Lydall, Inc.</u>, 159 F.3d 534, 547 (Fed. Cir. 1998) ("it

7    can not be inequitable conduct for an applicant not to resubmit, in [a] divisional

8    application, the information that was cited or submitted in [a] parent application").[7]

9    Align, however, notes that the patent examiner for the '444 patent was not the

10   same examiner as for the '562 patent, and that the '444 patent examiner did not, in fact,

11   examine the materials submitted with the '562 patent application during prosecution.

13   [7] Ormco further cites MPEP § 609, which states

15   when filing a continuing application that claims benefit under 35
     U.S.C. 120 to a parent application . . . it will not be necessary for the
16   applicant to submit an information disclosure statement in the
     continuing application that lists the prior art cited by the examiner
17   in the parent application. . . . The examiner of the continuing
     application will consider information which has been considered by
18   the Office in the parent application.

20   Align counters that this section of the MPEP was not in existence at the time of the
     '444 patent prosecution.  However, the version of the MPEP relied on by Align (8th Ed.,
21   2001, revised February 2003) does contain a similar provision:

23   Information which has been considered by the Office in the parent
     application of a continued prosecution application (CPA) filed under 37
24   CFR 1.53(d), or a file wrapper continuing application (FWC) filed prior
     to December 1, 1997, under former 37 CFR 1.62, will be part of the file
25   before the examiner and need not be resubmitted in the continuing
     application to have the information considered and listed on the patent.

27   MPEP (8th Ed. 2001, revised February 2003) § 609.

15

Opp'n at 15.  Furthermore, Align argues that the '562 patent was not, in fact, a "parent" to the '444 patent, but was instead far more removed in the chain of patents, so as to render it a great-great-great-grandparent of the '444 patent.  SGI ¶ 14; Manbeck Decl. ¶ 21.  Therefore, Align argues, Ormco is incorrect to place the burden on the '444 patent examiner to discover the existence of the Scott declaration.  Opp'n at 16, citing McKesson Info Solutions, Inc. v. Bridge Med, Inc., 487 F.3d 897, 925 (Fed Cir. 2007) (noting that the 1986 version of the MPEP stated "a prosecuting attorney should not assume that [a PTO examiner] retains details of every pending file in his mind when he is reviewing a particular application.").

Align also argues that section 201.06(c) of the MPEP is also relevant.  Section 201.06 states

> . . . declarations, such as those submitted under 37 CFR 1.132 filed during the prosecution of the prior nonprovisional application do not automatically become a part of a continuation or divisional application filed under 37 CFR 1.53(b).  Where it is desired to rely on an earlier filed affidavit or declaration, the applicant should make such remarks of record in the 37 CFR 1.53(b) application and include a copy of the original affidavit or declaration filed in the prior nonprovisional application.

Opp'n at 17; Ragoski Decl. Ex. 26 (MPEP, 8th Ed., 2001, revised February 2003).

To support its argument that Ormco was not absolved of responsibility to submit the Scott declaration, Align submits the declaration of Harry F. Manbeck, a former Commissioner of Patents and Trademarks.  Manbeck Decl. ¶ 2.  Manbeck states:

> The '444 patent stems from a long chain of continuation and divisional applications, the earliest ones of which were filed on November 9, 1992.  The '444 patent itself did not issue until September 9, 2003.  One of the earliest applications filed in the chain was application number 07/973,973 filed on November 9,

1992.  That application issued as Patent No. 5,431,562.  After the '973 application, it took five more continuing applications before the '444 patent issued.  The parent application to the application for the '444 patent was application number 09/431,466, filed November 1, 1999, and the other applications in the chain (grandparent, great-grandparent, etc.) span the seven years between 1992 and 1999.

Manbeck Decl. ¶ 21.  Manbeck further states that

the fact that the Scott declaration was filed during prosecution of the '562 patent does not mean, under any rule of the PTO, that the Examiner was required to search for it during the '444 patent prosecution.  The Examiner's responsibility under M.P.E.P. 609.02 extends only to the parent application, i.e., the application immediately preceding the application being examined.

Manbeck Decl. ¶ 31.  Ormco, however, disputes Manbeck's argument, stating that under the definition set forth in the MPEP, the '562 patent was in fact a parent application, because the MPEP states that "[t]he term "parent" is applied to an earlier application of an inventor disclosing a given invention.  Such invention may or may not be claimed in the first application." MPEP (8th Ed., 2001, revised February 2003) § 201.04.

Although section 201.06(c) of the MPEP cited by Align does not appear to *require* a party to submit all declarations from previous applications, the Court finds that Ormco has failed to demonstrate that, despite the fact that the '444 patent was removed in the chain from the '562 patent, it was nevertheless reasonable for Ormco to have assumed that the Scott declaration was before the patent examiner as part of a "parent application."  Therefore, the Court turns to the question of whether the Scott declaration was material to the '444 patent prosecution.

**b.    Materiality of the Scott Declaration to the '444 Patent**

**Prosecution**

Ormco argues that, in any case, the Scott declaration was not material to the '444 patent prosecution, because the Scott declaration merely paraphrases what the '405 patent purports to disclose, and the '405 patent was already before the patent examiner.  Mot. at 10.  Therefore, Ormco argues, the Scott declaration need not have been submitted, because it was cumulative of other information already disclosed to the PTO.  Mot. at 13; See Star Scientific, Inc., 537 F.3d at 1367 ("information is not material if it is cumulative of other information already disclosed to the PTO").

Align responds that the Scott declaration was not cumulative.  Align first notes that during the '444 patent prosecution, the patent examiner characterized the teaching of the '405 patent as follows:

> In regard to claim 86, Lemchen [the '405 patent] discloses the scanning of a patient's teeth . . .  and would inherently produce some sort of 'digital representation' of the desired movement of an individual tooth (or teeth) with respect to the other teeth . . . .  It does not appear to follow, however, that separate digital representations of the shapes of each of a plurality of individual teeth are produced from the scanned data of a plurality of the teeth as specifically required by the claim.

Opp'n at 5; Rogaski Decl., Ex. 23 (Office Action Summary from the Prosecution of United States Patent No. 6,616,444 B2).  Align argues that this statement "stands in direct contrast" to Scott's interpretation of the '405 patent, as expressed in the Scott declaration submitted during the '562 patent prosecution:

> The approach that Dr. Lemchen discloses in his ['405] patent uses conventional CAD technology to form a mathematical model in a computer.  The model is generated by digitizing the maloccused teeth in their initial positions in the patient's mouth.  Using the CAD model, computer images of the individual teeth can be

moved from initial maloccluded positions to finish positions.

SUF ¶ 28; SGI ¶ 28 (emphasis added).  Align argues that this statement demonstrates that

> [c]ontrary to the examiner's stated understanding, Dr. Scott clearly
> describes forming "a" (i.e. single) mathematical model of the initial
> positions of the teeth (i.e. single model of multiple teeth) by
> digitizing (i.e. scanning) them.  Dr. Scott further describes that,
> using CAD technology, computer images (i.e. "usable images") of
> "individual teeth" can be moved (i.e. have been separated from the
> initial single mathematical model of multiple teeth.)

Opp'n at 15.  Align argues that Ormco knew that the Scott declaration was relevant, and indeed contradictory, to the patent examiner's understanding of the '405 patent, but failed to say anything, which allowed claim 37 of the '444 patent to issue.  Opp'n at 6.  In addition, Align argues that Ormco affirmatively amended claim 69 of the '444 patent in order to capitalize on the examiner's "misunderstanding" of the '405 patent, by adding a limitation to capture what the examiner stated was not taught by the '405 patent ("separate digital representations"), even though the Scott declaration stated that the '405 patent taught "computer images of individual teeth."  Opp'n at 6; Ferraro Decl. ¶¶ 12-13.

Ormco replies that the Scott declaration and the Examiner's statements are not contradictory.  Mot. at 14.  Ormco argues:

> The examiner, like the Scott declaration, states that Lemchen
> discloses making a digital representation of the teeth.  The
> Examiner simply adds a sentence stating his conclusion from those
> similar observations that Lemchen did not disclose the inventions
> claims in claims 37, 45, and (eventually) 69, *viz.*, using 3D
> scanning techniques to generate undifferentiated 3D digital data of
> the shapes of a ***plurality of teeth,*** and then producing separate 3D

1
2
3
4
5
6
7

> digital representations of each individual tooth from the data so generated. Nowhere does the Scott declaration contradict this conclusion or state that Lemchen discloses (let alone teaches) using 3D scanning techniques to generate a 3D digital model of a plurality of the teeth and then from this undifferentiated data producing separate 3D digital representations of each individual teeth. Opp'n at 14.

8
Mot. at 14.

9
10
11
12
13
14
15
Despite Ormco's arguments, the Court finds that Align has raised a sufficient question of fact as to whether the Scott declaration in fact contradicted the '444 patent examiner's understanding of the '405 patent's teachings, so as to render the Scott declaration material to the '444 patent prosecution under Rule 56. The Court therefore next turns to the question of whether Ormco is nevertheless entitled to summary judgment on the basis of the second required element of inequitable conduct: intent to deceive.

16
### B.    Intent to Deceive

17
18
19
20
21
Ormco argues that Align has presented no evidence of the requisite intent to deceive the PTO. "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference." Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d at 1366.

22
23
24
25
26
27
28
Courts have "repeatedly" found that "direct evidence of intent is unavailable in most cases and unnecessary in any event." Frazier v. Roessel Cine Photo Tech, Inc., 417 F.3d 1230, 1236 (Fed. Cir. 2005); see also Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs. Ltd., 394 F.3d 1348, 1354 (Fed. Cir. 2005) ("Intent need not, and rarely can, be proven by direct evidence. Rather, in the absence of a credible explanation, intent to deceive is generally inferred from the facts and circumstances surrounding a knowing failure to disclose material information."); Ulead Sys., Inc. v.

Lex Computer & Mgmt. Corp., 351 F.3d 1139, 1146 (Fed. Cir. 2003) ("Direct evidence of deceptive intent is not required; rather it is usually inferred from the patentee's overall conduct.").  However, "[i]ntent to deceive cannot be inferred simply from the decision to withhold the reference where the reasons given for the withholding are plausible."  Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d at 1367  Further, "the inference must not only be based on sufficient evidence and be reasonable in light of that evidence, but it must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard."  Id.

Ormco argues that Align has not pled a single fact to support a finding that Ormco acted with the specific intent to deceive the PTO.  Mot. at 16.  In addition, Ormco argues, Align has not developed any such evidence during discovery, in that it failed to ask a single question regarding Ormco's rationale for not disclosing the '405 reissue or the Scott declaration during the '444 patent prosecution during the depositions of Jordan, Tomassi, Scott, and Lemchen.  Mot. at 17.  Ormco further notes, and Align admits, that Dr. Manbeck, Align's proffered expert on inequitable conduct, offers no opinion on intent.  SUF ¶ 33; SGI ¶ 33.  Align, however, argues that the only reasonable inference to be drawn from the misconduct alleged is that Ormco intended to deceive the PTO.  Opp'n at 18.

The Court finds that although Align has not presented direct evidence of intent to deceive the PTO, the factual circumstances raise a question as to whether intent to deceive is the most reasonable inference to be drawn from Ormco's failure to submit the Scott declaration during the prosecution of the '444 patent.

For the foregoing reasons, the Court DENIES summary judgment with regard to Ormco's failure to submit the Scott declaration during the prosecution of the '444 patent.

IV.   **CONCLUSION**

For the foregoing reasons the Court GRANTS summary judgment to Ormco on

the issue of (1) alleged misconduct in acquiring and reissuing the '405 patent and (2) failure to disclose the '405 reissue and related documents during the '444 patent prosecution.  The Court DENIES summary judgment on the issue of failure to disclose the Scott declaration during the '444 patent prosecution.

IT IS SO ORDERED.

Dated:  February 23, 2009

CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE