O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Ormco Corporation<br><br>        Plaintiff,<br><br>vs.<br><br>Align Technology, Inc.<br><br>        Defendant<br>_____ | Case No.  CV 03-16 CAS (ANx)<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

## I. INTRODUCTION

This is an action brought by plaintiff Ormco Corp. ("Ormco") against defendant Align Technology, Inc. ("Align") regarding the alleged infringement of four related Ormco patents: (1) U.S. Patent No. 5,447,432 ("the '432 patent"); (2) U.S. Patent No. 5,683,243 ("the '243 patent"); and (3) U.S. Patent No. 6,244,861 ("the '861 patent"); and (4) U.S. Patent No. 6,616,444 ("the '444 patent").  On May 13, 2004, the Court granted Align's motion for summary judgment of noninfringement of Ormco's patents. See Ormco Corp. v Align Tech, Inc., 498 F.3d 1307, 1311 (Fed. Cir. 2007), citing Ormco Corp. v. Align Tech., Inc., No. 03-cv-00016 slip. op. (C.D. Cal. May 13, 2004). On August 20, 2004, the Court granted Align's motion for summary judgment of nonenablement of Ormco's patents. See id., citing Ormco Corp. v. Align Tech., Inc., No. 03-cv-00016, slip. op. (C.D.Cal. Aug. 20, 2004).

Ormco appealed to the Federal Circuit. On August 24, 2007, the Federal Circuit affirmed the Court's grant of summary judgment of noninfringement and nonenablement as to claims 1, 9, and 10 of the '432 patent, claims 1 and 2 of the '243 patent, claims 1, 3, 4, 9-12 and 16-18 of the '861 patent, and claims 1-5, 8-36, 41-44, 46-68, and 70-79 of the '444 patent. Ormco, 498 F.3d at 1320. However, the court reversed the grant of summary judgment of noninfringement and nonenablement of claims 37-40, 45, and 69 of the '444 patent, and remanded. Id.

This action was tried to a jury on June 9, 10, 11, 12, 16, 17, 18, 19, and 25, 2009. Richard Marschall and David DeBruin of Michael Best & Friedrich LLP and Christopher Mead of London & Mead appeared for Ormco. Anne Rogaski, Heidi Kim, Daniel Furniss, and Jon Swenson of Townsend and Townsend and Crew LLP appeared for Align. On June 25, 2009, the jury returned a verdict for plaintiff, finding that Align had infringed the '444 patent and that claims 37, 38, 40, 45, and 69 were not anticipated or obvious. The jury also issued an advisory verdict, finding that Align had failed to prove that the '444 patent is unenforceable due to prosecution laches or unclean hands.

## I.

## FINDINGS OF FACT

The application for what became the U.S. Patent No. 6,616,444 ("the '444 patent") was filed on June 11, 2001. The claims asserted in this suit were added to the '444 patent application on December 12, 2002. The '444 patent issued on September 9, 2003.

The '444 patent claims priority to seven patent applications

The first of which applications was filed on November 9, 1992. This patent – U.S. Patent No. 5,368,478 – was allowed on May 12, 1994 and issued on November 29, 1994.

U.S. Patent No. 5,447,432 was filed on November 9, 1992, allowed on December 21, 1994 and issued on September 5, 1995.

U.S. Patent No. 5,431,562 was filed on November 9, 1992, allowed on January 4, 1995 and issued on July 11, 1995.

U.S. Patent No. 5,454,717 was filed on November 9, 1992, allowed on April 6, 1995 and issued on October 3, 1995.

U.S. Patent No. 5,683,243 was filed on June 2, 1995, allowed on March 19, 1997 and issued on November 4, 1997.

U.S. Patent No. 6,015,289 was filed on October 30, 1997, allowed on August 16, 1999 and issued on January 18, 2000.

U.S. Patent No. 6,244,861 was filed on November 1, 1999, allowed on December 18, 2000 and issued on June 12, 2001.

The '444 patent was filed on June 11, 2001. The asserted claims were added on December 12, 2002. The patent was allowed on March 24, 2003 and issued on September 9, 2003.

Align was founded in March 1997. Align raised approximately $125 million dollars in venture capital while it was a privately held company. 6/16/09 Trial. Trans. at 56:2-3. Align's Invisalign product was commercially launched in May 1999. 6/16/09 Trial. Trans. at 57:17-18. Align raised approximately $125 million dollars in its initial public offering in March 2001.

At the time Align was formed, four of Ormco's eight patents in the family had issued.

Align contends that the doctrine of prosecution laches and unclean hands should bar enforcement of the claims at issue in Ormco's '444 patent. In particular, Align argues that Ormco's delay in securing the claims was unreasonable, and that Align was prejudiced by this delay. Ormco, however, argues that its delay was not unreasonable, that it was excused, and that Align suffered no prejudice.

With regard to the reasonableness of the delay, Align contends that the ten-year delay between the filing of the original patent application on November 9, 1992, and Ormco's addition of the claims asserted in this case on December 12, 2002, was

unreasonable because Ormco was in possession of the alleged inventions contained in the asserted claims at the time the priority application was filed in 1992. Align's Proposed Findings of Fact and Conclusions of Law ("Align Br.") ¶ 55. Align argues that there is no legitimate excuse for Ormco's delay, and that, in fact, Ormco delayed because it did not view the basic steps of scanning and separating as patentable until it later saw Align's processes and sought to seek broader claims to cover Align's process. Id. ¶ 22; 56.[1] [2] Align further argues that Ormco's product, Insignia, was a commercial failure, and that rather than working on investing Ormco "sat back, watched Align invest hard work and money into a novel product, and then wrote claims after ten years of possessing its invention with the intent to cover Align's process." Align Br. ¶ 43. Ormco, however, contends that it was prompted to review its claims in the '444 patent when Ormco's general counsel, Stephen Tomassi, noted that one of Ormco's competitors, 3M Company, had been obtaining patent claims that were well crafted and less burdened by unnecessary limitations, and in response, he sought to emulate 3M Corporation's practice. Ormco's Proposed Findings of Fact and Conclusions of Law ("Ormco Br.") ¶ 29; see 6/19/09 Trial Tr. 140:17-24.

With regard to prejudice, Align contends that it was prejudiced by Ormco's delay because it spent vast amounts of time, money and effort from 1997 to 2003 on researching, developing, manufacturing, and selling its Invisalign product. Align Br. ¶

---

[1] In its Proposed Findings of Fact and Conclusions of Law, Ormco objects to this contention by Align, as well as a number of others, arguing that they are not supported by the record, and that, in many instances, the trial transcript citations provided by Align in support of its proposed findings are to questions posed by attorneys rather than to statements by witnesses. The Court does not consider contentions by Align that are not supported by the record.

[2] Ormco also objects to Align's Proposed Findings of Fact and Conclusions of Law to the extent it cites to questions posed by Align's counsel regarding privileged material in a memorandum never admitted into evidence. See 6/19/09 Trial Tr. 149:15-18; 155:16-18. Because the Court finds that the privileged material, even if admitted, does not alter the Court's findings and conclusions herein, the Court need not reach this issue.

19. Ormco, however, contends that Align was not prejudiced by the delay, because there is no evidence that Align would have done anything differently between 1997 and 2003 if it had been faced with the '444 patent sooner. Ormco Br. ¶ 27.

## II.
## CONCLUSIONS OF LAW

**A.     Prosecution Laches**

Prosecution laches is "a defense to an infringement action involving new claims issuing from divisional and continuing applications that prejudice intervening adverse public rights." Symbol Technologies, Inc. v. Lemelson Med., Educ. & Research Foundation, LP ("Symbol I") 277 F.3d 1361, 1364 (Fed. Cir. 2005). The doctrine "may be applied to bar enforcement of patent claims that issue[] after an unreasonable and unexplained delay in prosecution." Id. To succeed on a prosecution laches defense, defendant must prove that "plaintiff unreasonably delayed the prosecution of his patent(s) in a manner that cannot be reasonably explained." Reiffin v. Microsoft Corp., 281 F. Supp. 2d 1149, 1151 (N.D. Cal. 2003). Defendant must prove this element by a preponderance of the evidence. Id.

The doctrine of prosecution laches was first announced by the Supreme Court in a series of cases in the early- to mid- twentieth century. See Woodbridge v United States, 263 U.S. 50 (1923); Webster Electric Co v Splitworm Electrical Co., 264 U.S. 463 (1924); Crown Cork & Seal Co v Ferdinand Goodman Co, 304 U.S. 159 (1938); General Talking Pictures Corp v Western Electric Company, 304 U.S. 175 (1938). More recently, in Symbol I, 277 F.3d 1361, the Federal Circuit affirmed that prosecution laches remains a viable defense to the enforcement of a patent.

Courts have employed the doctrine of prosecution laches to invalidate a patent very infrequently. In fact, two district courts have observed that Symbol Technologies, Inc. v. Lemelson Med., Educ. & Research Foundation, LP, ("Symbol II") 301 F. Supp. 2d 1147, 1155 (D. Nev. 2004), aff'd 422 F.3d 1378 (Fed. Cir. 2005) is the only instance

where a district court found that prosecution laches operated as a defense. See Ariad Pharms., Inc. v Eli Lilly & Co., 529 F. Supp. 2d 106, 140 (D.Mass. 2007), aff'd in part, rev'd in part on other grounds, 560 F.3d 1366 (Fed. Cir. 2009) ("It appears that [the patentee's] conduct in the Symbol Cases represents the only time a district court found a prosecution delay unreasonable and unexplained enough to trigger prosecution laches."); Kothman Enters., Inc. v. Trinity Indus., Inc., 455 F. Supp. 2d 608, 646 (S.D. Tex. 2006) ("At present, only one district court (now affirmed by the Federal Circuit) has found prosecution laches, and in that case the delays were as long as 39 years.").

In Symbol II, 301 F. Supp. 2d 1147, Lemelson, the patentee, filed his two original patent applications in 1954 and 1956, and then delayed from 18 to 39 years in filing the related applications that ultimately issued as the fourteen patents in suit. The district court held that "[a]t a minimum, Lemelson's delay in securing the asserted claims amounts to culpable neglect as he ignored the duty to claim his invention promptly." Id. at 1156. With regard to the resulting prejudice, the district court held that "[t]he prejudicial effect of Lemelson's failure to assert his claims without unreasonable delay is that suffered by the public, and privately by Symbol and Cognex and others, which were denied the ability to distinguish that which is claimed by Lemelson from that which is not." Id. The court further noted that "the record also shows that Lemelson effectively extended his patent monopoly by maintaining co-pendency for nearly forty years through continuation practice, and added new claims to cover commercial inventions in the market place years after his original patents had expired. This is precisely the type of prejudice to the public which the equitable doctrine of prosecution laches is designed to guard against."[3] Id. On appeal in Symbol

---

[3] At the time of the filing of the patents at issue in Symbol II, patent law measured the term of patents from 17 years from the date of issuance of the patent. On June 7, 1995, Public Law No. 103-465, the Uraguay Round Agreements Act, was enacted. This Act changed the law such that time limits for patents that issue based on applications filed on or after June 8, 1995 are calculated based on the earliest filing date. See 35 U.S.C. §
(continued...)

Technology, Inc. v. Lemelson Med., Educ., & Research Foundatino , LP, ("Symbol III"), 422 F.3d 1378, 1384 (Fed. Cir. 2005), the Federal Circuit affirmed, holding that the district court did not abuse its discretion in finding the patents at issue unenforceable due to prosecution laches.

In another recent case, In re Bogese, 303 F.3d 1362, (Fed. Cir. 2002), the Federal Circuit affirmed the PTO's finding of prosecution laches as a basis for rejecting an applicant's claims. In that case, the patent examiner rejected the claims because the applicant had filed numerous consecutive patent applications over an eight-year period, each time without substantively amending any of the claims that had previously been rejected by the PTO, in order to postpone the issuance of the patent and extend its term. Id. at 1365, 1369.

In many other instances, however, courts have found that delays in prosecution did not support a finding of prosecution laches. See, e.g., Stambler v. RSA Sec., Inc., 243 F. Supp. 2d 74, 74-75 (D. Del. 2003) (seven-year delay between original claim to priority and the issuance of final patent was not unreasonable as a matter of law); Intuitive Surgical, Inc. v. Computer Motion, Inc., 2002 U.S. Dist. LEXIS 24808 (D. Del. Dec. 10, 2002) (finding no prosecution laches in delay of almost nine years). Thus, in assessing the reasonableness of a delay, "[t]here are no strict time limitations for determining whether continued refiling of patent applications is a legitimate utilization of statutory provisions or an abuse of those provisions." Symbol Technology, Inc. v. Lemelson Med., Educ., & Research Foundatino , LP, ("Symbol III"), 422 F.3d 1378, 1384 (Fed. Cir. 2005); see also Cordance Corp. v. Amazon.com, Inc., 2009 WL 1883914 (D. Del. June 30, 2009) ("[d]uration of prosecution, however, does not provide a bright-line rule as to the reasonableness of prosecution . . .").

Instead, the Court must look at the overall circumstances to determine whether

---

[3](...continued)
154(a)(2).

the patentee's delay was reasonable.  The Federal Circuit has noted that "[t]here are legitimate grounds for refiling a patent application which should not normally be grounds for a holding of laches, and the doctrine should be used sparingly lest statutory provisions be unjustifiably vitiated. The doctrine should be applied only in egregious cases of misuse of the statutory patent system." Symbol III, 422 F.3d at 1385.  For example,"[c]ommonly, and justifiably, one might refile an application to add subject matter in order to attempt to support broader claims as the development of an invention progresses , . . " Id.  By contrast, "refiling an application solely containing previously-allowed claims for the business purpose of delaying their issuance can be considered an abuse of the patent system." Id.  Similarly, "[a]n applicant's attempts to obtain new claims directed to inventions that he or she believes are fully disclosed and supported in an earlier application, . . . is easily distinguishable from appellant's failure to further the prosecution of his application toward the issuance of any claims."  In re Bogese, 303 F.3d at 1369.  One district court has noted that while traditionally "the prosecution laches defense . . . responds to concerns that inventors will file narrow claims, await intervening developments, and then file broader claims to cover those developments", the Federal Circuit "may have taken a step back from [this] rationale for the prosecution laches defense."  Chiron Corp. v. Genentech, Inc., 268 F. Supp.2d 1139, 1142-43 (E.D.Cal. 2002).  In particular, the Chiron court noted that the Federal Circuit had stated that "there is nothing improper, illegal, or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market."  Id., quoting Kingsdown Med. Consultants v. Hollister, Inc., 863 F.2d 867, 874 (Fed. Cir. 1988).

For example, in Reiffin v. Microsoft Corp., 281 F. Supp. 2d 1149, 1151 (N.D. Cal. 2003) the prosecution history of plaintiff's patents spanned a period of approximately 15 years from initial application to ultimate issuance.  The court noted that during this time "[p]laintiff aggressively and repeatedly challenged adverse determinations of the three examiners assigned to his cases. Plaintiff was successful in

8

overturning (whether in part or in whole) a significant number of the adverse determinations he challenged." Id. at 1153. The court stated that "[p]laintiff's problematic litigation tactics were aggressive and combative and contributed significantly to delays in the prosecution, but the evidence does not reflect that these methods were adopted with the intent to interpose delay or with the effect of unreasonably delaying the prosecution of plaintiff's applications." Id. The court further observed that "the most troubling aspect of plaintiff's prosecution is the fact that changes in claim scope closely tracked external developments in the field. The correspondence between the invention(s) plaintiff claimed with the evolution of the field of computer science is highly suspicious and suggestive of opportunism." Id. Nonetheless, the Court found that defendant had failed to prove by a preponderance of the evidence that plaintiff's patent was unenforceable due to prosecution laches, stating that "plaintiff's suspicious and suggestive conduct is insufficient to support a finding of unreasonable and unexplained delay." Id.

In assessing the reasonableness of delay when a series of applications have been filed, some courts have considered the time elapsed in prosecution of the applications compared with the average pendency time for applications overall. See Cordance Corp. v. Amazon.com, Inc., 2009 WL 1883914 (D. Del. June 30, 2009). In Cordance, the court noted that the period between the filing of the patentee's first application and the issuance of the fifth patent was eight years and four months, while the average pendency between application and grant at the PTO was 31 months. Id. at *3 The court noted that four of the patentee's patents issued quicker than average, while one patent application took longer than average. Id. The court stated that, therefore, "as an initial matter the time for prosecuting each of the patents in the patent family does not appear to indicate an egregious misuse of the statutory patent system." Id.; see also Stambler v. RSA Security, Inc., 243 F. Supp. 2d 74 (D. Del. 2003) ("[m]easured from the application dates, the . . . patents issued in less than two and one-half years. Measured from the date of the original application, the . . . patents issued in less than seven (7)

years. Considering the prosecution history as a whole, seven years does not represent an unreasonable delay. Plaintiff ultimately received seven different patents in seven years"). In Cordance, the court noted that, unlike in Symbol, there was no indication that patentee delayed in order to extend the term of its patents. Id. at *16. The Court further held that the patentee's explanation that it filed the patents in the way that it did because it was a "small technology company with limited resources" and therefore had to be "selective in filing patent applications" was reasonable. Id. at *16.

Furthermore, in determining whether prosecution laches should invalidate a patent, the Court may also consider whether the delay resulted in prejudice. See Symbol I, 277 F.3d at 1364. With regard to the assessment of whether prejudice has resulted from the patentee's conduct, one district court has held that "[w]here a long period of delay is involved, other inventors may work under the assumption that the patentee is not going to prosecute broader claims; they may develop improvements only to find that they are infringers of a later-prosecuted patent. [Federal Circuit precedent] therefore does not preclude an alleged infringer from asserting these kind of circumstances as grounds for a prosecution laches defense." Chiron, 268 F. Supp. 2d at 1142. However, in Federal Circuit cases involving the invocation of a traditional laches defense (i.e. where plaintiff had allegedly delayed in filing suit) the court has held that "[i]t is not enough that the alleged infringer changed his position-i.e., invested in production of the allegedly infringing device. The change must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity." Hemstreet v. Computer Entry Systems Corp., 972 F.2d 1290, 1294 (Fed. Cir. 1992); see also James River Corp. v. Hallmark Cards, Inc., 915 F. Supp. 968, 978 (E.D. Wis. 1996) ("An infringer's continuation of infringing activity is probative of a lack of prejudice. Where no evidence shows the infringer stopped selling the allegedly infringing product even after the patentee filed the complaint, a court may draw the inference that the infringer would have continued to sell the infringing product even if the patentee had brought suit earlier").

In this case, a finding of prosecution laches is unwarranted, because there is no evidence that Ormco's behavior constituted an "egregious misuse of the statutory patent system." See Symbol III, 422 F.3d at 1385.

First, unlike in Symbol II, 301 F. Supp. 2d at 1155, there is no issue that the delay in obtaining the '444 patent was caused by a desire to extend the '444 patent's term, as by law its term expires no later than 20 years from the filing of the November 9, 1992 patent application, and, in addition, the patent is subject of a terminal disclaimer that further limits its term. See Chiron Corp., 268 F. Supp. 2d at 1144 (terminal disclaimer weighs in favor of finding no prosecution laches). Furthermore, although not dispositive, it is worth noting that the delay in Symbol II was significantly more lengthy than in this case. In Symbol II, the patentee delayed between 18 and 39 years in filing the applications that ultimately issued as the fourteen patents in suit. See 301 F. Supp. 2d at 1154. Here, by contrast, Ormco's earliest patent was filed in 1992, while the '444 patent ultimately issued in 2003. In addition, Align has presented no evidence that the amount of time it took Ormco to prosecute each of the individual eight patents that issued between 1992 and 2003, which ranged from between 20 to 35 months, was unreasonable. See Cordance, 2009 WL 1883914.

Furthermore, Align has not demonstrated that Ormco's decision to file these multiple applications between 1992 and 2001 was unreasonable. By contrast, Ormco's in-house counsel, Stephen Tomassi, testified at trial that it was common practice by Ormco's competitors to continue to add additional claims to pending patents, and further stated that he was motivated to review pending continuing applications, including the application that resulted in the '444 patent, after noting that he could emulate the practice of a competitor who had obtained patent claims that were well crafted. 6/19/09 Trial. Tr. 136:4-14; 140:17-24. Although Align has presented evidence that Ormco was aware of and reviewed Align's patents during this time period, this fact alone does not render Ormco's actions unreasonable. An applicant's attempts to obtain new claims directed to inventions the applicant believes are fully

disclosed in an earlier application is not improper, and in fact, "there is nothing improper, illegal, or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the marketplace." See In re Bogese, 303 F.3d at 1369; Chiron, 268 F. Supp. 2d at 1142-43, quoting Kingsdown, 863 F.2d at 874.

Furthermore, there has been an insufficient showing of prejudice to Align to support a finding of inequitable conduct. In particular, Align has failed to set forth evidence indicating that Align would have done anything differently if it had been faced with the asserted claims of the '444 patent sooner. See Hemstreet, 972 F.2d at 1294 (in laches context, "[i]t is not enough that the alleged infringer changed his position-i.e., invested in production of the allegedly infringing device. The change must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity"); see also James River Corp., 915 F. Supp. at 978 ("Where no evidence shows the infringer stopped selling the allegedly infringing product even after the patentee filed the complaint, a court may draw the inference that the infringer would have continued to sell the infringing product even if the patentee had brought suit earlier").

**B.     Unclean Hands**

A patent owner may be barred from enforcing a patent against an alleged infringer when the patentee "has violated conscience or good faith, or other equitable principle, in his prior conduct." Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 244-45 (1933).

Align has failed to demonstrate that Ormco's actions support a finding of unclean hands. As explained herein, Align has not shown that Ormco's delay in securing the '444 claims at issue was unreasonable. Although Align additionally cites evidence indicating that Ormco was threatened by Align's success and sought to compete in the marketplace, the mere fact that Ormco knew of Align's processes and filed claims that covered these processes is insufficient in and of itself to support a finding of unclean

hands. See Kingsdown, 863 F.2d at 874 ("there is nothing improper, illegal, or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market, nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application. Any such amendment or insertion must comply with all statutes and regulations, of course, but, if it does, its genesis in the marketplace is simply irrelevant and cannot of itself evidence deceitful intent").

### III. CONCLUSION

For the foregoing reasons, the Court finds that judgment should be entered in favor of Ormco on Align's claims for prosecution laches and unclean hands.

IT IS SO ORDERED.

Dated: July 27, 2009

_____
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE