## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

O

## CIVIL MINUTES - GENERAL

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Sandra Becerra | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| David DeBruin Christopher Mead | Anne Rogaski |

**Proceedings:**   **Defendant's Motion for Judgment as a Matter of Law** (filed June 25, 2009)

## I.     INTRODUCTION AND BACKGROUND

Plaintiff Ormco Corp. ("Ormco") filed the instant action against defendant Align Technology, Inc. ("Align") on January 6, 2003, alleging that Align is infringing three related Ormco patents: (1) U.S. Patent No. 5,447,432 ("the '432 patent"); (2) U.S. Patent No. 5,683,243 ("the '243 patent"); and (3) U.S. Patent No. 6,244,861 ("the '861 patent"). Ormco later amended its complaint to allege infringement of a fourth patent, U.S. Patent No. 6,616,444 ("the '444 patent").

On May 13, 2004, the Court granted Align's motion for summary judgment of noninfringement of Ormco's patents.  See Ormco, 498 F.3d 1307, 1311 (Fed. Cir. 2007), citing Ormco Corp. v. Align Tech., Inc., No. 03-cv-00016 slip. op. (C.D. Cal. May 13, 2004).  On August 20, 2004, the Court granted Align's motion for summary judgment of nonenablement of Ormco's patents.  See id., citing Ormco Corp. v. Align Tech., Inc., No. 03-cv-00016, slip. op. (C.D.Cal. Aug. 20, 2004).

Ormco appealed to the Federal Circuit.  On August 24, 2007, the Federal Circuit affirmed the Court's grant of summary judgment of noninfringement and nonenablement as to claims 1, 9, and 10 of the '432 patent, claims 1 and 2 of the '243 patent, claims 1, 3, 4, 9-12, and 16-18 of the '861 patent, and claims 1-5, 8-36, 41-44, 46-68, and 70-79 of the '444 patent.  Ormco, 498 F.3d at 1320.  However, the court reversed the grant of summary judgment of noninfringement and nonenablement of claims 37-40, 45, and 69 of the '444 patent ("the remaining claims"), and remanded the action to this Court.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

On January 16, 2009, Align and Ormco each filed various motions for summary judgment.  On February 23, 2009, the Court issued orders (1) denying Align's motion for summary judgment of invalidity of Ormco's '444 patent, denying Ormco's motion for summary judgment of no invalidity of Ormco's '444 patent, and denying Ormco's motion to exclude opinions in the declaration of E. Diane Rekow ("Dr. Rekow") (the "validity order"); (2) granting in part and denying in part Ormco's motion for summary judgment of no inequitable conduct (the "inequitable conduct order"); (3) granting in part and denying in part Ormco's motion for summary judgment of infringement and granting in part and denying in part Align's motion for summary judgment as to noninfringement (the "infringement order"); and (4) denying Ormco's motion to strike the testimony of Align's expert Richard Ferraro (Ferraro) and denying Align's motion to exclude infringement testimony of Ormco's experts Dr.  Ernest L. Hall ("Dr. Hall") and Dr. W. Eugene Roberts ("Dr. Roberts") (the "expert testimony order").

This action was tried to a jury on June 9, 10, 11,12, 16, 17, 18, 19, and 25, 2009.  On June 25, 2009, before the close of trial, Align filed the instant motion for judgment as a matter of law.  The Court reserved judgment on Align's motion until after the verdict.

On June 25, 2009, the jury returned a special verdict.  The verdict read as follows:

I. INFRINGEMENT

Question No. 1(a)

Has Ormco proven by a preponderance of the evidence that the individual tooth representations Align produced in its Invisalign® process were not materially changed by subsequent process steps prior to importation of the digital models in treatment positions?

A "Yes" answer is a finding for Ormco.
A "No" answer is a finding for Align.

Answer:      Yes
(Yes or No)

Question No. 1(b)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|----------|----------------------|------|----------------|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

Has Ormco proven by a preponderance of the evidence that the individual tooth representations Align produced in its Invisalign® process were not materially changed by subsequent process steps prior to importation of the aligners?

A "Yes" answer is a finding for Ormco.

A "No" answer is a finding for Align.

Answer: _____Yes_____
(Yes or No)

Proceed to Section II.


II. ANTICIPATION

Question Nos. 2(a)-(e)

Has Align proven that it is highly probable that any of the following claims of the '444 patent was "anticipated," or, in other words, not new?

A "Yes" answer is a finding for Align.

A "No" answer is a finding for Ormco.

(a) Claim 37: Answer: _____No_____
(Yes or No)

Answer Question Nos. 2(b)-(c) ONLY if you answered "Yes" to Question No. 2(a). If you answered "No" to Question No. 2(a), leave the answers to Question Nos. 2(b)-(c) blank and proceed to Question No. 2(d).

(b) Claim 38: Answer: _____
(Yes or No)
(c) Claim 40: Answer: _____
(Yes or No)

Answer Question Nos. 2(d)-(e) regardless of your answers to the previous questions.

(d) Claim 45: Answer: _____No_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

(Yes or No)

(e) Claim 69: Answer: _____No_____
(Yes or No)

Proceed to Section III.

III. OBVIOUSNESS

Question Nos. 3(a)-(e)

Has Align proven that it is highly probable that any of the following claims of the '444 patent is invalid because it is obvious in light of the prior art?
A "Yes" answer is a finding for Align.
A "No" answer is a finding for Ormco.

(a) Claim 37: Answer: _____No_____
(Yes or No)

Answer Question Nos. 3(b)-(c) ONLY if you answered "Yes" to Question No. 3(a). If you answered "No" to Question No. 3(a), leave the answers to Question Nos. 3(b)-(c) blank and proceed to Question No. 3(d).

(b) Claim 38: Answer: _____
(Yes or No)

(c) Claim 40: Answer: _____
(Yes or No)

Answer Question Nos. 3(d)-(e) regardless of your answers to the previous questions.

(d) Claim 45: Answer: _____No_____
(Yes or No)

(e) Claim 69: Answer: _____No_____
(Yes or No)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|----------|----------------------|------|----------------|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

Proceed to Section IV.

IV. PROSECUTION LACHES

Question No. 4

Has Align proven that the '444 patent is unenforceable due to prosecution laches?
A "Yes" answer is a finding for Align.
A "No" answer is a finding for Ormco.

Answer: _____No_____
(Yes or No)

Proceed to Section V.

V. UNCLEAN HANDS

Question No. 5

Has Align proven that the '444 patent is unenforceable due to unclean hands?
A "Yes" answer is a finding for Align.
A "No" answer is a finding for Ormco.

Answer: _____No_____
(Yes or No)

End of Questionnaire.

Ormco filed an opposition to Align's motion for judgment as a matter of law on July 6, 2009. Align filed a reply on July 13, 2009. On July 27, 2009, the Court issued its findings of fact and conclusions of law, finding in favor or Ormco on Align's claims of prosecution laches and unclean hands. A hearing was held on August 3, 2009. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

**II.   LEGAL STANDARD**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. . ." Fed. R. Civ. P. 50(a)(1); see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 139, 149 (2000). If the court does not grant a motion for judgment as a matter of law pursuant to Rule 50(a), a party may file a renewed motion for judgment as a matter of law after the trial. Fed. R. Civ. P. 50(b). It is well-settled that the standard for judgment as a matter of law is the same as the standard for summary judgment. Reeves, 530 U.S. at 150 (citing Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 250-52 (1986)).

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

F.3d 1332, 1335 (9th Cir. 1997); see also Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994) (articulating the same standard in the context of a directed verdict). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

In a motion for summary judgment, a court must review the record "taken as a whole." Matsushita, 475 U.S. at 587. Similarly, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. Reeves, 530 U.S. at 150. In so doing, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Id. (citations omitted); see also Berry, 39 F.3d at 1057. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 447 U.S. at 255. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. Reeves, 530 U.S. at 151 (citing 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529 at 299 (2d ed. 1995)). In other words, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Reeves, 530 U.S. at 151 (citing Wright & Miller, supra, at 300).

## III.   DISCUSSION

Align argues that it is entitled to judgment as a matter of law that it is not liable for infringement under Section 271(g), of Title 35 of the United States Code ("Section 271(g)"). Furthermore, Align argues that it is entitled to judgment as a matter of law that Ormco's asserted claims are invalid as anticipated under 35 U.S.C. § 102 and obvious under 35 U.S.C. § 103. Finally, Align seeks judgment as a matter of law that Ormco committed prosecution laches and acted with unclean hands in prosecuting the '444 patent.

### A.   The '444 Patent Claims at Issue

The '444 patent claims at issue in this case are claims 37, 38, 40, 45, and 69. Claim 37 provides:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

> A method of processing digital data for use in facilitating the orthodontic treatment of a patient comprising: scanning three-dimensional surfaces that have the shapes of a plurality of the teeth of a patient and generating data thereof; from the generated data, producing separate digital representations of the shapes of each of a plurality of individual teeth of the patient.

Claims 38 and 40 are dependent claims of claim 37.  Claim 38 provides:

> The method of claim 37 wherein: the producing of the separate digital representations from the generated data includes the operator-interactive selection on a computer display of landmark parameters of individual teeth.

Claim 40 provides:

> The method of claim 37 wherein: the producing of the separate digital representations from the generated data includes separating an image of the plurality of teeth into individual data-sets each representing an individual tooth

Claim 45 provides:

> A method of processing digital data for use in facilitating the orthodontic treatment of a patient comprising: scanning the shapes of the teeth of a patient directly from the mouth of a patient and generating data thereof; grouping the generated data into separate digital representations of the shapes of each of a plurality of individual teeth.

Claim 69 differs from claim 37 in that it requires "receiving initial data that contains a 3D representation of a plurality of the patient's teeth" whereas claim 37 requires that scanning be done to create data which is "received" in claim 69.  Claim 69 provides:

> A computer-implemented method for use in generating digital models of a patient's teeth, the method comprising: receiving initial data that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

contains a 3D representation of a plurality of the patient's teeth;
identifying multiple groups of data, each group containing a plurality of
points from the initial data that separately digitally represent the shape of
one of the teeth.

### B.    Infringement

In an order dated February 23, 2009, the Court found that Align literally infringes
the '444 patent claims at issue.  35 U.S.C. § 271(g) provides that "whoever without
authority imports into the United States or offers to sell, sells, or uses within the United
States a product which is made by a process patented in the United States shall be liable as
an infringer, if the importation, offer to sell, sale, or use of the product occurs during the
term of such process patent."  However, "[a] product which is made by a patented process
will, for purposes of this title, not be considered to be so made after – (1) it is materially
changed by subsequent processes . . . " 35 U.S.C. § 271(g).  To determine whether there
has been a material change, the Court looks " to the substantiality of the change between
the product of the patented process and the product that is being imported."  Eli Lilly &
Co. v. Am. Cyanamid Co., 82 F.3d 1568, 1573 (Fed. Cir. 1996).  Ormco has the burden of
proving that the product was not materially changed by subsequent processes by a
preponderance of the evidence.  See Eli Lilly & Co. v. Am. Cyanamid Co., 896 F. Supp.
851, 855-56 (S.D. Ind. 1995).

### 1.    Whether Align's Digital Treatment Models are "Products" under Section 271(g)

Align argues first that its digital treatments models are not "products" under Section
271(b) and therefore cannot infringe the '444 patent, because liability under Section 271(g)
only extends to "products made by a patented process" that are tangible and physical, and it
is undisputed that Align's digital models are not tangible.

However, in its February 23, 2009 order, the Court rejected this argument, finding
that Align had failed to establish that the digital 3D model is not a "product made" by a
process patented in the United States.  Align has presented no additional evidence or
argument that merit reconsideration of the Court's prior determination.

### 2.    Whether Steps in the Invisalign System Constitute Material

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

**Change**

Align argues next that its witnesses thoroughly demonstrated how the later steps in the Invisalign System constitute material changes to the digital treatment model. Specifically, Align argues that the evidence demonstrated that the "painting crown step" of the Invisalign System is the end of Ormco's claimed process, as, at this step, digital images of individual tooth crowns have been produced from the undifferentiated scanned data. Mot. at 5. Align argues that the evidence demonstrated that a significant amount of additional work is then performed before digital treatment models are provided to doctors in the United States. Mot. at 5. Specifically, Align argues that the evidence at trial demonstrated that Align technicians subsequently (1) make corrections to the data, which reshape the crowns of the teeth; (2) add data that are critical to the design of the aligners; and (3) use the patient's photographs and x-rays to change the data to more closely reflect the patient's teeth. Mot. at 5-10, citing Trial Tr. 6/11/09 at 20:14-24; 36:5-20; 6/12/09 70:14-21, 72:16-22. Align argues that the evidence demonstrated that these additional steps are critical to ensure that the aligners properly fit and function. Mot. at 6-7, citing e.g.,Trial Tr. 6/11/09 at 196:10-14 (Dr. Roberts testifying that the addition of roots is a "necessary step in the process"); Trial Tr. 6/12/09 at 71:14-22 (Dr. Rekow testifying that there are a number of advantages in having additional photographs and x-rays, one of which is that it provides information about the roots of the teeth); Trial Tr. 6/17/09 at 120:2-21 (Ferraro stating that adding roots of the teeth is a material change); Trial Tr. 6/12/09 at 179:18-23 (Dr. Roberts stating that staging teeth from initial positions to final positions is essential to the process, because without so doing, the teeth may not move properly during the course of treatment); Trial Tr. 6/11/09 at 58:2-59:9 (Ian Kitching ("Kitching"), Align's software engineer, testifying that adding gingiva line is important to the process, because it prevents cutting the patients' mouths); Trial Tr. 6/11/09 at 63:9-64:5 (Kitching testifying that determining the path of the teeth from initial to final positions is critical to avoid collisions while trying to move the teeth); Trial Tr. 6/16/09 at 81:13-19 (Leonard Hedge ("Hedge"), Senior Vice President of Business Operations at Align, testifying that the stereolithography "slicing" step, in which machines lay down thin "slices" of plastic which are built up to produce a finished mold, changes the form of the data); Trial Tr. 6/17/09 at 131:14-17 (Ferraro testifying that slicing step is a material change).

Align further argues that judgment as a matter of law on non-infringement under 35 U.S.C. § 271(g) is appropriate because Dr. Roberts, Ormco's experts, "admitted, both in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

### CIVIL MINUTES - GENERAL

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

deposition and at trial, that Align makes changes with its ToothShaper and Treat software
prior to importation into the United States, which are, to quote Dr. Roberts, both 'material'
and 'essential' to the products at issue." Mot. at 10, citing Trial. Tr. 6/11/09 at 185:11-25
(confirming that at his 2008 deposition, it was Dr. Roberts' opinion that at the end of the
painting crowns step, separate digital representations of individual teeth had been
produced); 179:24-180:2 (changes that occur "on the back end of the tooth shaper process"
are "essential because there's already some errors in the method and one has to clean that
up and get it to where it has the natural form"). Align argues that the sole basis for Dr.
Roberts' contradictory expressed view that there was, in fact, no material change, was his
opinion that if the digital representations created by scanning the patient's dental
impressions were materially changed, the aligners "would not fit." Mot. at 10, citing Trial.
Tr. 6/11/09 at 166:2-6 (testifying that a material change "would be something that would
be enough of a change to the point that the aligners or appliances . . . would not fit").
Align argues that under cross-examination, however, Dr. Roberts admitted that the changes
made by ToothShaper were material because, *absent those changes*, the aligners would not
fit. Mot. at 10, citing Trial Tr. 185:11-25; 187:22-188:1 (without the subsequent changes
after the painting crowns step, the aligners would generally not fit). Align notes that Dr.
Roberts also confirmed that changes Align made to the scanning data were "important" or
"essential." Mot. at 10, citing e.g. Trial. Tr. 6/11/09 at 179:24-180:2; 187:16-21. In
addition, Align argues that in deposition on December 5, 2008, Dr. Roberts testified that
any changes in the shape of the teeth contained in a digital file were material. Mot. at 11,
citing Trial Tr. 6/11/09 at 191:19-23. Align argues that Dr. Roberts' attempts to explain
his inconsistent testimony are not credible and illustrate "the incompetence of his
testimony." Mot. at 11, citing Trial. Tr. 6/11/09 at 184:12-15 (Dr. Roberts stating that his
"opinion has evolved" after hearing testimony of another witness).

    Ormco, however, argues that it introduced substantial evidence at trial that the
individual tooth representations contained in Align's digital model of the treatment plan
and Align's physical aligners are not materially changed prior to importation. Opp'n at 6.

    First, Ormco notes that Dr. Roberts testified at length on the subject of material
change and concluded that the steps in Align's process do not materially change the
individual tooth representations generated using Align's ToothShaper process. Opp'n at 6,
citing Trial Tr. 6/11/2009 at 165:11-166:10, 167:11-15, 167:23-168:3, 171:12-16, 173:7-
11, 175:7-176:25, 177:25-178:15, 178:16-180:16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|----------|----------------------|------|----------------|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

Second, Ormco argues that while Align points to a number of steps that occur after the painting crowns stage and argues that they constitute material changes, these arguments are misplaced, because Align's production of the tooth shape representations is not, in fact, complete at the painting crowns stage. Opp'n at 6. Ormco argues that Align's software engineer, Kitching, stated that Align is not done creating the tooth representations until the ToothShaper process is complete. Trial Tr. 6/11/2009 at 64:17-65:2. Ormco argues that Dr. Roberts agreed with this assessment. Trial Tr. 6/11/2009 at 163:20-164:2. In other words, Ormco argues that while Align practices the patented method at the painting crown stage, Align continues to practice the patented method until the ToothShaper and Treat processes are complete. Opp'n at 7. "Thus, the relevant 'product' that is made by Align's use of the patented methods is not a set of painted crowns, but the collection of patient-specific tooth representations that are used to model the movement of the teeth. As such, changes that occur as part of the ToothShaper process or in Treat are not changes to the relevant 'product'; instead, they are part of the creation of that product." Opp'n at 7, citing Bio-Technology Gen. Corp. v. Genentech, Inc., 80 F.3d 1553, 1559-60 (Fed. Cir. 1996) (although substance made by patented method had been changed into an entirely different substance, there was no material change, because the change into the second substance was within the literal scope of patentee's claims). For example, Ormco notes that Align contends that the step in which the gumline is added is a material change, but that at trial, Mr. Hedge, Align's head of manufacturing, conceded that for this step the original data scan was a critical input. Opp'n at 7, citing Trial Tr. 6/16/2009 at 127:21-25. Therefore, Ormco argues, the jury was entitled to conclude that Align was continuing to produce three dimensional tooth shape representations from the generated data even at the end of the Treat process, negating Align's attempt to claim material changes that occurred prior to the end of the Treat process. Opp'n at 7-8.

Align, however, counters that the question of when the claimed process is complete is a threshold legal question that must be answered by the Court. Opp'n at 2, citing OKI Am., Inc. v. Advanced Micro Devices, Inc., 2006 U.S. Dist. LEXIS 73144 *40-41 ("The first step in the analysis is to determine what is the product of the patented process"); citing NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1323 (Fed. Cir. 2005) (determining initially, as a matter of law, whether the product was email packets that have physical structure, or the transmission of information in the form of email messages). Align argues that Dr. Roberts, Ferraro, and Kitching all testified that after the painted crowns step, "separate digital representations" have been produced "from the generated data." Reply at 2, citing 6/11/09 Trial Tr. at 19:7-17, 53:7-9, 73:20-74:2, 186:13-22. Therefore, Align

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

argues that the claimed process is complete when "separate digital representations" are "produced" from the generated data, and that nothing more is covered by the claims. Reply at 3.   Align argues that, unlike the patent in the case cite by Ormco, Bio-Technology General Corp, 80 F.3d 1553, nothing in the '444 patent explicitly contemplates adding root or interproximal region data or adding a gingiva line to the scanned data.  Reply at 4.

In opposition, Ormco also argues that Dr. Rekow and Dr. Roberts all agreed that the tooth representations must remain as accurate as possible, or else the aligners would not fit. Opp'n at 8.  Ormco argues that Dr. Roberts explained at trial that from an orthodontic perspective, the tooth shape representations cannot be materially changed because, if they were, the aligners would not fit.  Opp'n at 8.  Align, however, counters that in fact, all of the witnesses who addressed this issue, including Dr. Roberts, confirmed that changes in the process are made to make the digital tooth shapes *more* accurately reflect that patient's actual tooth shapes.  Reply at 7, citing 6/11/09 Trial Tr. at 55:17-20, 186:13-22, 189:16-18; 6/12/09 Trial Tr. at 72:13-22, 76:6-11; 6/16/09 Trial Tr. at 9:18-20, 137:9-11.

Ormco further argues that Align is not entitled to judgment as a matter of law, because Align failed to introduce evidence that it had another commercially viable option for manufacturing aligners without using Ormco's patented processes, and that in fact, Kitching conceded that he was not aware of any commercially practical alternatives.[1] Opp'n at 9, citing Trial Tr. 6/16/09 at 196:21-201:4.  Ormco also argues that Align never

---

[1] Ormco relies on Bio-Technology General Corp., 80 F.3d 1553, which in turn relied on the legislative history of the  Process Patent Amendments Act of 1988, for the proposition that a product is considered made by a patented process regardless of any subsequent changes if it would not be possible or commercially viable to make that product without the patented process.  See S. Rep. No. 83, 100th Cong., 1st Sess. 51 (1987) ("Even if a different organism was created by this biotech procedure, if it would not have been possible or commercially viable to make the different organism and product expressed therefrom but for the patented process, the [polypeptide] product will be considered to have been made by the patented process").  Align argues that Bio-Technology General Corp., 80 F.3d 1553 contains no legal analysis of the commercial viability test, and therefore Ormco may not rely on it.  The Court agrees that the issue of commercial viability is not, based on the authority cited by Ormco, dispositive, but nevertheless considers it herein as one relevant factor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## CIVIL MINUTES - GENERAL

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|----------|----------------------|------|----------------|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

asked its orthodontic expert, Dr. Rekow, to opine on the material change issue. Opp'n at 9, citing Trial Tr. 6/12/09 at 15:12-17. Therefore, Ormco argues, the jury could have reasonably concluded that there could be no material change to the digital tooth representations prior to importation of Align's digital models or aligners. Opp'n at 8.

### 3.    Dr. Roberts' Testimony

Align further argues that Dr. Roberts' opinions that a material change did not occur are unreliable and therefore inadmissible. Mot. at 11. Specifically, Align argues that the claims at issue here relate almost exclusively to software for scanning and graphics, while Dr. Roberts, an expert in orthodontics, has admitted that he has no computer programming or engineering expertise, has never reviewed any software code, has never operated ToothShaper software, and that he did not ask an engineet ot explain particular steps of ToothShaper or Treat prior to reaching his opinions. Trial Tr. 6/12/09 at 193:15-21, 196:7-8, 188:18-24; 6/16/09 at 23:24-24:20, 28:13-29:9. Align further argues that Dr. Roberts confirmed that he is not a person of ordinary skill in the relevant art for the purposes of the '444 patent. Mot. at 12, citing Trial Tr. 6/16/09 at 22:2-7 (stating that to be a person of ordinary skill in the art, he would need the additional support of "technical people"). Align argues that Dr. Roberts' opinions are bare legal conclusions and so inconsistent and confusing that they could not assist the trier of fact and must be discounted. Mot. at 13.

Ormco disputes Align's arguments that Dr. Roberts should be excluded as an expert, noting that the Court rejected this argument before trial. Opp'n at 10; see February 23 Expert Order. Furthermore, Ormco argues that because the issue is material change to tooth shape representations used to model orthodontic treatment, an orthodontist is the appropriate person to testify on this issue. Opp'n at 10. Ormco argues that, as the Court already determined, Align's arguments go to the weight of Dr. Roberts' testimony, and Align had ample opportunity to make this point at trial. Opp'n at 11.

### 4.    Conclusion

The Court concludes that Align has failed to demonstrate that it is entitled to judgment as a matter of law on the issue of infringement. Specifically, Align has not shown that a reasonable jury could not have found that the steps subsequent to the painting crown step in the Invisalign process did not materially change the infringing product prior to importation. The Court recognizes that Ormco has the burden of proving no material

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

change, but finds that there is significant evidence in the record with which a jury could have found that Ormco met its burden.  While Align presented expert testimony to the effect that the subsequent steps constituted material change, Ormco's expert, Dr. Roberts testified on this issue extensively, and concluded that the changes made after the painting crown stage were not material changes.  See, e.g., Trial Tr. at 180:3-9 (agreeing that, even if the claimed process were completed somewhere in the middle of the tooth shaper process, nothing that occurred subsequently up until the point of importation would constitute a material change), 180:10-15 (nothing in the process materially changes the shape of the individual digital tooth shape representations).  Align has not demonstrated that this testimony was so contradictory, or lacking in credibility or evidentiary support that a reasonable jury could not have found it persuasive.  Furthermore, Align has not demonstrated that Dr. Roberts should be excluded as an expert.  The Court addressed this issue in its February 23, 2009 order denying requests to exclude experts, and found that Dr. Roberts' opinions on infringement were sufficiently reliable.  Align has presented no new argument that convince the Court otherwise.  Given that the infringement issue focuses on the question of whether material changes were made to tooth shape representations used to model orthodontic treatment, a reasonable jury could have relied on the testimony of an orthodontist on this issue as an expert in the pertinent art.

### C.    Validity

Pursuant to 35 U.S.C. § 282, all patents are presumed valid, and the burden of establishing invalidity, by reason of either lack of novelty ("anticipation") or obviousness, rests upon the party asserting invalidity.[2]  The statute presumes each claim of a patent to be valid independently of the validity of the other claims.  Id.  The presumption of patent validity may be rebutted only by a showing of "clear and convincing evidence."  Saf-Gard

---

[2] 35 U.S.C. § 282 states in pertinent part:

A patent shall be presumed valid.  Each claim of a patent (whether in independent or dependent form) shall be presumed valid independently of the validity of other claims; dependent claims shall be presumed valid even though dependent upon an invalid claim.  The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|----------|----------------------|------|----------------|
| Title    | Ormco Corporation v. Align Technology, Inc. | | |

Products, Inc. v. Service Parts, Inc., 532 F.2d 1266, 1271 (9th Cir. 1976). "The burden of persuasion on invalidity must, under the statute, remain at all times on the party asserting invalidity, although that burden may be carried more easily by evidence consisting of more pertinent prior art than that considered by the examiner." RCA Corp. v. Applied Digital Data System, Inc., 730 F.2d 1440, 1444 (Fed. Cir. 1984).

### 1.     Person of Ordinary Skill in the Art

Align first argues that a person of ordinary skill in the art is an engineer with consultation from an orthodontist, because none of the claims at issue, with the exception of claim 38, discusses orthodontics. Align therefore argues that its expert Ferraro, working in conjunction with Dr. Rekow, is a person of ordinary skill in the art, and that, based on Ferraro and Dr. Rekow's testimony, the only reasonable conclusion the jury could have reached was that claims 37, 38, 40, 45, and 69 are anticipated under 35 U.S.C. § 102. Align argues that Ormco did not even call its experts, Dr. Roberts or Dr. Hall, to rebut Align's evidence of invalidity.

Ormco, however, argues that Align has premised its argument on validity on its own definition of a person of ordinary skill in the art: that is, an engineer who consults with an orthodontist. Opp'n at 11. Ormco notes that in its February 23, 2008 order denying requests to exclude experts, the Court previously declined to adopt Align's definition of a person of ordinary skill in the art and subsequently instructed the jury that "[i]t is up to you to decide the level of ordinary skill in the field of the invention." See Dkt No. 1247, Jury Instr. 27. Ormco argues that because the jury could have reasonably concluded that Ormco's proposed definition of one of skill in the art – an orthodontist with access to an engineer – is supported by the context of the claimed inventions, it could have concluded that all of Align's invalidity arguments "rest on a faulty foundation." Opp'n at 11.

### 2.     Anticipation

A patent claim is anticipated under 35 U.S.C. § 102, only when each and every element of a claim at issue is found either expressly or inherently in a single prior art reference. Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1565 (Fed. Cir. 1992); Bristol-Myers Squibb v. Ben Venue Laboratories, Inc., 246 F.3d 1368, 1374 (Fed. Cir. 2001). In addition, "the prior art reference . . . must not only disclose all elements of the claim within the four corners of the document, but must

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                          O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

also disclose those elements arranged as in the claim." Net Moneyin, Inc. v. Verisign, Inc.,
545 F.3d 1359, 1369 (Fed. Cir. 2008). Furthermore, "[t]o serve as an anticipating
reference, the reference must enable that which it is asserted to anticipate." Elan Pharms,
Inc. v. Mayo Found. For Med. Educ. & Research, 346 F.3d 1051, 1054 (Fed. Cir. 2003).
In other words, "[t]o anticipate, the reference must also enable one of skill in the art to
make and use the claimed invention." Bristol-Myers Squibb, 246 F.3d at 1374.

"Whether an invention is anticipated is a question of fact." Elan Pharms, 346 F.3d at
1054. "When the examiner considered the asserted prior art and basis for the validity
challenge during patent prosecution," the burden on the party asserting invalidity "becomes
particularly heavy." Impax Labs., Inc. v. Aventis Pharms. Inc., 545 F.3d 1312, 1314 (Fed.
Cir. 2008).

First, Align argues that claim 37 is anticipated by the Duret and Laurendeau
references.[3] Mot. at 14. Align notes that Ferraro confirmed that Dr. Duret's process is the
same process as required by the first element of claim 37. Mot. at 14, citing Trial Tr.
6/17/09 at 69:10-11, 71:14-20. Similarly, Align argues that the testimony of Dr. Rekow
and Ferraro at trial demonstrated that Dr. Laurendeau used a three-dimensional scanner to
scan wax impressions containing the shapes of a plurality of teeth and to generate data
thereof. Mot. at 15, citing Trial Tr. 6/12/09 at 59:13-60:12; Trial Tr. 6/17/09 at 42:16-21.
42:22-43:12. Align therefore argues that no reasonable jury could determine that the Duret
and Laurendeau references did not disclose the first limitation of claim 37. With regard to
the second element of claim 37, Align argues that the evidence demonstrated that Dr. Duret
separated out individual tooth representations from three-dimensional undifferentiated data
associated with the tooth stump and the teeth adjacent to the tooth stump, and traced the
stump and identified the adjacent teeth so that the boundaries of the prosthesis could be
determined. Mot. at 15, citing Trial Tr. 6/17/09 at 69:10-11, 68:14-21. Align argues that
the evidence demonstrated that Dr. Laurendeau practiced the second element by using
mathematical algorithms to produce separate digital representations of the shapes of teeth
and to determine the mesial and distal contact points of the teeth, and that Dr. Rekow
confirmed that the data in this reference was segmented on a tooth-by-tooth basis. Mot. at

---

[3] Align also argues that claim 69 is anticipated for the same reasons as claim 37, as
both parties agree that establishing invalidity for claim 37 establishes invalidity for claim
69. Mot. at 14, n.2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

15, citing Trial Tr. 6/17/09 at 43:18-44:9, 46:2-18.

Align argues that claim 38 is anticipated by the Laurendeau reference, because the Laurendeau reference disclosed the operator interactive selection of landmark parameters of individual teeth, including the interstices of the teeth and points on teeth used to derive orthodontic parameters.  Mot. at 16, citing Trial Tr. 6/12/09 at 63:20-65:9.  Furthermore, Align argues that Dr. Rekow also confirmed that orthodontic parameters listed in Table 1 in the Laurendeau reference are attributes of teeth used for modeling tooth movement.  Mot. at 16, citing Trial Tr. 6/12/09 at 54:4-5, 65:1-9.

Furthermore, Align argues that the evidence demonstrated that both Duret and Laurendeau anticipate claim 40.  With regard to the Duret reference, Align argues that Ferraro's testimony demonstrated that Dr. Duret traced the margin of a tooth in the center of an image of multiple teeth and separated that tooth's data from the image.  Trial Tr. 6/17/09 at 70:16-23, 71:21-72:10.  The Laurendeau reference also anticipates claim 40 by its disclosure of using an image on a screen to produce separate digital representations.  Mot. at 16, citing Trial Tr. 6/17/09 at 72:11-25, 74:15-23.

Finally, Align argues that the evidence demonstrated that claim 45 is anticipated by the Duret reference.  Align argues that the Duret reference used a three-dimensional laser optical probe to scan a plurality of teeth.  Trial Tr. 6/17/09 at 70:14-15, 69:15-17, 72:11-25, 73:12-14.  Furthermore, Align argues that the Duret reference also disclosed the second element of claim 45 for the same reasons it disclosed the second element of claim 37.  Trial Tr. 6/17/09 at 72:11-73:14, 74:3-6.

Ormco counters that the jury was entitled to disbelieve Ferraro's testimony, because he made numerous mistakes that could have led the jury to determine that he was not credible, and because the evidence presented was neither clear nor convincing.  Opp'n at 11-12.

First, Ormco argues that Align presented no evidence that Duret or Laurendeau was sufficient to teach one of skill in the art how to make and use the claimed inventions without undue experimentation.  Opp'n at 13, citing <u>Elan Pharms, Inc. v. Mayo Found.</u>, 346 F.3d 1051, 1054 (Fed. Cir. 2003) ("To serve as an anticipating reference, the reference must enable that which it is asserted to anticipate").  Align, however, counters that Ormco ignores the fact that the references relied upon "actually carried out the work (i.e., the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|----------|----------------------|------|----------------|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

processes were actually used)" and that therefore, nothing more is required to show enablement. Reply at 22.

Second, Ormco argues that the evidence did not demonstrate that Duret anticipates claims 37, 45, or 69. In particular, Ormco argues that the second step of the claims – requiring production of separate digital representations of each tooth from the undifferentiated data – is not found in Duret. Opp'n at 14. Ormco argues that Align fails to contend that separate representations of all of the teeth were set forth in Duret, and instead merely argues that the stump was differentiated because a line was drawn near the gumline in Figure 6 of Duret. Opp'n at 14. Ormco argues that the jury was entitled to determine that this was not enough to demonstrate separate digital representations of "each" tooth in the scan of multiple teeth. Opp'n at 14. Ormco further argues that the jury was free to discount the opinions of Ferraro, because they were inconsistent. For example, Ormco argues that on direct examination, Ferraro relied solely on Figure 10 in Duret as evidence of creation of separate digital representations of multiple teeth, but on cross-examination, retracted his statement and disavowed reliance on Figure 10. Opp'n at 14, citing Trial Tr. 6/17/09 at 72:8-73:11; 6/18/09 at 102:24-104:15. Ormco also points out that while Ferraro characterized the boundary line depicted in Duret Figure 6 as indicating the separation of the tooth, Align's orthodontic expert, Dr. Rekow, stated that the line simply indicated "where the crown and the tooth are coming together." Opp'n at 15, citing Trial Tr. 6/12/09 at 43:25-44:1. In addition, Ormco argues that the jury was entitled to conclude that Duret failed to disclose the first step of the claims because instead of disclosing scanning multiple tooth shapes in 3D, it scans one tooth stump and portions of adjacent teeth. Opp'n at 15.

Ormco also argues that the jury was entitled to conclude that the Laurendeau reference did not anticipate claim 37 (and by extension, dependent claims 38 and 40) or 69. Specifically, Ormco argues that Laurendeau fails to disclose production of 3D digital representations of the individual tooth shapes within the meaning of the second step of the claims. Opp'n at 16. In particular, Ormco argues that Ferraro's claim at trial that Laurendeau, which depicted a two-dimensional graph, created a 3D digital representation of individual tooth shapes was not credible. Opp'n at 17, citing Trial Tr. 6/18/09 at 171:11-177:15. Furthermore, Ormco argues that Laurendeau never creates any "separate" representations of individual teeth, and instead only identifies the interstices between the teeth, and that the Laurendeau reference specifically noted that the "next step" was to identify the teeth. Opp'n at 17, citing Trial Tr.6/12/2009 at 154:2-10. Ormco argues that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

Dr. Rekow admitted that identifying teeth and locating parameters was part of
Laurendeau's future work, and therefore had yet to be performed.  Trial Tr. 6/12/09 at
152:24-153:7.

Furthermore, Ormco argues that neither Duret nor Laurendeau anticipates dependent
claim 40.  With regard to Duret, Ormco argues that, as explained above, Duret does not
disclose separate representations of tooth shapes.  Opp'n at 19. With regard to the
Laurendeau reference, Ormco argues that no image is separated into individual data sets as
part of the production of separate digital representations as required by claim 40.  Opp'n at
19.

The Court concludes that Align has failed to demonstrate that a reasonable jury
could not have a legally sufficient evidentiary basis to find that the claims at issue were not
anticipated by the Duret and Laurendeau references.  Ormco has pointed to inconsistencies
in Ferraro's testimony, as well as various contrary arguments to his testimony, which could
have led a reasonable jury to conclude that the two references did not sufficiently disclose
the elements of the claims at issue.  For example, testimony and evidence at trial indicating
that the Laurendeau reference specified that the next step was to identify the teeth and
locate parameters could have led a reasonable jury to conclude that Laurendeau does not
disclose the portions of the claims at issue.  Furthermore, as Ormco argues, a reasonable
jury could have concluded that the testimony of Dr. Rekow and Ferraro conflicted with
regard to whether Figure 6 of Duret depicted the separation of individual tooth
representations. Therefore, Align's motion for judgment as a matter of law on this issue
must be denied.

### 3.    Obviousness

A patent claim may also be invalid as obvious under 35 U.S.C. § 103 "if the
differences between the subject matter sought to be patented and the prior art are such that
the subject matter as a whole would have been obvious at the time the invention was made
to a person having ordinary skill in the art to which said subject matter pertains."
Obviousness is ultimately a legal question, based on underlying factual determinations.
Eisai Co. Ltd. v. Dr. Reddy's Labs., Ltd., 533 F.3d 1353, 1356 (Fed. Cir. 2008).  The
factual determinations underlying the question of obviousness are "1) the scope and
content of the prior art, 2) the level of ordinary skill in the art, 3) the differences between
the claimed invention and the prior art, and 4) evidence of secondary factors, also known

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

as objective indicia of non-obviousness." Id. "[R]ejections on obviousness grounds
cannot be sustained by mere conclusory statements; instead, there must be some articulated
reasoning with some rational underpinning to support the legal conclusion of obviousness .
. ." KSR International Co. v. Teleflex, Inc., 550 U.S. 398, 418 (2007).  "[H]owever, the
analysis need not seek out precise teachings directed to the specific subject matter of the
challenged claim, for a court can take account of the inferences and creative steps that a
person of ordinary skill in the art would employ."  Id.

     Align argues that based on the testimony of Ferraro and Dr. Rekow, the only
reasonable conclusion that the jury could reach is that the '444 patent would be obvious to
one of ordinary skill in the art by combining the Biggerstaff, Laurendeau, Duret,
Yamamoto, and Kawahara references.

     Specifically, Align argues that claims 37, 40, and 69 would have been obvious to an
engineer, in consultation with an orthodontist, by combining the Yamamoto and Kuwahara
references.  Align argues that the evidence showed that Yamamoto designed and built a
laser scanner capable of digtizing teeth and capturing data in three dimensions to in order
to measure tooth movement of the entire surface of teeth.  Mot. at 18, citing Trial. Tr.
6/12/09 at 47:23-48:2.  Align argues that the evidence demonstrates that Yamamoto
provided profiles of the shapes of teeth, and that Yamamoto disclosed the production of
separate digital representations of the shapes of each of a plurality of teeth from the
scanned data.  Mot. at 18, citing Trial Tr. 6/12/09 at 54:15-55:3, 51:14-52:2, 53:24-54:7,
55:4-8.  In addition, Align argues that Yamamoto disclosed using an image on a screen to
identify parameters on teeth, which would , by definition, be represented in a dataset.  Mot.
at 18, citing Trial Tr. 6/12/09 at 53:14-20, 54:8-10.  Align acknowledges that Dr.
Yamamoto was only able to scan individual teeth due to lack of computer power available
to him in 1988, but argues that such computing power was available in 1991 and was being
used for the medical imaging disclosed in the Kuwahara reference.  Mot. at 18, citing Trial
Tr. 6/17/09 at 99:23-101:7.  Align argues that Ferraro's testimony showed that because the
medical imaging techniques disclosed in Kuwahara are similar to orthodontic imaging, an
engineer working in consultation with an orthodontist would have ample motivation to
look to medical imaging art to solve problems in the orthodontic art.  Mot. at 18, citing
Trial Tr. 6/17/09 at 101:8-16.  Furthermore, Align argues that one of ordinary skill in the
art would have been motivated to combine the two references because Yamamoto was
published in an electrical engineering journal that often included scans of anatomical
structures, and Yamamoto cited articles involving scanning of anatomical structures other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
| --- | --- | --- | --- |
| Title | Ormco Corporation v. Align Technology, Inc. | | |

than teeth.  Mot. at 18, citing Trial Tr. 6/17/09 at 101:18-102:5.

Furthermore, Align argues that claims 37, 38, 40, and 69 were obvious based on a combination of Dr. Biggerstaff's 2D system with the 3D systems of Yamamoto, Laurendeau, or Duret.  Mot. at 19.  Align argues that the Biggerstaff reference disclosed all of the elements of claim 37, 38, 40, and 69, with the exception that Biggerstaff disclosed two-dimensions rather than three-dimensions.  Mot. at 19, citing Trial Tr. 6/12/09 at 38:17-18, 39:1-5; 78:3-13; Trial Tr. 6/17/09 at 80:17-22; 82:7-13, 82:21-83:5, 83:6-13.  With particular regard to the disclosure of landmark parameters, Align argues that Biggerstaff referred to interactively selecting "anatomical landmarks" to produce separate representations and teeth, and that he used profiles and other selected points to create models for tooth movement.  Mot. at 19, citing Trial Tr. 6/17/09 at 88:3-13, 78:3-12, 86:4-16, 87:12-88:2.  Align argues that based on the technology available in 1991, it would have been obvious to one of ordinary skill to combine the teachings of Biggerstaff with the scanning of three-dimensional shapes of teeth, which was the next step Biggerstaff disclosed.  Mot. at 20, citing Trial Tr. 6/17/09 at 84:1-6, 88:6-8.

In addition, Align argues that the evidence showed that claims 38 and 45 were obvious by a combination of Duret, Laurendeau, Yamamoto, and Biggerstaff.  With regard to claim 45, Align argues that while Yamamoto, Laurendeau, and Biggerstaff did not scan directly into the mouth as required by claim 45, it would have been obvious to use the Duret system of scanning into the mouth to practice claim 45, and that an engineer would have been motivated to do so in order to bypass the step of creating a separate mold of teeth, which is both time consuming and prone to error.  Mot. at 21, citing Trial Tr. 6/17/09 at 59:25-60:14, 70:11-15, 85:10-86:3, 104:20-105:4.  With regard to claim 38, Align argues that Duret disclosed interactively selecting orthodontic parameters on a screen including identification of the gingival margin of the tooth, and that while Duret did not identify this information for the purposes of modeling tooth movement, Duret's teachings combined with Laurendeau, Yamamoto, or Biggerstaff would have rendered the claim obvious.  Mot. at 21, citing Trial Tr. 6/17/09 at 74:24-75:16, 69:8-13. Align argues that Yamamoto described identifying landmark parameters, including the very same landmark parameters identified in the '444 patent.  Mot. at 22, citing Trial tr. 6/12/09 at 17:6-10; 54:8-14, 55:9-13.

Align further argues that Ormco presented no secondary considerations of non-obviousness.  Instead, Align argues, the evidence demonstrated that Ormco lacked

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|---|---|---|---|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

commercial success for one product that practiced the asserted claims. Mot. at 23, citing
Trial Tr. 6/19/09 at 96:19-22. Align also argues that Ormco's argument that Align's
commercial success shows non-obviousness is incorrect, because the evidence
demonstrated that Invisalign's commercial success was due to its novel processes in
ToothShaper and Treat software. Mot. at 23, citing Trial Tr. 6/16/09 89:6-91:4; 96:8-12,
102:9-10, 107:21-22.

Ormco, however, counters that Align is not entitled to judgment as a matter of law
on obviousness, as the jury could have reasonably concluded that Ferraro is not skilled in
the relevant art, that Ferraro is not credible, and/or that Align has failed to prove
obviousness by clear and convincing evidence. With regard to Laurendeau and Duret,
Ormco argues that, for the reasons cited above, the jury could have reasonably found that
both references failed to disclose one or both of the required elements of the independent
claims. Opp'n at 21. With regard to Yamamoto, Ormco argues that neither expert
suggested that Yamamoto clearly scanned multiple teeth at one time as required by the
claims. Furthermore, Ormco argues that Align's argument that Yamamoto disclosed
landmark parameters is flawed, because the coordinate system provided by Yamamoto
does not disclose multiple landmark parameters which, Ormco argues, are necessary to
derive attributes of the tooth for modeling tooth movement, and that in fact Ferraro
admitted that one could not model tooth movement with the one point on the tooth – the
centroid – disclosed in Yamamoto.[4] Opp'n at 22. With regard to Biggerstaff, Ormco
argues that Align's position is contingent on the premise that Biggerstaff produced separate
tooth representations from an undifferentiated scan of multiple teeth, but that Dr. Rekow
contradicted this theory when she stated that she could not tell how Biggerstaff entered the
tooth data into the computer, and therefore, according to Ormco could not say that multiple
teeth were scanned at one time in Biggerstaff, which is required to produce undifferentiated
data. Opp'n at 22, citing Trial Tr. 6/12/09 at 108:1-110:4.

Furthermore, Ormco argues that the jury's verdict of no obviousness was reasonable,
because Align failed to demonstrate by clear and convincing evidence that there was some
reason or motivation to combine the references in question, and that there was a reasonable

---

[4] Align, however, counters that Ferraro testified that the centroid is derived from
locations on the surface of the tooth, which are the landmark parameters. See 6/17/09
Trial Tr. at 107:6-15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | | Date | August 3, 2009 |
|---|---|---|---|---|
| Title | Ormco Corporation v. Align Technology, Inc. | | | |

expectation of success that the combination would succeed. Opp'n at 23; see Medichem, S.A. v. Rolabo, S.L., 437 F.3d 1157, 1165 (Fed. Cir. 2006) ("If all the elements of an invention are found in a combination of prior art references, a proper analysis under 35 U.S.C.S. § 103 requires, inter alia, consideration of two factors: (1) whether the prior art would have suggested to those of ordinary skill in the art that they should make the claimed composition or device, or carry out the claimed process; and (2) whether the prior art would also have revealed that in so making or carrying out, those of ordinary skill would have a reasonable expectation of success"). Ormco argues that while Ferraro offered only conclusory testimony on this issue, and never actually explained how the combined teachings would result in the claimed inventions or how there would be a reasonable expectation of success in doing so. Opp'n at 23. Align, however, counters that Ferraro's testimony regarding reasonable expectation of success was sufficient. Reply at 10, citing 6/17/09 Trial Tr. at 60:24-61:5, 76:18-77:7, 85:19-86:3.

Finally, Ormco argues that the secondary considerations support the jury's verdict. For example, Ormco argues that some of the references cited by Align, such as Yamamoto, taught away from the claimed invention, by concluding that scanning multiple teeth at one time would be too difficult and would cause too many problems. Furthermore, Ormco argues that the unquestioned commercial success of Align's Invisalign product showed the nonobviousness of the claims, as it was only through Ormco's patented process that Align could be commercially viable. Opp'n at 24.

The Court concludes that Align has not demonstrated that it is entitled to judgment as a matter of law on this issue of obviousness of the '444 patent claims at issue. The considerations raised by Ormco regarding the limitations of the disclosures in the various prior art references could have led the jury to reasonably conclude that the references cited by Align, in combination with one another, did not disclose the necessary elements to support a finding of obviousness. Furthermore, the jury could have reasonably determined that Align failed to show that the prior art would have suggested to one of ordinary skill that they should carry out the claimed process and that the prior art would have revealed that one of ordinary skill in the art would have a reasonable expectation of success in so doing. See Medichem, S.A., 437 F.3d at 1165.

**D.    Prosecution Laches and Unclean Hands**

Align argues that it showed by a preponderance of the evidence that Ormco abused

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 03-16 CAS (ANx) | Date | August 3, 2009 |
|----------|----------------------|------|----------------|
| Title | Ormco Corporation v. Align Technology, Inc. | | |

the patent system by unreasonably delaying in filing the '444 patent, and that "rather than legitimately competing in the marketplace, Ormco sat back, watched Align invest hard work and money into a novel concept, and then wrote claims to piggyback off the efforts of Align." Mot. at 24-25. Therefore, Align argues, the '444 patent should be found unenforceable due to prosecution laches and unclean hands. The Court, however, addressed these arguments in its July 27, 2009 findings of fact and conclusions of law, finding that Align had failed to prove prosecution laches or unclean hands. For the reasons noted therein, the Court denies Align's motion as it pertains to prosecution laches and unclean hands.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Align's motion for judgment as a matter of law.

IT IS SO ORDERED

|  | 00 | : | 20 |
|---|----|----|----|
| Initials of Preparer | | CMJ | |